# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JOHN E. ANDRUS MEMORIAL, INC. (d/b/a :
ANDRUS ON HUDSON),

 :

 : 07-CV-3432 (CLB) (KNF)
         Plaintiff :

 : **DEFENDANT'S RESPONSES**
 -against-     : **AND OBJECTIONS TO**
 : **PLAINTIFF'S FIRST**
 : **REQUEST FOR PRODUCTION**
RICHARD F. DAINES, as Commissioner of the : **OF DOCUMENTS AND**
New York State Department of Health, : **INTERROGATORIES**

 :

       Defendant. :

------------------------------------------------------------x

    Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure and Rules 26.2,

26.3 and 34.1 of the Local Rules of the United States District Court, for the Eastern and Southern

Districts of New York (the "Local Rules"), defendant Richard F. Daines, as Commissioner of

the New York State Department of Health, ("Defendant"), by his attorney, Andrew M. Cuomo,

Attorney General of the State of New York, hereby responds to Plaintiff's First Request For

Production Of Documents and Interrogatories ("Requests") as follows:

## GENERAL RESPONSES AND OBJECTIONS

    The following General Responses and Objections are incorporated into each

specific response and objection as if fully set forth therein:

    1.  Defendant objects to the Requests to the extent they seek documents beyond the

scope of discovery permitted under Fed. R. Civ. P. Rule 26(b)(1).

    2.  Defendant has produced certain documents believed to be responsive to the

Requests and will produce other documents, should they be located.

    3.  Defendant objects to each item of the Requests to the extent that it purports to call

for the production of documents that: constitute attorney-work product; were prepared in

anticipation of or in connection with litigation; disclose the mental impressions, conclusions, opinions or legal theories of any attorneys for Defendant or for persons having a common interest with Defendant; contain privileged attorney-client communications; are otherwise protected from disclosure under applicable privileges, laws, rules, regulations or agreements including the deliberative/executive privilege; or are documents that Defendant is precluded by law or court order from disclosing. Defendant will not produce any such documents (hereinafter "Privileged Documents"). The inadvertent production of Privileged Documents is not intended, and shall not be deemed, to waive or abridge any applicable privilege. Given the scope of discovery in this action, Defendant reserves the right to assert any applicable privilege when documents are reviewed. In accordance with Local Rule 26.2, Defendant will prepare logs identifying Privileged Documents, which Defendant will supply as soon as practicable following the conclusion of his document collection efforts.

4.      Defendant objects to each item of the Requests to the extent that it calls for the production of documents that contain confidential information, the disclosure of which would or could adversely affect Defendant or a third party or contains information subject to the privacy rights of other persons ("Confidential Material").

5.      Defendants object to the Requests' Instructions to the extent they seek additional information concerning privileged documents not required under Local Rule 26.2.

6.      Defendants object to Instructions to the extent that they seek to require Defendant to provide any information concerning documents not in his possession, custody or control as of the date the Requests were received.

7.      Defendant objects to each item of the Requests to the extent that it purports to call for the production of documents not within Defendants' possession, custody or control.

8.      The production of any document, when the production of such document is objected to herein, shall not constitute a waiver of any applicable objection and is without prejudice to any of Defendant's rights to object later that the production of any such document was inadvertent.

9.      The fact that Defendant has responded to a particular request shall not be interpreted as implying either that responsive documents exist or that Defendant acknowledges the propriety of that request.  Defendant's production of any documents shall not be construed as an admission of the relevance, materiality, or admissibility of any such documents or of the subject matter of any such documents, or as a waiver or abridgement of any applicable privilege or of any applicable objection set forth above or below.  Defendant submits these responses without conceding the relevancy, materiality or admissibility of the subject matter of any document requested by the Requests, and Defendant reserves the right:

   a.      to supplement, amend or correct all or any part of his responses; and

   b.      to object to the admissibility in evidence of any part of the documents produced in response to the Requests or of any information contained in any such document.

10.      Defendant objects generally to the Requests to the extent that they seek to impose any other burdens and obligations exceeding those imposed by the Federal Rules of Civil Procedure, the Local Rules or otherwise by law.

