UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

JOHN E. ANDRUS MEMORIAL, INC. (d/b/a   :    **filed electronically**
ANDRUS ON HUDSON),                  :

                                             :    07-CV-3432 (CLB) (KNF)

                         Plaintiff,    :

                                           :

            - against -                 :

                                         :

RICHARD F. DAINES, as Commissioner of the   :
New York State Department of Health,         :

                                         :

                        Defendant.   :

-----------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendant
Office of the Attorney General
120 Broadway 24th floor
New York, New York 10271
212-416-8570

Of Counsel
John P. Gasior
Assistant Attorney General
Sasha Samberg-Champion
Assistant Solicitor General

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I -    ANDRUS RECEIVED SUFFICIENT PROCEDURAL DUE
             PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT II -   THE DETERMINATION TO DOWNSIZE ANDRUS WAS THE
             PRODUCT OF A PROCEDURE THAT WAS NEITHER
             ARBITRARY NOR OUTRAGEOUS          . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT III -  REVOCATION OF ANDRUS' OPERATING LICENSE IS NOT A
             "TAKING" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT IV -   ANDRUS' CONTRACTS CLAIM IS NOT VIABLE . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i

## TABLE OF AUTHORITIES

**Cases**

Contemporary Mission v. U.S. Post. Serv., 648 F.2d 97 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . 5

Dusenbery v. U.S., 534 U.S. 161 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Goldbatt v. Town of Hempstead, 369 U.S. 590 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 6

Lowrance v. Achtyl, 20 F.3d 529 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 7

Lutheran Church in America v. City of New York, 35 N.Y.2d 121 (1974) . . . . . . . . . . . . . . . . . 8

Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Mullane v. Central Hanover, 339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.Y. State Rest. Ass'n v. N.Y. City Dep't of Health & Mental Hygiene,
303 F. Supp. 2d 265 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rector, Wardens, and Members of the Vestry of St. Bartholomew's Church v.

City of New York, 728 F. Supp. 958 (S.D.N.Y. 1989), aff'd, 914 F.2d 348 (2d Cir. 1990) . . . . . 8

San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323 (2005) . . . . . . . . . . . . . 9

Soc'y for Ethical Culture v. Spatt, 51 N.Y.2d 449 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

St. Joseph Hospital of Cheektowaga v. Novello, 15 Misc.3d 333 (Erie County 2007),
aff'd as modified 2007 WL 2044870, 2007 N.Y.
Slip Op. 06090 (4th Dep't Jul 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

St. Joseph Hospital of Cheektowaga v. Novello, 2007 WL 2044870,
2007 N.Y. Slip Op. 06090 (4th Dep't July 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

W. 95 Hous. Corp. v. N.Y. City Dep't of Hous. Pres., 2001 WL 664628 (S.D.N.Y. 2001) . . . . . 9

Wantanabe Realty Corp. v. City of New York, 315 F. Supp. 2d 375 (S.D.N.Y. 2003) . . . . . . . . 6

**Statutes and Constitutional Provisions**
U.S. Const. § 10, Cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Defendant, Richard F. Daines ("Defendant"), as Commissioner of the New York State Department of Health ("DOH"), by his attorney, Andrew M. Cuomo, Attorney General of the State of New York, respectfully submits this memorandum of law, along with the reply affidavit of John Gasior ("Gasior Reply Aff."), in further support of his motion for summary judgment, pursuant to Fed. R. Civ. P. Rule 56(b).

## PRELIMINARY STATEMENT

Although it purports to challenge the Berger Commission's actions on various constitutional grounds, Andrus can make no showing that the Commission failed to provide it with the sort of notice of a pending proceeding and opportunity to be heard that always have been deemed constitutionally adequate. Its claim that the Commission was required to notify it not simply of the pending proceeding, but of the likely results of that proceeding, is flatly contradicted by controlling precedent and already has been rejected by a state appellate court. Nor can Andrus establish any other constitutional violation.

Instead, Andrus invites this Court to engage in garden-variety review of an agency action and second-guess the Commission's analysis and conclusions. Even if Andrus were correct that the Commission misapprehended certain relevant facts or otherwise acted in an arbitrary and capricious manner, that would not constitute any federal constitutional violation. But Andrus cannot even establish that the Commission acted arbitrarily. Andrus' argument is based on a fundamental misunderstanding of the scope of the Commission's inquiry and the reasons why the Commission recommended that Andrus be converted.