3

## SPECIFIC RESPONSES AND OBJECTIONS
## TO PLAINTIFF'S DOCUMENT REQUESTS

**Hudson Valley Regional Advisory Committee ("RAC")**

Document Request No. 1:

> All prior drafts of a report of the Hudson Valley Regional Advisory
> Committee ("RAC") entitled "Final Report Submitted to the
> Commission on Health Care Facilities in the Twenty-First
> Century" ("RAC Report") dated November 15, 2006.

Response No. 1:

Defendant has searched for documents responsive to this request and, upon information

and belief, some of the documents located may be responsive to this request. This response is

based on information and belief because defendant was not a member of the RAC and the RAC

was disbanded on or before December 31, 2006, and none of the RAC members are or were part

of the New York State Department of Health.

Subject to the above, Defendant objects to the production of any documents responsive to

this request pursuant to executive/deliberative privilege. A privilege log identifying any such

documents will be provided.

Document Request No. 2:

> Any data that any member or staff of the RAC reviewed in making
> the recommendations contained in the RAC Report concerning the
> Andrus.

Response No. 2:

Defendant is not aware of any RAC "staff" although, upon information and belief, RAC

member Dr. Robert W. Amler received assistance from Denise Tahara and Annette Choolfian at

New York Medical College. Non-privileged documents located by the Defendant that were

4

available to members of the RAC have been or will be produced. Defendant has no knowledge

which of these documents were actually reviewed in making the recommendations contained in

the RAC Report concerning the Andrus.

Document Request No. 3:

> Any data used by the RAC to compare the Andrus with any other
> nursing facility in the Hudson Valley Region, as defined by Section
> 31 of Part E of Chapter 63 of the New York Laws of 2005, § 7
> ("Hudson Valley facility" or "Hudson Valley facilities").

Response No. 3:

Non-privileged documents located by Defendant which Defendant has reason to believe

were available to members of the RAC have been or will be produced. Defendant has no

knowledge which of these documents were actually reviewed in making the recommendations

contained in the RAC Report concerning the Andrus.

Document Request No. 4:

> Any data collected by or submitted to the RAC by or on behalf of
> or otherwise concerning the Andrus or other Hudson Valley
> facilities.

Response No. 4:

Non-privileged documents located by Defendant which Defendant has reason to believe

were available to members of the RAC will be produced. Defendant has no knowledge which of

these documents were actually reviewed in making the recommendations contained in the RAC

Report concerning the Andrus.

5

Document Request No. 5:

> Any summaries, charts, memoranda, graphs, tables or other
> documents analyzing or otherwise concerning the data responsive
> to Request Nos. 2, 3 and 4 above.

Response No. 5:

Non-privileged documents located by Defendant which Defendant has reason to believe

were available to members of the RAC will be produced. Defendant has no knowledge which of

these documents were actually reviewed in making the recommendations contained in the RAC

Report concerning the Andrus.

Document Request No. 6:

> All other documents prepared by any member or staff of the RAC
> concerning the Andrus.

Response No. 6:

Defendant has no knowledge of any documents in addition to those produced in response

to other document requests.

Document Request No. 7:

> Any notes, minutes, memoranda or other documents concerning
> meetings or discussions of members or staff of the RAC
> concerning the Andrus or any other Hudson Valley facility.

Response No. 7:

Non-privileged documents located by Defendant which may be responsive to this request

have been or will be produced. Defendant reserves the right to object to the production of any

responsive documents pursuant to executive deliberative privilege, if applicable.

6

Document Request No. 8:

> Any notes, minutes, memoranda or other documents concerning
> any communication between any member or staff of the RAC and
> any representative of the Andrus.

Response No. 8:

Non-privileged documents located by Defendant which may be responsive to this request have been or will be produced. See, e.g., the document Bates numbered AND 1350. Defendant reserves the right to object to the production of any responsive documents pursuant to executive deliberative privilege, if applicable.