Andrus claims that the Commission's recommendation was driven by the agency's erroneous beliefs as to the nursing home's profitability or occupancy rates. But this claim cannot be squared with the recommendation itself, which makes clear that Andrus was targeted for

conversion because of the relative good health of its patients and the suitability of its facility for conversion. The Commission's mandate was not simply to close unprofitable facilities and retain profitable ones, as Andrus appears to believe, but rather to align capacity with regional needs. Andrus has made no showing that the Commission failed to do precisely that. It does not even try to establish that the Commission erred in determining that the Hudson Valley Region had too many residential nursing home beds and not enough assisted living beds. Nor does it dispute the Commission's conclusion that Andrus was the facility best suited to make that conversion. Rather than calling into question the only two conclusions that matter, Andrus quibbles about irrelevant details, such as whether the Commission should have stated that Andrus was profitable rather than that Andrus claimed to have achieved profitability. Even were any of this relevant to the constitutionality of the Commission's actions, which it is not, Andrus has failed even to cast doubt on the rationality of the Commission's determination. This Court should grant summary judgment for defendant and dismiss Andrus' complaint.

**POINT I**
**ANDRUS RECEIVED SUFFICIENT PROCEDURAL DUE PROCESS**

Andrus, in its memorandum of law in opposition to defendant's motion ("Andrus' Memorandum" or "Andrus' Mem."), repeatedly casts as a procedural due process violation the assertion that "Andrus received no prior notice whatsoever of the Berger Commission's recommendation to close the Andrus' nursing home, or the purported grounds for such recommendations, until after the fact . . . ." Andrus' Mem. at 12, emphasis added. Due process, Andrus argues, required the Berger Commission and the Hudson Valley RAC to inform Andrus that it was "a candidate for closure." Id. at 13.

2

But the criterion for due process notice is not the "possibility of conceivable injury."
Mullane v. Central Hanover, 339 U.S. 306, 315 (1950). Due process notice requires "only that
the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the
action." Dusenbery v. U.S., 534 U.S. 161, 170-171 (2002). Andrus does not dispute that, by
mid-2006, it was well apprised that a Statewide process of "rightsizing" hospital and nursing
home facilities was underway by the Berger Commission, as evidenced by the Hudson Valley
RAC and Commission staff meeting with Andrus' executive director, Betsy Biddle, on or about
June 19, 2006. See Plaintiff's Response to Defendant's Statement of Undisputed Material Facts
("Plaintiffs' Response") ¶30.

Andrus' argument - that the Commission was further required to put it on notice not only
of the pendency of the action, but also of the likelihood that the Commission would issue a
recommendation with respect to Andrus - is directly foreclosed by Dusenbery. As one New York
court aptly put it in rejecting a similar challenge, "[e]very hospital was on notice that the
Commission might recommend its closing or consolidation. It is unreasonable to expect that as
the Commission deliberated and certain hospitals became more likely to be affected that some
sort of super notice would be required." St. Joseph Hospital of Cheektowaga v. Novello, 15
Misc.3d 333, 343-44 (Erie County 2007), aff'd as modified 2007 WL 2044870, 2007 N.Y. Slip
Op. 06090 (4th Dep't Jul 18, 2007). Due process simply does not require agencies to provide
some form of continuing notice as they approach their final determinations.

Equally meritless is Andrus' contention that it did not receive a constitutionally adequate
opportunity to be heard. Contrary to Andrus' suggestions, the Commission was not required to
offer the precise procedural safeguards, including a formal evidentiary hearing, provided by

3

Article 28 of the Public Health Law. Rather, "the opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in appropriate circumstances." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 16 n.17 (1978). Andrus does not dispute that it had such an opportunity, as well as the opportunity to appear before the regional committee and to submit documentary evidence.

As the Appellate Division recognized in rejecting a similar claim that a hospital was entitled to an individualized evidentiary hearing, employing the Article 28 procedures for each facility targeted for closure or major restructuring would have created "an enormous fiscal and administrative burden." St. Joseph Hospital of Cheektowaga v. Novello, 2007 WL 2044870, 2007 N.Y. Slip Op. 06090 at *7 (4th Dep't July 18, 2007) ("St. Joseph") (Gasior Reply Aff. Exh. A). Andrus cannot refute this obvious conclusion. Nor has Andrus established that the additional procedures it claims were constitutionally required would have meaningfully reduced the risk of an erroneous determination. Contrary to Andrus' suggestions, the Commission's determination was not based on some flawed notion that Andrus was unprofitable, unoccupied, or a poor provider of service. Rather, the Commission reached the determination - not challenged by Andrus - that Westchester County had too many nursing home beds and not enough non-institutional slots. Commission Report at 123. It then made the finding - also not seriously challenged by Andrus - that Andrus was the facility best suited for conversion because its patients were in relative good health, its physical plant needed improvements, and its facility layout (including private rooms and baths) was best suited to the new use.[1] Id. Since Andrus

<hr/>

[1] Andrus' only "evidence" to the contrary is a hearsay statement by Andrus' executive director, stating in conclusory fashion that financial consultants concluded that the Commission's
(continued...)