Document Request No. 9:

> Any notes, minutes, memoranda or other documents concerning
> any communication between any member or staff of the RAC and
> any member or staff of the Berger Commission concerning the
> Andrus or any other Hudson Valley facility.

Response No. 9:

Non-privileged documents located by Defendant which may be responsive to this request have been or will be produced. Defendant reserves the right to object to the production of any responsive documents pursuant to executive deliberative privilege, if applicable.

**Berger Commission**

Document Request No. 10:

> All prior drafts of the report of the Commission on Health Care
> Facilities in the Twenty-First Century (the "Berger Commission")
> entitled "A Plan to Stabilize and Strengthen New York's Health
> Care System" (the "Commission Report") dated December 2006
> insofar as any such drafts concern the Preface to Recommendations
> (Section VII.), the Andrus or any other Hudson Valley facility.

7

Response No. 10:

      Defendant will not produce documents responsive to this request pursuant to executive

deliberative privilege.  A privilege log identifying any such documents will be provided.

Document Request No. 11:

                Any data that any member or staff of the Berger Commission
                reviewed in making the recommendations contained in the
                Commission Report concerning the Andrus.

Response No. 11:

      Documents which Defendant has located and has reason to believe were available to

members and staff of the Berger Commission have been or will be produced.  Defendant has no

knowledge which of these documents were actually reviewed in making the recommendations

contained in the Commission Report concerning the Andrus.

Document Request No. 12:

                Any data used by the Berger Commission to compare the Andrus
                with any other Hudson Valley facility.

Response No. 12:

      Documents which Defendant has located and has reason to believe were available to

members and staff of the Berger Commission have been or will be produced.  Defendant has no

knowledge which of these documents were actually reviewed in making the recommendations

contained in the Commission Report concerning the Andrus.

Document Request No. 13:

                Any data collected by or submitted to the Berger Commission by
                or on behalf of or otherwise concerning the Andrus or other
                Hudson Valley facility.

Response No. 13:

Documents which Defendant has located and has reason to believe were available to members and staff of the Berger Commission have been or will be produced. Defendant reserves the right to object to the production of any responsive documents pursuant to executive deliberative privilege, if applicable.

Document Request No. 14:

> Any summaries, charts, memoranda, graphs, tables or other documents analyzing or otherwise concerning the data responsive to Request Nos. 11, 12 and 13 above.

Response No. 14:

Documents located by Defendant which Defendant has reason to believe were available to members and staff of the Berger Commission have been or will be produced. Defendant has no knowledge which of these documents were actually reviewed by staff of the Berger Commission.

Document Request No. 15:

> All other documents prepared by any member or staff of the Berger Commission concerning the Andrus.

Response No. 15:

Documents concerning the Andrus located by Defendant which were prepared by members and staff of the Berger Commission will be produced to the extent they are not withheld due to executive deliberative privilege.

Document Request No. 16:

> Any notes, minutes, memoranda or other documents concerning meetings or discussions of members or staff of the Berger

9

Commission concerning the Andrus or any other Hudson Valley facility.

Response No. 16:

Defendant will not produce documents responsive to this request pursuant to executive deliberative privilege.

Document Request No. 17:

Any notes, minutes, memoranda or other documents concerning any communication between any member or staff of the Berger Commission and any representative of the Andrus.

Response No. 17:

Documents located by Defendant which may be responsive to this request have been or will be produced. Defendant reserves the right to object to the production of any responsive documents pursuant to executive deliberative privilege, if applicable.

Document Request No. 18:

Any notes, minutes, memoranda or other documents concerning any communication between any member or staff of the Berger Commission and any member or staff of the RAC concerning the Andrus or any other Hudson Valley facility.

Response No. 18:

Non-privileged documents located by Defendant which may be responsive to this request have been or will be produced. Defendant reserves the right to object to the production of any responsive documents pursuant to executive deliberative privilege, if applicable.