4

still cannot dispute the premises on which the Commission's determination was actually based, it cannot establish that additional procedural protections would have meaningfully reduced the risk of an erroneous determination, much less to an extent that would outweigh the enormous administrative burden they would entail.

Finally, Andrus begins its brief by complaining that it was denied discovery that it suggests might have produced admissible evidence. See Andrus Mem. at 1-2. But Andrus never moved to compel this discovery after the defendant informed it that its request was overbroad and would infringe upon executive privilege. See McGovern Aff. Exh. A at 4. Indeed, Andrus does not make such a motion now. Accordingly, summary judgment should not be denied based on Andrus' speculation as to what impermissible discovery might disclose, if only Andrus were to make and win a motion to obtain it. See Contemporary Mission v. U.S. Post. Serv., 648 F.2d 97, 107 (2d Cir. 1981) (plaintiff cannot defeat motion for summary judgment by amplifying conclusory allegations in complaint with speculation about what discovery might uncover).

## POINT II
## THE DETERMINATION TO DOWNSIZE ANDRUS WAS THE PRODUCT OF A PROCEDURE THAT WAS NEITHER ARBITRARY NOR OUTRAGEOUS

Andrus repeatedly asserts that the Berger Commission misapprehended or ignored Andrus' operational data - - its occupancy rate and financial status, among others - - which led to the erroneous conclusion that Andrus should be closed. This, Andrus asserts, constitutes a substantive due process violation. Even if the Commission's determination truly were as flawed

---

[1]( . . . continued)

plan is not "financially feasible." Aff. of Betsy Biddle ¶ 65. This is not evidence that the Commission erred in concluding that Andrus was the best suited of Westchester's nursing homes to make the conversion. It certainly does not demonstrate that the Commission was constitutionally required to have held a full-blown hearing on the subject.

as Andrus claims, which it was not, the errors Andrus alleges do not amount to a violation of substantive due process, which is not established simply because a government action is "incorrect or ill-advised." Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994). Accordingly, it would not be enough for Andrus to establish that the Commission got facts wrong, weighed statutory factors incorrectly, or otherwise committed garden-variety administrative errors. See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 505 (2d Cir. 2005) (inquiry does not turn on whether the agency "made the right decision on the merits," and it is insufficient to establish that the agency acted arbitrarily or capriciously).

Rather, to establish that the Commission committed malfeasance rising to the level of a constitutional violation, Andrus must show more fundamentally that ordering facilities to close or restructure in the interest of aligning health care capacity to regional needs is inherently illegitimate, i.e., an "exercise of power without any reasonable justification in the service of a legitimate governmental objective." Wantanabe Realty Corp. v. City of New York, 315 F. Supp. 2d 375, 392 (S.D.N.Y. 2003). It must show that the Commission's fulfillment of its express legislative mandate to close facilities was "conduct that shocks the conscience and violates the decencies of civilized conduct." Id. (internal quotation marks omitted). In short, it must prove more than mere negligence or administrative error, but rather conduct that rises to the level of intentional malfeasance or bad faith, such as knowingly making a determination that cannot be supported. Id.; see N.Y. State Rest. Ass'n v. N.Y. City Dep't of Health & Mental Hygiene, 303 F. Supp. 2d 265, 272 (E.D.N.Y. 2004). Andrus does not even allege such an act, much less produce evidence that would support it.

6

In any event, Andrus cannot even establish that the Commission's determination was arbitrary and capricious or otherwise "ill-advised." As described in Point I, supra, Andrus has produced no evidence that would cast doubt on the Commission's reasoning, which was not based on any erroneous assumption that Andrus was unprofitable, unoccupied, or a poor provider of care. All it can do is quibble over the Commission's recitation of facts upon which it did not rely. Moreover, as set forth in defendant's opening papers, it is far from clear that the Commission even erred with respect to the various irrelevant details seized upon by Andrus.

## POINT III
## REVOCATION OF ANDRUS' OPERATING LICENSE IS NOT A "TAKING"

Andrus still has produced no evidence that could lead a fact-finder to believe that the Commission's actions divested it of "all" viable uses of its property. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992) ("Lucas"). Instead, it weakly suggests that the defendant bears the burden of producing evidence of some other viable use. See Andrus Mem. at 24. This claim is directly contradicted by Lucas, which plainly places the burden on the person making the takings claim to show the denial of all economically beneficial use of the property claimed to be "taken." Id. at 1015 n.6.