10

## SPECIFIC RESPONSES AND OBJECTIONS
## TO PLAINTIFF'S INTERROGATORIES

**RAC Witnesses**

Interrogatory No. 1:

>    Identify all staff or members of the RAC responsible for collecting
>    data or investigating the facts concerning the Andrus and other
>    Hudson Valley facilities.

Response to Interrogatory No. 1:

     The members of the RAC were Dr. Robert Amler, Charles Bell, William Florence, David

Freed, Peter Hamilton, Kenneth Herman, Dr. Linda Landesman, Michael Pascale and Dr. Barry

Perlman. Defendant has no knowledge which of the RAC members actually were responsible for

collecting data or investigating the facts concerning the Andrus and other Hudson Valley

facilities. Defendant is not aware of any RAC "staff" although, upon information and belief,

RAC member Dr. Robert W. Amler received assistance from Denise Tahara and Annette

Choolfian at New York Medical College. Defendant has no knowledge if such persons were

responsible for collecting data or investigating the facts concerning the Andrus and other Hudson

Valley facilities.

Interrogatory No. 2:

>    Identify any staff or members of the RAC who spoke with any
>    representative of the Andrus.

Response to Interrogatory No. 2:

     Defendant is not aware of any RAC "staff" although, upon information and belief, RAC

member Dr. Robert W. Amler received assistance from Denise Tahara and Annette Choolfian at

New York Medical College. Furthermore, Defendant has located documents which indicate that

a member or members of the RAC did meet with representatives of the Andrus. See, e.g., the

document Bates numbered AND 1350. Other than such documents, Defendant has no other

knowledge regarding the particulars of such meeting.

Interrogatory No. 3:

Identify the dates of the conversations responsive to Interrogatory No. 2 above.

Response to Interrogatory No. 3:

This interrogatory is not permitted under Local Rule 33.3.

Interrogatory No. 4:

Identify all staff or members of the RAC responsible for drafting
the section of the RAC Report containing the recommendations
concerning the Andrus and other Hudson Valley facilities.

Response to Interrogatory No. 4:

Defendant is not aware of any RAC "staff" although, upon information and belief, RAC

member Dr. Robert W. Amler received assistance from Denise Tahara and Annette Choolfian at

New York Medical College. Defendant is not aware which staff or members of the RAC were

responsible for drafting the section of the RAC Report containing the recommendations

concerning the Andrus and other Hudson Valley facilities.

Interrogatory No. 5:

Identify all staff or members of the RAC responsible for reviewing
or analyzing the data concerning the Andrus discussed in the RAC
Report.

Response to Interrogatory No. 5:

Defendant is not aware of any RAC "staff" although, upon information and belief, RAC

member Dr. Robert W. Amler received assistance from Denise Tahara and Annette Choolfian at

12

New York Medical College. Defendant is not aware which staff or members of the RAC were responsible for reviewing or analyzing the data concerning the Andrus discussed in the RAC Report.

Interrogatory No. 6:

> Identify all staff or members of the RAC responsible for reviewing or analyzing any other data collected by or submitted to the RAC by or on behalf of or otherwise concerning the Andrus or other Hudson Valley facility.

Response to Interrogatory No. 6:

Defendant is not aware of any RAC "staff" although, upon information and belief, RAC member Dr. Robert W. Amler received assistance from Denise Tahara and Annette Choolfian at New York Medical College. Defendant is not aware which staff or members of the RAC were responsible for reviewing or analyzing any other data collected by or submitted to the RAC by or on behalf of or otherwise concerning the Andrus or other Hudson Valley facility. Defendant objects to this interrogatory pursuant to executive deliberative privilege.

Interrogatory No. 7:

> Identify all staff or members of the RAC responsible for performing any comparative analyses between the Andrus and any other Hudson Valley facility.

Response to Interrogatory No. 7:

Defendant is not aware of any RAC "staff" although, upon information and belief, RAC member Dr. Robert W. Amler received assistance from Denise Tahara and Annette Choolfian at New York Medical College. Defendant objects to this interrogatory pursuant to executive deliberative privilege.

13

Interrogatory No. 8:

>Identify all staff or members of the RAC who communicated with
>any staff or members of the Berger Commission concerning the
>Andrus or any other Hudson Valley facility.