Andrus more fervently, but equally incorrectly, argues that the Commission's action must leave it not simply with another viable use of its property, but with a use "consistent with the Andrus' charitable mission to serve the elderly." Andrus Mem. at 23. Even were this the standard, the Commission's recommended change to Andrus' business model still would allow it to fulfill that charitable mission. Indeed, even if the Commission had revoked Andrus' license entirely, it still would be free to use its property to serve the elderly in a variety of ways. All the State has precluded it from doing is running a certain type of nursing home on that property in

7

order to reduce the oversupply in Westchester County. Even assuming that the State thereby has "deprive[d] the property of its most beneficial use," that does not constitute a Takings Clause claim. See Goldbatt v. Town of Hempstead, 369 U.S. 590, 592 (1962) (upholding ordinance that lowered value of quarry by eighty percent).

If Andrus' claim were correct, then the Takings Clause would bar the State from ever revoking the operating license of a charitably run facility, no matter how sound the cause, and notwithstanding that every facility operating license is conditioned on the continued public need for it. See Public Health Law § 2806(6). Unsurprisingly, no case supports this expansive reading of the Takings Clause. The only case cited by Andrus, Rector, Wardens, and Members of the Vestry of St. Bartholomew's Church v. City of New York, 728 F. Supp. 958 (S.D.N.Y. 1989), aff'd, 914 F.2d 348 (2d Cir. 1990), involved the application of a newly passed landmark preservation law to a long-standing religious facility. It drew on the New York Court of Appeals' specialized jurisprudence for this highly specific scenario, which also implicates Free Exercise Clause concerns and involves an area of regulation where the State's powers are far more circumscribed. See id. at 966 (citing Soc'y for Ethical Culture v. Spatt, 51 N.Y.2d 449, 454 (1980) and Lutheran Church in America v. City of New York, 35 N.Y.2d 121 (1974)). These cases have no application beyond landmark regulation, and certainly do not prevent the State from exercising its traditional power to regulate in the public health.

To the extent that Andrus continues to complain of uncertainty as to how it will pay for the changes required by the Commission Report (as opposed to bringing a facial challenge against the legitimacy of the Commission's action no matter how well it is compensated), such a claim is unripe unless and until Andrus pursues its various avenues for securing compensation,

8

including a suit against the State in state court. See San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 346-47 (2005). The Supreme Court has expressly considered the objection raised by Andrus, that this rule means that many takings claims cannot be heard in federal court, and has rejected it. Id.

## POINT IV
## ANDRUS' CONTRACTS CLAIM IS NOT VIABLE

Andrus' Contracts Clause claim is flawed because it fails to challenge the Enabling Legislation itself, but rather focuses on the Berger Commission's implementation of that legislation. But the Contracts Clause does not apply to the administrative implementation of statutes. Rather, it simply bars the State from passing any "Law impairing the Obligation of Contracts." U.S. Const. § 10, Cl. 1. "By its terms, the clause 'is aimed at the legislative power of the State, and not at . . . the acts of administrative or executive boards or officers.'" W. 95 Hous. Corp. v. N.Y. City Dep't of Hous. Pres., 2001 WL 664628, *7 (S.D.N.Y. 2001), (quoting New Orleans Waterworks v. La. Sugar Refining Co., 125 U.S. 18, 30 (1888) (Gasior Reply Aff. Exh. B). Thus, the only question is whether the Enabling Legislation itself survives Contracts Clause scrutiny, and Andrus appears to concede that it does.

As described more fully in defendant's opening memorandum, even assuming the Enabling Legislation substantially impaired reasonable contractual expectations, which it did not, such impairment would be permissible if the legislation was a "reasonable and necessary" means of serving "a legitimate public purpose." Buffalo Teachers Federation v. Tobe, 464 F.3d 362, 368 (2nd Cir. 2006). Andrus explicitly "does not question the Enabling Legislation's objectives to streamline the delivery of health care services and realign the supply of nursing home and hospital beds with current and projected demands." Andrus Mem. at 26. Having conceded the

9

legitimacy of the Enabling Legislation's public purpose, Andrus also does not question that the

legislation was a "reasonable and necessary" means of carrying out that purpose. Accordingly,

any Contracts Clause claim against the Enabling Legislation — the only claim available under

this constitutional provision — must fail.

## CONCLUSION

Defendant respectfully requests that his Motion for Summary Judgment be granted.

Dated: New York, New York
August 22, 2007

ANDREW M. CUOMO
Attorney General of the
State of New York
Attorney for Defendant

By:_____
John P. Gasior
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
212-416-8570

TO:    Peter G. Bergmann, Esq.
Brian McGovern, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Telephone: 212-504-6000