Response to Interrogatory No. 8:

Defendant is not aware of any RAC "staff" although, upon information and belief, RAC

member Dr. Robert W. Amler received assistance from Denise Tahara and Annette Choolfian at

New York Medical College. Defendant objects to this interrogatory pursuant to executive

deliberative privilege.

Interrogatory No. 9:

>Identify the dates of the conversations responsive to Interrogatory
>No. 8.

Response to Interrogatory No. 9:

This interrogatory is not permitted under Local Rule 33.3.

**Berger Commission Witnesses**

Interrogatory No. 10:

>Identify all staff or members of the Berger Commission responsible
>for collecting data or investigating the facts concerning the Andrus
>and any other Hudson Valley facility.

Response to Interrogatory No. 10:

The Berger Commission staff included David Sandman, Mark Ustin, Allison Silvers,

Barbara McRedmond, Vincent Fitts, Hiton Marcus, Janette Simms and possibly others.

Defendant is not aware which staff or members of the Commission were responsible for

14

collecting data or investigating the facts concerning the Andrus and any other Hudson Valley facility.

Interrogatory No. 11:

> Identify any staff or members of the Berger Commission who spoke with any representative of the Andrus.

Response to Interrogatory No. 11:

Defendant is not aware which, if any, staff or members of the Berger Commission spoke with any representative of the Andrus. Allison Silvers attended a meeting of the RAC with Betsy Biddle.

Interrogatory No. 12:

> Identify the dates of the conversations responsive to Interrogatory No. 11 above.

Response to Interrogatory No. 12:

This interrogatory is not permitted under Local Rule 33.3.

Interrogatory No. 13:

> Identify all staff or members of the Berger Commission responsible for drafting the section of the Commission Report containing the recommendations concerning the Andrus and any other Hudson Valley facility.

Response to Interrogatory No. 13:

Defendant is not aware which staff or members of the Berger Commission were responsible for drafting the section of the Commission Report containing the recommendations concerning the Andrus and any other Hudson Valley facility.

15

Interrogatory No. 14:

> Identify all staff or members of the Berger Commission responsible
> for reviewing or analyzing the data concerning the Andrus
> discussed in the Commission Report.

Response to Interrogatory No. 14:

Defendant is not aware which staff or members of the Berger Commission were

responsible for reviewing or analyzing the data concerning the Andrus discussed in the

Commission Report.

Interrogatory No. 15:

> Identify all staff or members of the Berger Commission responsible
> for reviewing or analyzing any other data collected by or submitted
> to the Berger Commission by or on behalf of, or otherwise
> concerning the Andrus or any other Hudson Valley facility.

Response to Interrogatory No. 15:

Defendant is not aware which staff or members of the Berger Commission were

responsible for reviewing or analyzing any other data collected by or submitted to the Berger

Commission by or on behalf of, or otherwise concerning the Andrus or any other Hudson Valley

facility.

Interrogatory No. 16:

> Identify all staff or members of the Berger Commission who
> communicated with any staff or members of the RAC concerning
> the Andrus or any other Hudson Valley facility.

Response to Interrogatory No. 16:

Defendant is not aware which staff or members of the Berger Commission communicated

with any staff or members of the RAC concerning the Andrus or any other Hudson Valley

16

facility. Defendant objects to provision of this information, if he becomes aware of this information, pursuant to executive deliberative privilege.

<u>Interrogatory No. 17</u>:

> Identify the dates of the conversations responsive to Interrogatory No. 16.

<u>Response to Interrogatory No. 17</u>:

This interrogatory is not permitted under Local Rule 33.3.

<u>Interrogatory No. 18</u>:

> Identify all staff or members of the Berger Commission responsible for performing any comparative analyses between the Andrus and any other Hudson Valley facility.

<u>Response to Interrogatory No. 18</u>:

Defendant is not aware which staff or members of the Berger Commission were responsible for performing any comparative analyses between the Andrus and any other Hudson Valley facility.

As To Interrogatory Responses:

_____
Harold J. Rosenthal

Sworn to before me this
2nd day of July, 2007

_____
Notary Public

SETH M. ABRAMS
Notary Public, State of New York
No. 02AB4693818
Qualified in Albany County
Commission Expires July 31, 20 _09_

**As To Objections:**

Dated: New York, New York
        July 2, 2007

                         ANDREW M. CUOMO
                         Attorney General of the
                         State of New York
                         <u>Attorney for Defendant</u>

By:
                         John P. Gasior
                         Assistant Attorney General
                         120 Broadway, 24th Floor
                         New York, New York 10271
                         212-416-8570

TO:     Peter G. Bergmann, Esq.
          Brian McGovern, Esq.
          Cadwalader, Wickersham & Taft LLP
          One World Financial Center
          New York, New York 10281
          Telephone: 212-504-6000

19

Andrus Mem. v. Daines, 07-CV-3432 (CLB) (KNF)

DEFENDANT'S PRIVILEGE LOG

| No. | Date | Author(s) | Recipient(s) | Subject Matter | W or R[1] | Priv | Bates No |
|-----|------|-----------|--------------|----------------|-----------|------|----------|
| 1 | Unk. | Commission on Healthcare Facilities | | Draft Hudson Valley RAC Nursing Facility Options and Considerations | W | D | AND 0071 / 0081 |
| 2 | 06/29/06 | Staff Nursing Facility | | Staff Nursing Facility Recommendations | W | D | AND 0320 / 0321 |
| 3 | Unk. | David Sandman, Ph.D. Exec. Director | | Draft Commission on Health Care Facilities in the 21ˢᵗ Century Rightsizing Analytic Framework Rule Development | W | D | AND 0326 / 0341 |
| 4 | Unk. | | | Draft Long-Term Care Recommendations | W | D | AND 0355 / 0389 |

[1] Column "W or R" refers to documents that are either withheld or redacted. The column "Priv" refers to the privilege asserted. The only privilege asserted, "D", refers to the deliberative/executive privilege.

1

| # | Date | | | Description | | | |
|---|---|---|---|---|---|---|---|
| 5 | Unk. | | | Long-Term Care Reform Opportunities Analysis and Additional Considerations | W | D | AND 0513 / 0515 |
| 6 | Unk. | | | Draft chart listing facilities and various information | W | D | AND 0516 / 0535 |
| 7 | 1/4/05 | | | Draft Long - Term Care Reform Opportunities Analysis and Additional Considerations "Users Guide " | W | D | AND 0576 / 0578 |
| 8 | Unk. | David Sandman, Ph.D | Dan Heim | Draft of 3/17/06 ltr. | W | D | AND 0620 / And. 0622 |
| 9 | 3/6/06 | Allison P. Silvers | David R. Sandman Ph. D. Mark R. Ustin | E-mail regarding testimony | W | D | AND 0644 |
| 10 | 4/7 | | | Handwritten notes | W | D | AND 1120 / 1124 |
| 11 | 1/4/05 | | | Draft Long-Term Care Reform Opportunities Analysis and Additional Considerations "Users Guide" | W | D | AND 1127 / 1130 |

| 12 | Unk. | | | Draft of a portion of "A Plan to Stabalize and Strengthen New York's Health Care System" | W | D | AND 1197 / 1226 |
| 13 | Unk. | | | Draft of a portion of "A Plan to Stabalize and Strengthen New York's Health Care System" | W | D | AND 1228 / 1319 |
| 14 | Unk. | | | Draft of a portion of "A Plan to Stabalize and Strengthen New York's Health Care System" | W | D | AND 1320 / 1349 |

3

# EXHIBIT B

# Commission on Health Care Facilities in the 21st Century

90 Church Street, 13th Floor, New York, NY 10007 • Phone (212) 417-5544 • Fax (212) 417-4893

Stephen Berger, Chairman • David Sandman, Ph.D., Executive Director

March 17, 2006

< final

Dan Heim
Vice President for Public Policy
New York Association of Homes and Services for the Aging
150 State Street, Suite 301
Albany, NY 12207

Dear Mr. Heim:    Dan

Thank you for your thoughtful and detailed comments of March 9 on the Commission's long-term care opportunities analysis and review framework. NYAHSA has been an early and strong supporter of the Commission. We appreciate the constructive spirit of engagement your organization and its members have exhibited and look forward to a continued partnership to strengthen our state's health care system.

While I will respond to your specific comments, I also want to take this opportunity to provide a broader perspective on the Commission's work. Most importantly, I must stress that the work of the Commission is more than a "numbers game;" its recommendations will be not determined solely by a numeric formula. As you know, it is the role of the Regional Advisory Committees (RACs) to gather local "qualitative" information for the very purpose of understanding what data may omit or misrepresent. In addition, the RACs are involved in numerous provider discussions, in which the full nature of specific facilities will be revealed.

With that perspective in mind, we have repeatedly stated that the long-term care opportunities analysis is a starting point, not an end point or final determination. Facilities in highlighted counties are not necessarily "in danger," nor are facilities in un-highlighted counties necessarily "safe" because of this analysis. It is only one means to help RAC members and Commissioners understand where non-institutional resources may be increased through reductions in excess institutional capacity. In fact, some RACs are reviewing counties beyond those identified in the analysis.

We agree with many of your comments on the LTC opportunities analysis, and have revised it to reflect:

- a lower cut-off for occupancy-down to 94%-to acknowledge the vacancy factor inherent in growing short-term care. As you know, this is considerably less strict than the occupancy rates required in the bed need methodology as well as lower than the rate needed to qualify for bed hold payments.

AND 0615



# Commission on Health Care Facilities in the 21st Century

90 Church Street, 13th Floor, New York, NY 10007 • Phone (212) 417-5544 • Fax (212) 417-4893
Stephen Berger, Chairman • David Sandman, Ph.D., Executive Director

- 2004 occupancy figures and a more recent count of approved beds.

- A revised assumption that 19% of PA/PBs could be served in an alternative setting such as ALP.

The revised analysis will be shared with Commission and RAC members. I have also attached an appendix table illustrating the changes that results from these revisions.

With respect to the rightsizing framework:
- While we acknowledge the limitations in the data that you mention, we feel that the process mentioned above—first-pass statistical analysis, plus local commentary and insights, plus private discussions with providers —provides appropriate opportunities for the limitations of the data to be revealed, and for many alternative metrics to be introduced.

- Note that the Medicaid-eligible proportion of admissions is calculated using both Medicaid-only and Medicare-Medicaid admissions, so that any relative differences in short-term Medicare admissions would not affect this data. And while most institutions do have a very high proportion of Medicaid-eligible admissions, the metric does indeed help identify those that are significantly above or below their regional mean. We feel that this is the best data available to determine whether a facility serves low-income individuals.

- In terms of Quality of Care, we did look at substantiated complaints to confirm facilities with poor CMS quality measures.

- In terms of Utilization, we are seeking the most current and correct information on occupancy, and would welcome your assistance in this. In the meantime, for specific facilities with poor 2003 occupancy, we have reviewed their 2004 number to determine if the situation improved.

- For the commission's purposes, we are concerned with Nursing Home bed utilization. While it may very well be the case that an under-utilized nursing facility is affiliated with other successful long-term care services, it still speaks to the fact that the nursing home beds are under-utilized.

- We agree that financial performance will in fact correlate significantly with whether or not a facility has re-based. Nevertheless, sustained losses of several years—whether "fair" or not—calls into question ongoing viability. If a financially-troubled facility is asked into discussions, the conversation will welcome information on non-operating income and other program profits.



## Commission on Health Care Facilities in the 21st Century

90 Church Street, 13th Floor, New York, NY 10007 • Phone (212) 417-5544 • Fax (212) 417-4893

Stephen Berger, Chairman • David Sandman, Ph.D., Executive Director

- While we understand your comments on economic impact, the point for consideration is whether the loss of those nursing home beds would be an employment hardship for the local community. FTEs/county and county un-employment are the best available data to address this.

As acknowledged above, your letter makes some excellent points and we have revised our approach accordingly. However, we should not "lose the forest for the trees" and I encourage NYAHSA and the Task Force to provide input beyond technical data issues. For example, you briefly mention some barriers to deploying HCBS services. I invite you to elaborate on those barriers, identify any additional barriers, and most importantly, supply your recommendations to overcome those barriers.

Other questions you may wish to address could include:

- What would encourage more voluntary rightsizing and resource shifts in the provider community?
- What were the issues in the 2005 demonstration that discouraged more providers from applying?
- Assuming there were no moratoriums on day center or caps on ALP beds, what specific geographic areas should these services be expanded in?
- Under the auspices of the Commission's recently promulgated anti-trust protection, what opportunities for merger or service coordination might be pursued?

In closing, thank you again for your thoughtful input into this process. The Commission's work is enriched by the leadership and embrace of change exemplified by NYAHSA.

Sincerely,

David

David Sandman, Ph.D.
Executive Director

Cc:    Stephen Berger, Chairman
       Mark Ustin
       Allison Silvers

Attachment

 **Commission on Health Care Facilities in the 21st Century**

90 Church Street, 13th Floor, New York, NY 10007 • Phone (212) 417-5544 • Fax (212) 417-4893

Stephen Berger, Chairman • David Sandman, Ph.D., Executive Director

**Appendix**
**Long-Term Care Opportunities Analysis**
**Revised County Highlights**

| Original County Highlights | Revised County Highlights |
|---|---|
| Broome | Broome |
| **Cayuga** | **Cayuga** |
| Chemung | Chemung |
| **Chenango** | **Chenango** |
| Cortland | Cortland |
| Herkimer | Herkimer |
| **Jefferson** | **Jefferson** |
| Lewis | Lewis |
| Livingston | Livingston |
| Madison | Madison |
| Monroe | Monroe |
| **Oneida** | **Oneida** |
| Onondaga | Onondaga |
| Ontario | Ontario |
| **Oswego** | **Oswego** |
| **St. Lawrence** | **St. Lawrence** |
| Schuyler | Schuyler |
| Seneca | Seneca |
| Steuben | Steuben |
| **Tioga** | Tioga |
| **Tompkins** | **Tompkins** |
| Wayne | Wayne |
| Yates | Yates |
| **Delaware** | Delaware |
| **Dutchess** | Dutchess |
| Orange | Orange |
| **Putnam** | **Putnam** |
| Rockland | Rockland |
| Sullivan | Sullivan |
| Ulster | Ulster |
| **Westchester** | **Westchester** |
| **Nassau** | **Nassau** |
| Suffolk | Suffolk |
| **Albany** | **Albany** |
| Clinton | Clinton |

 **Commission on Health Care Facilities in the 21st Century**
90 Church Street, 13th Floor, New York, NY 10007 • Phone (212) 417-5544 • Fax (212) 417-4893
Stephen Berger, Chairman • David Sandman, Ph.D., Executive Director

| | |
|---|---|
| Columbia | Columbia |
| Essex | **Essex** |
| Franklin | Franklin |
| Fulton | Fulton |
| Greene | Greene |
| Hamilton | Hamilton |
| Montgomery | Montgomery |
| **Otsego** | **Otsego** |
| **Rensselaer** | Rensselaer |
| Saratoga | Saratoga |
| **Schenectady** | Schenectady |
| Schoharie | Schoharie |
| Warren | Warren |
| **Washington** | Washington |
| **Bronx** | Bronx |
| **Kings** | **Kings** |
| New York | New York |
| Queens | Queens |
| Richmond | Richmond |
| **Allegany** | **Allegany** |
| **Cattaraugus** | Cattaraugus |
| Chautauqua | Chautauqua |
| Erie | Erie |
| Genesee | Genesee |
| **Niagara** | Niagara |
| Orleans | Orleans |
| Wyoming | Wyoming |

AND 0619