admits that, while defendant has not "assured" plaintiff that governmental funding needed to pay

for restructuring will be made available, the New York State Department of Health ("DOH") has

made implementation funds available, as indicated on the DOH web site at

http://www.health.state. ny.us/funding/rfa/0705141214/.

6.    Paragraph 7: The paragraph does not present allegations of fact to be admitted,

denied or otherwise addressed in an answer. To the extent a response may be deemed necessary,

denies.

7.    Paragraphs 8-10: Denies.

8.    Paragraph 11: Admits.

9.    Paragraph 12: Admits that Richard F. Daines is the Commissioner of Health for the

State of New York and that he maintains offices in New York City and otherwise refers the Court

to Part K of Chapter 58 of the Laws of 2003, as added by Section 31 of Part E of Chapter 63 of the

Laws of 2005 (the "Enabling Legislation"), and denies to the extent plaintiff's allegations are

inconsistent therewith.

10.    Paragraph 13: The paragraph cites the legal basis for plaintiff's action rather than

allegations of fact to be admitted, denied or otherwise addressed in an answer. To the extent a

response may be deemed necessary, denies.

11.    Paragraphs14-15: The paragraph presents a legal conclusion as to jurisdiction and

venue rather than allegations of fact to be admitted, denied or otherwise addressed in an answer.

To the extent a response may be deemed necessary, denies.

12.    Paragraph 16: Admits so much of the paragraph as alleges that the New York

State Legislature passed, and then-Governor Pataki signed into law, the Enabling Legislation and

2

otherwise refers the Court to the Enabling Legislation and denies to the extent plaintiff's
allegations are inconsistent therewith.

13.    Paragraphs 17-18: Refers the Court to the Enabling Legislation and denies to the
extent plaintiff's allegations are inconsistent therewith.

14.    Paragraph 19: Admits that the New York State Commission on Healthcare
Facilities in the 21st Century (the "Commission") was created pursuant to the Enabling
Legislation. Admits that the Commission established a Regional Advisory Committee ("RAC")
for six designated regions in New York State. Admits that the Hudson Valley RAC encompassed
Delaware, Dutchess, Orange, Putnam, Rockland, Sullivan, Ulster and Westchester counties.
Otherwise, refers the Court to the Enabling Legislation and denies to the extent plaintiff's
allegations are inconsistent therewith.

15.    Paragraph 20: Refers the Court to the Enabling Legislation and denies to the extent
plaintiff's allegations are inconsistent therewith.

16.    Paragraph 21: With respect to the first sentence, refers the Court to the Enabling
Legislation and denies to the extent plaintiff's allegations are inconsistent therewith. With respect
to the last sentence, denies.

17.    Paragraph 22: Denies knowledge or information sufficient to form a belief as to
the truth or veracity of the allegations in the first sentence. The second sentence presents a legal
conclusion rather than allegations of fact to be admitted, denied or otherwise addressed in an
answer and thus, to the extent a response may be deemed necessary, denies.

18.    Paragraphs 23-24: Refers the Court to the Enabling Legislation and denies to the
extent plaintiff's allegations are inconsistent therewith.

3

19. Paragraph 25: Admits that plaintiff, John E. Andrus Memorial, Inc. ("Andrus"), has been licensed since 1969 by DOH as a residential health care facility for 247 beds up to July 1, 2006, for 197 beds thereafter, and otherwise denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

20. Paragraph 26: Denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

21. Paragraph 27: Denies.

22. Paragraph 28: Denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

23. Paragraph 29: With respect to the first sentence, denies. With respect to the second sentence, admits that Andrus currently is licensed by DOH as a 197 bed residential health care facility and otherwise denies the allegations therein. With respect to the third sentence, denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

24. Paragraph 30: Admits that Andrus developed a plan to convert itself into a Continuing Care Retirement Community and otherwise denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

25. Paragraph 31: Denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

26. Paragraph 32: Admits that DOH approved Andrus's application to be a Continuing Care Retirement Community, admit, upon information and belief, that the Village of Hastings-On-Hudson denied Andrus necessary permits, and otherwise denies knowledge or

4

information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

27.    Paragraph 33: Admits that on or about January 24, 2007, DOH approved the decertification of 50 beds at Andrus and otherwise denies the allegations.

28.    Paragraph 34 : Denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

29.    Paragraph 35: With respect to the first sentence, admits that between 2004 and 2006 Andrus received approval for three separate projects with a cumulative value of approximately $6 million. With respect to the last sentence, admits.

30.    Paragraph 36: Denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations regarding what Andrus "contemplated" and otherwise denies the allegations therein.

31.    Paragraph 37: Denies.

32.    Paragraph 38: Denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

33.    Paragraph 39: Denies the allegation regarding "voluntary rightsizing" and otherwise denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

34.    Paragraph 40: Denies.

35.    Paragraph 41: With respect to the first sentence, refers the Court to the Enabling Legislation and denies to the extent plaintiff's allegations are inconsistent therewith. With respect to the second sentence, denies.

5

36.    Paragraph 42: Denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

37.    Paragraph 43: With respect to the first sentence, admits that there were meetings between the Hudson Valley RAC and Andrus and otherwise denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein. With respect to the second sentence, denies.

38.    Paragraph 44: With respect to the first sentence, admits. With respect to the second sentence, denies.

39.    Paragraph 45: With respect to the first sentence, refers the Court to the report issued to the Commission by the Hudson Valley RAC and denies to the extent plaintiff's allegations are inconsistent therewith. With respect to the second sentence, denies.

40.    Paragraph 46: With respect to the first sentence, denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein. With respect to the second sentence, refers the Court to the report issued to the Commission by the Hudson Valley RAC and denies to the extent plaintiff's allegations are inconsistent therewith.

41.    Paragraph 47: With respect to the first sentence, refers the Court to the report issued to the Commission by the Hudson Valley RAC. With respect to the second sentence, denies.

42.    Paragraph 48: With respect to the first sentence, denies. With respect to the second and third sentences, denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein. With respect to the last sentence denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegation

6

regarding the type of data Andrus provided and otherwise denies the allegations.

43.    Paragraph 49: Denies.

44.    Paragraph 50: Denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

45.    Paragraph 51: Admits that the Hudson Valley RAC issued its recommendations to the Commission on or about November 15, 2006, that the Hudson Valley RAC recommendations were made public on or about November 28, 2006 and otherwise denies the allegations therein.

46.    Paragraph 52: With respect to the first sentence, denies. With respect to the second sentence, admits that the Commission issued its final report on November 28, 2006, refers the Court to that report and denies to the extent plaintiff's allegations are inconsistent therewith.

47.    Paragraph 53: Denies.

48.    Paragraph 54: With respect to the first sentence, refers the Court to the Commission's final report and denies to the extent plaintiff's allegations are inconsistent therewith. With respect to the second sentence, denies. With respect to the third sentence, denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

49.    Paragraphs 55-56: Denies.

50.    Paragraph 57: With respect to the first sentence, refers the Court to the Commission's final report and denies to the extent plaintiff's allegations are inconsistent therewith. With respect to the second sentence, denies. With respect to the third sentence, denies.

51.    Paragraph 58: With respect to the first sentence, refers the Court to the Commission's final report and denies to the extent plaintiff's allegations are inconsistent therewith.

7

With respect to the rest of the paragraph, denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

52.    Paragraphs 59-60: Denies.

53.    Paragraph 61: Refers the Court to the Commission's final report and denies to the extent plaintiff's allegations are inconsistent therewith.

54.    Paragraph 62: With respect to the first sentence, refers the Court to the Commission's final report and denies to the extent plaintiff's allegations are inconsistent therewith. With respect to the rest of the paragraph, denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein.

55. Paragraph 63: With respect to the first three sentences, refers the Court to the Commission's final report and denies to the extent plaintiff's allegations are inconsistent therewith. With respect to the last sentence, denies.

56. Paragraph 64: Refers the Court to the Commission's final report and denies to the extent plaintiff's allegations are inconsistent therewith.

57. Paragraph 65: With respect to the first and second sentences, denies knowledge or information sufficient to form a belief as to the truth or veracity of the allegations contained therein. With respect to the third sentence, refers the Court to the Enabling Legislation and denies to the extent plaintiff's allegations are inconsistent therewith.

58. Paragraph 66: With respect to the first sentence, denies and otherwise with respect to the paragraph refers the Court to the Commission's final report and denies to the extent plaintiff's allegations are inconsistent therewith.

59. Paragraph 67: Denies that the allegation that Andrus addressed all concerns that may

8

have existed in regard to the need for renovations and otherwise refers the Court to the

Commission's final report and denies to the extent plaintiff's allegations are inconsistent

therewith.

60. Paragraph 68: With respect to the second sentence, denies and otherwise with respect

to the paragraph refers the Court to the Commission's final report and denies to the extent

plaintiff's allegations are inconsistent therewith.

61. Paragraph 69: Admits.

62. Paragraph 70: Denies.

63. Paragraph 71: Admits.

64. Paragraph 72: Refers the Court to the original materials cited in the paragraph and

denies to the extent plaintiff's allegations are inconsistent therewith.

65. Paragraph 73: With respect to the first sentence, refers the Court to the Commission's

final report and denies to the extent plaintiff's allegations are inconsistent therewith. With respect

to the rest of the paragraph, denies.

66. Paragraph 74: Repeats and reasserts prior responses.

67. Paragraphs 75-76: Denies.

68. Paragraph 77: Repeats and reasserts prior responses.

69. Paragraphs 78-79: Denies.

70. Paragraph 80: Repeats and reasserts prior responses.

71. Paragraph 81-82: Denies.

72. Paragraph 83: Repeats and reasserts prior responses.

73. Paragraphs 84-85: Denies.

9

74. Paragraph 86: Repeats and reasserts prior responses.

75. Paragraph 87: Denies knowledge or information sufficient to form a belief as to the

truth or veracity of the allegations contained therein.

76. Paragraphs 88-89: Denies.

77. Paragraph 90: Repeats and reasserts prior responses.

78. Paragraphs 91-92: Denies.

79. Paragraph 93: Repeats and reasserts prior responses.

80. Paragraph 94: Denies.

81. Paragraph 95: Denies knowledge or information sufficient to form a belief as to the

truth or veracity of the allegations contained therein.

82. Paragraphs 96-98: Denies.

83. Paragraph 99: Denies knowledge or information sufficient to form a belief as to the

truth or veracity of the allegations contained therein.

84. Paragraph 100: Denies.

## FIRST DEFENSE

85. Even prior to the enactment of the Enabling Legislation enabling legislation, the

plaintiff did not have a property interest in any operating certificate.

## SECOND DEFENSE

86. If plaintiff had a limited interest in an operating certificate, such interest was

extinguished by the enactment of the Enabling Legislation.

## THIRD DEFENSE

87. The Court lacks jurisdiction by virtue of the Eleventh Amendment to the United

10

States Constitution.

## FOURTH DEFENSE

88.     Pursuant to its police power, the State may legislate as it sees fit in a reasonable manner, notwithstanding a claim of property right. Further, any due process to which plaintiff was entitled was provided through the legislative process and/or through the process provided by the Commission.

## FIFTH DEFENSE

89.     To the extent plaintiff has asserted a claim based on the impairment of contracts clause of the United States Constitution, the actions complained of were taken in furtherance of a legitimate state interest and in the exercise of the State's police power, and the provisions of state law were implicit conditions of any contract.

## SIXTH DEFENSE

90.     The Complaint fails to state a cause of action because the alleged deprivation is not unreasonable or irrational, is reasonably related to a legitimate governmental objective, is within the police powers of the State, and can be addressed through available due process means.

## SEVENTH DEFENSE

91.     With respect to plaintiff's due process and equal protection claims, the actions challenged are within the police powers of the State, which permit the State to legislate and exercise the actions complained of.

## EIGHTH DEFENSE

92.     The Enabling Legislation put every facility in the State, including plaintiff, on notice that it was subject to closing or other action.

11

**WHEREFORE**, Defendant respectfully requests that this Court dismiss the Complaint, with prejudice, deny the relief requested, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 5, 2007

                    ANDREW M. CUOMO
                    Attorney General of the
                      State of New York
                    Attorney for Defendant

By:_____
                    John Gasior
                    Assistant Attorney General
                    120 Broadway – 24th Floor
                    New York, New York 10271
                    212-416-8570

To:    Peter G. Bernmann, Esq.
       Brian McGovern, Esq.
       Cadwalader, Wickersham & Taft LLP
       One World Financial Center
       New York, New York 10281
       212-504-6000

07-CV-3432 (CLB) (KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN E. ANDRUS MEMORIAL, INC.
(d/b/a) ANDRUS ON HUDSON,

Plaintiff,

-against-

RICHARD F. DAINES, as Comm'r
of the N.Y.S. Dept. of
Health,

Defendant.

ANSWER

ANDREW M. CUOMO
Attorney General

Attorney for
Defendant
Office and Post Office Address
120 Broadway, New York, N.Y. 10271
Tel. (212) 416-8570

Personal service of a copy of
within.................................
is admitted this.......................day of
...................................................20

---

Sir:

Please take notice that the within is a true
copy of
duly filed and entered in the office of the Clerk
of                                             County, on
the
                day of                        ,20 .

Yours, etc.,
ANDREW M. CUOMO
Attorney General,

To

Attorney for

flloney For
120 Broadway New York, N.Y. 10271
Office and Post Office Address

To                                            ,Esq.

Sir:

Please take notice that the within

will be presented for settlement and signature herein
to the Hon.
te of the judges of the within named Court, at
In the Borough of
City of New York, on the
Dated, N.Y.                           20    ,at      M.
day of
M.                                                    ,20.
Yours, etc.,
ANDREW M. CUOMO
Attorney General,

Attorney For

Office and Post Office Address
120 Broadway, New York, N.Y. 10271

To                                            ,Esq.

Attorney for

# EXHIBIT C

Westlaw.

--- N.Y.S.2d ----                                                                Page 1
--- N.Y.S.2d ----, 2007 WL 1747029 (N.Y.A.D. 1 Dept.), 2007 N.Y. Slip Op. 05360
**(Cite as: --- N.Y.S.2d ----)**

**H**
McKinney v. Commissioner of New York State Dept. of Health
N.Y.A.D. 1 Dept.,2007.

Supreme Court, Appellate Division, First
Department, New York.
Mary McKINNEY, et al., Plaintiffs-Appellants,
v.
The COMMISSIONER OF THE NEW YORK
STATE DEPARTMENT OF HEALTH, et al.,
Defendants-Respondents.
June 19, 2007.

Chadbourne & Parke LLP, New York (Thomas E.
Bezanson of counsel), for appellants.
Andrew M. Cuomo, Attorney General, New York
(Sasha Samberg-Champion of counsel), for
respondents.

FRIEDMAN, J.P., NARDELLI, BUCKLEY,
SWEENY, MALONE, JJ.
*1 Order, Supreme Court, Bronx County (Mary Ann
Brigantti-Hughes, J.), entered on or about March 9,
2007, which, in an action challenging the
constitutionality of the legislation establishing the
Commission on Health Care Facilities in the 21st
Century (L 2005, ch 63, part E, § 31), granted
defendants' motion pursuant to CPLR 3211(a) to
dismiss the complaint, unanimously affirmed, without
costs.

We reject defendants' arguments that the individual
plaintiff does not have taxpayer standing under State
Finance Law § 123-b(1) (see *Saratoga Chamber of
Commerce v. Pataki*, 100 N.Y.2d 801, 813-814
[2003],*cert denied*540 U.S. 1017 [2003] [claim that it
is illegal to spend money at all for questioned activity
likely provides taxpayer standing] ), and that
Westchester Square Medical Center (WSMC), on
which the individual plaintiff allegedly depends for
medical care but which chose not to participate in the

action after being notified thereof, would be inequitably
affected by a judgment or is otherwise a necessary party
(CPLR 1001[a]; *cf. Matter of Castaways Motel v
Schuyler*, 24 N.Y.2d 120, 125 [1969],*adhered to on
rearg*25 N.Y.2d 692 [1969];*Kronish Lieb Weiner &
Hellman LLP v. Tahari, Ltd.*, 35 AD3d 317 [2006] ). In
view of the foregoing, we need not address the issue of
plaintiffs' standing under the common law. However,
we also reject plaintiffs' argument that the subject
legislation unconstitutionally delegated the Legislature's
lawmaking power to the executive branch, and
accordingly affirm dismissal of the action. Enabling
statutes even broader than this one have been found
constitutional (see e.g. *Matter of Medical Socy. v.
Serio*, 100 N.Y.2d 854, 864-865 [2003];*Boreali v.
Axelrod*, 71 N.Y.2d 1, 9 [1987] ). Having made the
basic policy choice that some hospitals and nursing
homes needed to be closed and others needed to be
resized, consolidated, converted, or restructured, the
legislation permissibly authorized the Commission " 'to
fill in details and interstices and to make subsidiary
policy choices consistent with the enabling legislation'
" (*Dorst v. Pataki*, 90 N.Y.2d 696, 699 [1997], quoting
*Matter of Citizens for an Orderly Energy Policy v.
Cuomo*, 78 N.Y.2d 398, 410 [1991];*see also Medical
Socy.*, 100 N.Y.2d at 865).

N.Y.A.D. 1 Dept.,2007.
McKinney v. Commissioner of New York State Dept.
of Health
--- N.Y.S.2d ----, 2007 WL 1747029 (N.Y.A.D. 1
Dept.), 2007 N.Y. Slip Op. 05360

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

To commence the statutory time
period for appeals as of right
(CPLR 5513[a]), you are
advised to serve a copy of
this order, with notice of
entry, upon all parties.

P R E S E N T :

**HON. ORAZIO R. BELLANTONI
JUSTICE OF THE SUPREME COURT**

-------------------------------------

COMMUNITY HOSPITAL AT DOBBS FERRY and
ST. JOHN'S RIVERSIDE HOSPITAL,

                Plaintiffs,

       - against -

ANTONIA C. NOVELLO, as Commissioner of
the New York State Department of Health,
THE NEW YORK STATE COMMISSION ON
HEALTHCARE FACILITIES IN THE 21ST
CENTURY, STEPHEN BERGER, as Commissioner
of the New York State Commission on
Healthcare Facilities in the 21st Century,
ELIOT SPITZER, as Governor of the State
of New York, SHELDON SILVER, as Speaker
of the New York State Assembly, JOSEPH L.
BRUNO, as Temporary President and Majority
Leader of the New York State Senate, the
NEW YORK STATE ASSEMBLY, the NEW YORK STATE
SENATE, and the STATE OF NEW YORK,

                Defendants.
-------------------------------------

```
┌──────────────────────────────┐
│      FILED & ENTERED          │
│                               │
│      7│1│0   2007             │
│                               │
│   WESTCHESTER COUNTY          │
│        CLERK                  │
└──────────────────────────────┘
```

**SHORT FORM ORDER**
Index No. 24650/06
Motion Date: 4/11/07

     Plaintiffs move for an order, pursuant to CPLR 6301 and 28
USC §1983, preliminarily enjoining the Commissioner of the New
York State Department of Health from taking any further steps to
implement the recommendation of the New York State Commission on
Healthcare Facilities in the 21st Century that the Community
Hospital at Dobbs Ferry cease operations and close.

     Defendants cross-move for an order, pursuant to CPLR 3212,
granting summary judgment.

     The following papers were read:

Notice of Motion - Affirmation in Support of Leonard M.     1-13
Rosenberg, Esq. - Annexed Exhibits A-G - Affidavit in
Support of Ronald J. Corti - Annexed Exhibits A-B
- Affidavit in Support of James Foy

Plaintiffs' Memorandum of Law in Support | 14
Notice of Cross-Motion - Affirmation in Support of Judith | 15-18
C. McCarthy, Esq. - Annexed Exhibits A-B
Affidavit of Janette A. Simms - Annexed Exhibits A-Q | 19-36
Affidavit of Neil Benjamin - Annexed Exhibit A | 37-38
Defendants' Memorandum of Law - Annexed Exhibits A-B | 39-41
Affirmation of Leonard M. Rosenberg, Esq. - Annexed | 42-48
Exhibits A-F
Affidavit of James Foy | 49
Plaintiffs' Memorandum of Law | 50
Reply Affirmation of Judith C. McCarthy, Esq. | 51

Upon the foregoing papers it is hereby ORDERED that plaintiffs' motion for a preliminary injunction is granted.

A review of the evidence submitted to the Court reveals that plaintiffs have demonstrated: (1) a likelihood of ultimate success on the merits; (2) that they would suffer irreparable harm unless the injunction is granted; and (3) that the equities are balanced in their favor. Jurlique, Inc. v Austral Biolab Pty., Ltd., 187 AD2d 637, 639 (2nd Dept 1992) citing Fischer v Deitsch, 168 AD2d 599 and Koursiaris v Astoria N. Dev., 143 AD2d 639. Accordingly, a preliminary injunction shall issue. Harbor View Association v Sucher, 237 AD2d 488, 490 (2nd Dept 1997).

Public Health Law § 2806 gives the Commissioner of the Department of Health the authority to "revoke, suspend, limit, or modify " the operating license of any New York hospital based on the analysis of public need. However, pursuant to said law, the hospital is required to receive specific notice and an evidentiary hearing prior to the revocation of its license.

No specific notice was ever sent to Dobbs Ferry hospital indicating that the Commissioner of the Department of Health intends to hold an evidentiary hearing in accordance with the Public Health Law to determine whether to close down said hospital. Said notice guarantees the hospital's constitutional Fourteenth Amendment due process, i.e. that "... nor shall any State deprive any person of life, liberty or property, without due process of law..." Inadequate notice is no notice at all.

The Berger Commission did not provide adequate notice to Dobbs Ferry hospital that it was being closed. It reviewed every hospital and nursing home in New York State without identifying which facilities were likely to be recommended for closure. This generalized notice did not fulfill Dobbs Ferry's guarantee of procedural due process.

2

The notice must be reasonably specific, and must give the noticed party enough time and information with which to prepare a sufficient defense. It is to be noted that the decision of the Berger Commission to close Dobbs Ferry hospital does not state the position of Dobbs Ferry hospital; that is because the Commission never sought Dobbs Ferry hospital's response as to why the hospital should stay open. In other words, Dobbs Ferry hospital was never given the opportunity to submit a defense in accordance with New York State Public Health Law.

Accordingly, plaintiffs are granted a preliminary injunction staying any further action or proceeding by the Commissioner of Health to implement Dobbs Ferry's closure, pending a final determination of this action.

It is hereby further ORDERED that defendants' cross-motion for summary judgment is denied.

In the instant action, plaintiffs allege a variety of constitutional and statutory challenges to legislation which created the New York State Commission on Healthcare Facilities in the Twenty-First Century. Plaintiffs also seek to challenge the Berger Commission's recommendation that Community Hospital at Dobbs Ferry be closed.

On a motion for summary judgment, the test to be applied is whether triable issues of fact exist or whether on the proof submitted judgment can be granted to a party as a matter of law. See Andre v Pomeroy, 35 NY2d 361 (1974). The movant must set forth a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. See Alvarez v Prospect Hospital, 68 NY2d 320 (1986). Once the movant sets forth a prima facie case, the burden of going forward shifts to the opponent of the motion to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact. See Zuckerman v City of New York, 49 NY2d 557 (1980). However, the failure to meet the initial burden of persuasion requires that the application be denied regardless of the sufficiency of the opposing papers. See Torres v Industrial Container, 305 AD2d 136 (1st Dept 2003).

Here, defendants have not set forth a prima facie showing of entitlement to judgment as a matter of law. See Weingrad v New York University Medical Center, 64 NY2d 851, 853 (1985); see also Coley v Michelin Tire Corp., 99 AD2d 795, 796 (2nd Dept 1984). Counsel's affirmation alone, with no sworn affidavit from someone with personal knowledge of the facts to substantiate its claims, is insufficient. See Menzel v Plotnick, 202 AD2d 558 (2nd Dept 1994). Moreover, multiple genuine triable issues of material fact exist. Finally, as discovery has not yet taken place, the

3

application is premature. <u>See</u> <u>Afzal v Board of Fire Comm'rs of Bellmore Fire Dist.</u> 23 AD3d 507 (2nd Dept 2005), <u>Executive Aviation Servs., Inc. v Flightways of Long Island, Inc.</u>, 15 AD3d 611 (2nd Dept 2005) and <u>Rengifo v City of New York</u>, 7 AD3d 773 (2nd Dept 2004); <u>see also</u> <u>Ross v Curtis-Palmer Hydro-Electric Co.</u>, 81 NY2d 494 (1993), <u>Yadgarov v Dekel</u>, 2 AD3d 631 (2nd Dept 2003) and <u>Almonte v Latortue</u>, 293 AD2d 431 (2nd Dept 2002). Pursuant to CPLR 3212(f), "[s]hould it appear from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion or may order a continuance to permit affidavits to be obtained or disclosure to be had ... ."

Accordingly, summary judgment is inappropriate at this time. <u>See</u> CPLR 3212(b).

This matter is scheduled for a preliminary conference on July 31, 2007 at 9:30 A.M. in courtroom 1203 at the Westchester County Courthouse, 111 Dr. Martin Luther King, Jr. Boulevard, White Plains, New York.

Dated: **July 10, 2007**
   White Plains, New York

            _Orazio R. Bellantoni._
            HON. ORAZIO R. BELLANTONI
            Justice of the Supreme Court

Garfunkel, Wild & Travis, P.C.
Attorneys for Plaintiffs
111 Great Neck Road
Great Neck, New York 11021

Andrew M. Cuomo
Attorney General of the State of New York
Attorney for Defendants
101 East Post Road
White Plains, New York 10601

# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
NextG Networks of New York, Inc. v. City of New
York
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
NEXTG NETWORKS OF NEW YORK, INC.,
Plaintiff,
v.
CITY OF NEW YORK, City of New York
Department of Information Technology and
Telecommunications, and Gino P. Menchini, in his
official capacity, Defendants.
**No. 03 Civ. 9672(RMB).**

Dec. 10, 2004.

*DECISION AND ORDER*
BERMAN, J.

I. Introduction

**\*1** On December 5, 2003, NextG Networks of New
York, Inc. ("Plaintiff" or "NextG"), a provider of
telecommunication services, filed this action against the
City of New York, the City of New York Department of
Information Technology and Telecommunications
("DoITT"), and Gino P. Menchini, in his official
capacity as Commissioner and Chief Information
Officer of the DoITT (collectively, "Defendants" or
"the City"), alleging violation of Section 101 of the
Telecommunications Act of 1996 ("TCA"), 47 U.S.C.
§ 253 ("Section 253").FN1 NextG filed a First Amended
Verified Complaint for Declaratory Ruling and
Permanent Injunctive Relief ("Amended Complaint" or
"Am. Compl.") on March 2, 2004, seeking, among
other things, authorization from the City to install its
"wireless network architecture ... based on ... fiber-optic
cable and small antennas mounted in the public
rights-of-way (ROW), on infrastructure such as lamp
posts and utility poles." (Affidavit of David Cutrer
dated Mar. 11, 2004 ("Cutrer Aff."), ¶ 8.) FN2 Plaintiff

alleges, among other things, that (i) "the regulatory
framework imposed by the City of New York on
providers of telecommunications services" violates
Section 253 "because the City assumes that it has the
unfettered discretion and power to determine who may
or may not provide telecommunications services using
some wireless technology in the City," Am. Compl. at
1, ¶¶ 153-60; (ii) "Defendants' unreasonable delay and
refusal to grant NextG a franchise" has "had the effect
of prohibiting the ability of NextG to provide
telecommunications services in violation of 47 U.S.C.
§ 253 ...," *id.* ¶¶ 161-65; and (iii) Defendants' actions
and non-actions in response to NextG's attempts to gain
access to the public rights-of-way and provide
telecommunications services are "discriminatory and
not competitively neutral," *id.* ¶¶ 166-74. Plaintiff seeks
"damages, costs and reasonable attorney's fees in
accordance with 42 U.S.C. §§ 1983[and] 1988(b)." (*Id.*
at 30-31.) FN3

> FN1. The Telecommunications Act of 1996 is
> " 'an act to promote competition and reduce
> regulation in order to secure lower prices and
> higher quality services for American
> telecommunications consumers and encourage
> the rapid deployment of new
> telecommunications technologies." ' *People
> of the State of N.Y. & Pub. Serv. Comm'n of
> the State of N.Y. v. Fed. Communications
> Comm'n,* 267 F.3d 91, 96 (2d Cir.2001)
> (citing Telecommunications Act of 1996,
> Pub.L. No. 104-104, 110 Stat. 56 (1996)).

> FN2. The Court will use the term "poles" or
> "lightpoles" to refer to "street light poles,
> traffic light poles and highway sign supports."
> ("Request for Proposals for Franchises for the
> Installation and Use, on City-Owned Street
> Light Poles, Traffic Light Poles and Highway
> Sign Support Poles, of Telecommunications
> Equipment and Facilities, Including Base
> Station and Access Point Facilities, in
> Connection with the Provision of Mobile

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Telecommunications Services" dated Feb. 9, 2004, Ex. 3 to Affidavit of T. Scott Thompson dated July 21, 2004 ("Thompson Aff.") ("2004 RFP").)

FN3. 42 U.S.C. § 1983 ("Section 1983") provides, in relevant part: "Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..."

42 U.S.C. § 1988(b) ("Section 1988") provides, in relevant part: "In any action or proceeding to enforce a provision of section [ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs ..."

Plaintiff (initially) moved for a preliminary injunction against the City on March 15, 2004 ("Pl. Initial PI Mot."). Defendants opposed Plaintiff's Initial PI Motion and cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(c) on April 16, 2004 ("Def.12(c) Mot."). Defendants argue that (i) the Amended Complaint fails to state a claim under Section 253 of the TCA; (ii) NextG's claims are not ripe for review; and (iii) violation of Section 253 does not provide a basis to recover monetary damages or attorney's fees under Sections 1983 and 1988. On May 7, 2004, NextG submitted Plaintiff's Reply in Support of its Motion for Preliminary Injunction and Opposition to Defendants' Motion for Judgment on the Pleadings ("Pl.12(c) Opp'n"), and on May 18, 2004, Defendants filed a Reply Memorandum of Law in Further Support of Defendants' Cross-Motion for Judgment on the Pleadings ("Def.12(c) Reply").

*2 While Plaintiff's Initial PI Motion and Defendants' 12(c) Motion were pending, Plaintiff submitted a second motion for preliminary injunction and temporary restraining order ("TRO") on July 22, 2004 ("Pl. PI

Mot."), reflecting more recent events, and requested that Plaintiff's Initial PI Motion be superseded by the July 22, 2004 motion, and that the City be enjoined from "granting any franchises or otherwise providing access to City street light and similar poles pursuant to the 2004 RFP [Request for Proposals] and the challenged City laws, unless NextG is simultaneously granted access to City streets and poles on lawful terms and conditions." (Pl. PI Mot. at 10.) Defendants filed a Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction on August 9, 2004 ("Def. PI Opp'n"). Plaintiff submitted a reply brief on August 13, 2004 ("Pl. PI Reply"). The parties waived an evidentiary hearing and oral argument. For the reasons that follow, Plaintiffs' motion for a temporary restraining order and preliminary injunction is denied. Defendants' cross-motion for judgment on the pleadings is also denied.[FN4]

FN4. The Court is not here ruling upon the ultimate merits of the parties' respective claims. Any arguments not specifically discussed herein were considered by the Court and rejected.

## II. Background

NextG alleges that it "has been attempting to obtain permission from the City of New York to construct, operate, own, and maintain facilities in the City for the purposes of providing telecommunications services ... since March, 2002," Affidavit of Robert Delsman dated Mar. 12, 2004 ("Delsman 3/12/04 Aff."), ¶ 11, and that since March 2002 its representatives "have communicated with representatives of the City, including DoITT, at least monthly" and during these communications NextG was "regularly informed that DoITT was going to issue an RFP for the franchise NextG required shortly." (Id. ¶ 13.) [FN5] An RFP was issued on February 9, 2004 ("2004 RFP"). (Def. PI Opp'n at 2-3 .) On April 16, 2004, NextG responded to the 2004 RFP by submitting a proposal for a mobile telecommunications franchise. (Proposal for Mobile Telecommunications Franchise dated Apr. 16, 2004, Ex. 4 to Thompson Aff. ("NextG Proposal").) On April

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30, 2004, the City wrote to NextG (and six other applicants) requesting written clarification with respect to ten RFP matters, *i.e.* related to compensation and allocation of the (finite) number of poles available. (Letter from Cangemi to Delsman of Apr. 30, 2004, Ex. 1 to Affidavit of Robert Delsman dated July 21, 2004 ("Delsman 7/21/04 Aff."), at 1 ("Apr. 30, 2004 Letter").) The April 30, 2004 Letter also stated: "If NextG does not submit a written response, the Evaluation Committee shall consider NextG's proposal withdrawn from consideration." (*Id.* at 2.) On May 5, 2004, NextG responded to the April 30, 2004 Letter by submitting responses to the City's ten queries but also declining to commit to several of the City's requirements, including, among others, a "minimum annual Zone compensation," the City's proposed "monthly pole compensation" levels, and the City's proposed process for resolving "competing requests" for access to poles. (Letter from Delsman to Cangemi of May 5, 2004, Ex. 2 to Delsman 7/21/04 Aff., at 1-2 ("May 5, 2004 Letter") ("NextG believes that the City's requirement of a minimum annual Zone compensation is impermissible under the Telecommunications Act and declines to offer franchise compensation beyond that stated in the Proposal;" "NextG has clearly stated its proposed pole attachment rates in the Proposal and declines to commit to the minimum compensation levels requested by Zone. NextG would prefer to construct its own poles in the public way rather than pay the rates the City requires for use of its poles.").)

> FN5. "Pursuant to the New York City Charter, the City can authorize the installation of telecommunications equipment on City-owned street poles for a fixed term only through a franchise and must first issue a Request for Proposals ("RFP"), or similar solicitation, authorized by a City Council resolution." (Def. Opp'n at 2; *see* New York City Charter, Ex. 1 to Thompson Aff. ("City Charter"); New York City Council Resolution No. 957 dated Aug. 11, 1999, Ex. 2 to Thompson Aff. ("Resolution No. 957"); 2004 RFP.)

> FN6. The City had proposed minimum

amounts of \$10, \$50, or \$250 per pole, per month (depending on the location of the pole), and minimum annual compensation fees of \$10,000, \$50,000, or \$100,000 (depending on the zones in which the franchisee chose to locate their poles). (*See* Apr. 30, 2004 Letter at 1-2.) NextG proposed to pay less than the City was requesting-\$600 per pole, per year plus "[a] public way use fee in the amount of five percent (5%) of NextG's gross revenues generated from the provision of RF Transport telecommunications services to its customers over networks located within the City of New York." (NextG Proposal at 6.)

*3 On July 7, 2004, NextG asked the City to "advise us whether it is true ... that the City has advanced other respondents ... to a second stage of negotiation and whether, if true, such advancement and the City's omission of NextG from the process constitutes the City's denial of NextG's application." (Letter from Delsman to Cangemi of July 7, 2004, Ex. 3 to Delsman 7/21/04 Aff., at 1 ("July 7, 2004 Letter").) The City responded on July 12, 2004, stating, among other things, that "Six companies did agree to [monetary and procedural] commitments and have thus proceeded with further negotiations;" that "DoITT has recommended that all six of these companies be approved for franchises;" and that "if NextG is prepared to enter into a franchise agreement on the same terms and conditions as the six companies ..., DoITT would be prepared to recommend NextG for a franchise as well." (Letter from Cangemi to Delsman of July 12, 2004, Ex. 4 to Delsman 7/21/04 Aff., at 1 ("July 12, 2004 Letter").) "On August 3, 2004, following execution by the City, the six franchises were sent to the franchisees for signature." (Def. Opp'n at 5; Letters from DeGuia to six potential franchisees of Aug. 3, 2004, Ex. E to Declaration of Diana M. Murray dated Aug. 9, 2004 ("Murray 8/9/04 Decl.") ("Aug. 3, 2004 Letters").) On December 6, 2004, the City informed the Court that "the challenged franchise process, which was initiated by the City's February 9, 2004 request for proposals, has been completed, and there are now six entities authorized to install telecommunications equipment on City-owned street poles in accordance with the terms of the agreements." (Letter from Murray to Court of Dec.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                            Page 4
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

6, 2004 ("Dec. 6, 2004 Letter").)

### III. Legal Standards

#### 1. Judgment on the Pleadings

"Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir.1995). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999). A complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

It has been said that "[t]he motion to dismiss for failure to state a claim is disfavored and is seldom granted." *Bower v. Weisman*, 639 F.Supp. 532, 539 (S.D.N.Y.1986) (citing *Arfons v. E.I. Du Pont de Nemours & Co.*, 261 F.2d 434, 435 (2d Cir.1958)).

#### 2. Preliminary Injunction and Temporary Restraining Order

"The standards for a TRO are the same as those governing the granting of preliminary injunctive relief." *Roberts v. Atl. Recording Corp.*, 892 F.Supp. 83, 86 (S.D.N.Y.1995). "A preliminary injunction 'is an extraordinary and drastic remedy which should not be routinely granted.' " *Sapienza v. N.Y. News, Inc.*, 481 F.Supp. 671, 674 (S.D.N.Y.1979) (quoting *Med. Soc'y of the State of N.Y. v. Toia*, 560 F.2d 535, 538 (2d Cir.1977)). "To obtain a preliminary injunction, a plaintiff must show (1) irreparable harm and (2) either (a) that it is likely to succeed on the merits or (b) sufficiently serious questions regarding the merits of the claim to make them fairly litigable, with the balance of hardships tipping decidedly in the plaintiff's favor."

*Fun-Damental Too. Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 998-99 (2d Cir.1997); *see also Ecolab, Inc. v. K.P. Laundry Mach., Inc.*, 656 F.Supp. 894, 899 (S.D.N.Y.1987).

*4 Where, as here, the moving party seeks to stay governmental action pursuant to a regulatory scheme, "the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989).

Where a movant has "failed to establish that [it] would suffer irreparable harm in the absence of an injunction, there is no need to reach the second portion of the preliminary injunction analysis." *Jayaraj v. Scappini*, 66 F.3d 36, 38-39 (2d Cir.1995). Irreparable harm is injury that "is likely and imminent, not remote or speculative, and ... is not capable of being fully remedied by money damages." *NAACP, Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir.1995).

### IV. Analysis

#### 1. Claims Under Section 253 of the TCA

Defendants argue that Plaintiff fails to state a claim under Section 253 of the Telecommunications Act of 1996 because, among other things, "The mere decision not to grant, or to condition, the use of City-owned property, such as City-owned street light poles, is not a law, regulation or other requirement as that phrase is used in Section 253." (Def.12(c) Reply at 4-6.) [FN7] The City's decisions are alleged by Defendants to be exercises of its "proprietary authority," not its regulatory authority, and "the TCA is devoid of any evidence that Congress intended to preempt non-regulatory conduct." (*Id.*; Def. 12(c) Mot. at 7.) Defendants also argue that NextG's claims that the City has " 'discriminated against NextG in comparison to Verizon, Aerie Networks, and Metricom" ' is "without basis on its face" because "the Complaint does not allege that Verizon, Aerie Networks or Metricom

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

ha[ve] antennae on City street light poles." (Def.12(c) Reply at 8.) [FN8]

> FN7. Section 253 of the TCA, entitled "Removal of Barriers to Entry," provides, in relevant part:
>
> (a) In general. No State or local statute or regulation ... may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
>
> (b) State regulatory authority. Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis ... requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.
>
> (c) State and local government authority. Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis ...
>
> 47 U.S.C. § 253.
>
> "Under § 253(a), state or local regulations may not prohibit or have the effect of prohibiting telecommunications services-if so, then the relevant regulations are preempted by that provision, unless they can come under the safe harbors set forth in § 253(b) or (c). *TCG New York, Inc. v. City of White Plains,* 125 F.Supp.2d 81, 87 (S.D.N.Y.2000) ("TCG New York I"), *aff'd in part and rev'd in part,* 305 F.3d 67 (2d Cir.2002) ("TCG New York II").

> FN8. In support of it's arguments that the Amended Complaint fails to state a claim, the City relies almost exclusively on case law interpreting a different section of the TCA (namely 47 U.S.C. § 332(c)) than the one that Plaintiff sues under in the Amended Complaint (namely 47 U.S.C. § 253). *See,*

*e.g.,* Def. 12(c) Mot. at 4-10, 6 n. 4; Def. 12(c) Reply at 4-6 (citing *Sprint Spectrum, L .P. v. Willoth,* 176 F.3d 630 (2d Cir.1999) (case brought under 47 U.S.C. § 332(c)); *Omnipoint Holdings, Inc. v. City of Southfield,* 355 F.3d 601 (6th Cir.2004) (same); *Omnipoint Communications Enters. v. Township of Nether Providence,* 232 F.Supp.2d 430 (E.D.Pa.2002) (same)). Because the two sections (although containing some similar language) are not interchangeable, the Court concludes that several of Defendants' arguments in support of its cross-motion are inapposite. *See Sprint Spectrum L.P. v.. Mills,* 283 F.3d 404, 409-10 (2d Cir.2002) (analyzing Sections 253 and 332 separately) ("Mills"); *Omnipoint Communications, Inc. v. Port Auth. of N.Y. & N.J.,* No. 99 Civ. 0060, 1999 WL 494120, at *5, 11 (S.D.N.Y. July 13, 1999) (same) ("Port Auth. of N.Y. & N.J.").

Plaintiff responds that "Street light poles, like the rest of the public rights-of-way, are held by the City in trust for the public, and as such the City may not exercise 'proprietary' control over them." (Pl.12(c) Opp'n at 14.) Furthermore, the City's actions are said to be regulatory and not proprietary because "the fundamental fact that the City is requiring a 'franchise' ... to provide telecommunications services using 'inalienable' property of the City-*e.g.,* the streets and the public rights-of-way" is "substantially different from seeking to lease space in a City-owned building." (*Id.* at 15.) Plaintiff also argues that the City has not been "competitively neutral and nondiscriminatory" because "the incumbent local exchange carrier, Verizon, has installed untold miles of fiber optics and equipment in the public rights-of-way in the City without being subject to any compensation or service regulatory requirements, much less requirements equal to those imposed on NextG." (Pl. Pl Reply at 9.)

### a. Regulatory versus Proprietary Authority

*5 "[T]he Telecommunications Act does not preempt nonregulatory decisions of a local government entity or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

instrumentality acting in its proprietary capacity ..." *Mills,* 283 F.3d at 421. To determine whether the City's " 'interactions with the market [are] so narrowly focused, and so in keeping with the ordinary behavior of private parties, that a regulatory impulse can be safely ruled out,' a court must consider (1) whether 'the challenged action essentially reflects the entity's own interest in its efficient procurement of needed goods and services, as measured by comparison with the typical behavior of private parties in similar circumstances,' and (2) whether 'the narrow scope of the challenged action defeats an inference that its primary goal was to encourage a general policy rather than address a specific proprietary problem." ' *Mills,* 283 F.3d at 420 (quoting *Cardinal Towing & Auto Repair, Inc. v. City of Bedford,* 180 F.3d 686, 693 (5th Cir.1999)); *see also Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.,* 507 U.S. 218, 229 (1993) ("When the State acts as regulator, it performs a role that is characteristically a governmental rather than a private role ... [A]s regulator of private conduct, the State is more powerful than private parties. These distinctions are far less significant when the State acts as a market participant with no interest in setting policy.").

Plaintiff has adequately alleged that the City's actions, for example, in issuing the 2004 RFP and implementing a general franchising scheme, are not of a purely proprietary nature, but rather, were taken pursuant to regulatory objectives or policy. (*See* 2004 RFP at 5 (City seeks to "support the availability of robust, reliable, high-quality mobile services" while also protecting the "public interest in a streetscape that is safe, not excessively cluttered in appearance, and otherwise consistent with City use of the relevant facilities and their surroundings"); Resolution No. 957 at 1 ("the City Council has determined that the granting of such franchises will promote the public interest, enhance the health, welfare and safety of the public and stimulate commerce by assuring the widespread availability of reliable mobile telecommunications services"); City Charter § 362(b) (" 'Franchise' shall mean a grant by an agency of a right to occupy or use the inalienable property of the city to provide a public service."); *see also New England Health Care Employees Union, Dist. 1199, SEIU/AFL-CIO v.*

*Rowland,* 204 F.Supp.2d 336, 344-45 (D.Conn.2002) ("unlike the 'purely proprietary' interests of the defendants in *Boston Harbor,* the defendants in this case ... acted within a regulatory scheme that focused on insuring the health and safety of the public, not on regulating the bargaining relationship between labor and management").[FN9]

> FN9. The scope of the City's franchising scheme cannot readily be described as "narrow" or as "address[ing] a specific proprietary problem" where access to three thousand City lightpoles is at issue. *See* 2004 RFP ("Each franchisee will be limited to using a maximum number of 3,000 poles unless and until the City determines that such maximum should be increased."); *compare Van-Go Transp. Co. v. N.Y. City Bd. of Educ.,* 53 F.Supp.2d 278, 288 (E.D.N.Y.1999) (finding city school board's actions to be regulatory and not proprietary because "the policy at issue extended beyond the parties to a single contract"), *with Mills,* 283 F.3d at 420 (where "School District entered into a single lease agreement with respect to a single building," court found "actions of the School District ... plainly proprietary" and saw "no basis for an inference that the School District sought to establish any general municipal policy").

b. Competitive Neutrality

*6 Plaintiff has alleged that the City has not acted "on a competitively neutral and nondiscriminatory basis." The Amended Complaint states, among other things, that: "If permitted to construct its network and provide telecommunications services in the City, NextG would compete directly with the incumbent local exchange carrier, Verizon;" "Many of the facilities constructed, owned, operated, and maintained by Verizon in the public rights-of-way of the City are essentially identical to those that NextG seeks to install, own, operate, and maintain in the public rights-of-way;" "Verizon provides telecommunications services and has constructed, operates, and maintains facilities in the public rights-of-way in the City without having received

a franchise from the City ... [or] paying the City any fees or compensation for use of the public rights-of-way;" and "Defendants' rules, regulations and requirements and their enforcement thereof, provide Verizon a competitive advantage over NextG." (Am.Compl.¶¶ 148-49, 151, 167-70, 173.)

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in its favor, the Court finds that Plaintiff has adequately stated a claim that the City's franchise requirement and fees are not imposed on a "competitively neutral and nondiscriminatory basis." *See TCG New York II,* 305 F.3d at 80 ("[F]ees that exempt one competitor are inherently not 'competitively neutral,' regardless of how that competitor uses its resulting market advantage."). While Section 253 "does not require precise parity of treatment" in negotiating compensation from different telecommunications providers, "a municipality may not ... impose a host of compensatory provisions on one service provider without placing any on another." *Id.; see also TC Sys., Inc. & Teleport Communications N.Y. v. Town of Colonie,* 263 F.Supp.2d 471, 489 (N.D.N.Y.2003) (local law "plainly not 'competitively neutral and nondiscriminatory' " as applied where incumbent service provider "continue[d] to operate with the Town's encouragement, despite noncompliance with [local franchising law] and the nonpayment of any franchise fees, while Plaintiffs ... faced .. numerous obstacles and requirements as a precondition to providing services") ("TC Systems").

## 2. Ripeness

Defendants argue that "the City has not refused to entertain or foreclosed [P]laintiff's request for permission to install its equipment on City-owned street poles," and "[t]hus, the Complaint presents, at best, a hypothetical claim involving uncertain and contingent future events that may or may not occur and fails for lack of ripeness." (Def.12(c) Mot. at 12.) Plaintiff responds that it "has alleged a ripe controversy, as it has challenged the very requirement that it apply for and obtain a franchise under the terms of the City Charter, Resolution 957 and 2004 RFP." (Pl.12(c) Opp'n at 17.)

" 'Ripeness' is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction," *i.e.* "constitutional ripeness" and "prudential ripeness." *Simmonds v. I.N.S.,* 326 F.3d 351, 356-57 (2d Cir.2003). "Constitutional ripeness" is "a limitation on the power of the judiciary" and "prevents courts ... from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Id.* at 357. The inquiry is "whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' or, by contrast, if the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *City of Auburn v. Qwest Corp.,* 260 F.3d 1160, 1171 (9th Cir.2001) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)).

*7 Where, as here, NextG alleges that it faces the dilemma of incurring substantial cost in complying with the franchise process or suffering the risks and expenses of noncompliance, the litigation may proceed. *See, e.g., City of Auburn,* 260 F.3d at 1171-72 ("[T]he Supreme Court [has] held [that] the very promulgation of a law may itself affect a party enough to satisfy the constitutional requirement."); *TC Systems,* 263 F.Supp.2d at 479-80, 482 n. 6 (constitutional ripeness satisfied where telecommunications provider "faces the dilemma of either complying with the franchise process or suffering the costs and sanctions of noncompliance"); *see also TCG New York I,* 125 F.Supp.2d at 84-85 (telecommunications provider's objections to franchise requirements considered on merits before denial of application by the City); *Port Auth. of N.Y. & N.J.,* 1999 WL 494120, at *3-4 (court considered telecommunications provider's motion for preliminary injunction before denial of application).

"Prudential ripeness" involves a determination of whether "the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay." *Simmonds,* 326 F.3d at 357 (emphasis in original). The inquiry is (i) whether an issue is fit for judicial decision, and (ii) whether and to what extent the parties will endure hardship if decision is withheld. *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49 (1967). Issues are "fit for judicial decision" when "they would not benefit from any further factual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 8
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Simmonds,* 326 F.3d at 359. "In assessing the possible hardship to the parties resulting from withholding judicial resolution, we ask whether the challenged action creates a direct and immediate dilemma for the parties." *Id.* at 360 (quoting *Marchi v. Bd. of Coop. Educ. Servs.,* 173 F.3d 469, 478 (2d Cir.1999)).

NextG's claims are prudentially ripe. It is undisputed that NextG submitted an application for a franchise to the City; NextG did not advance to the "second round" of negotiations; and six other (competitive) companies concluded the franchise process. *See* NextG Proposal; July 12, 2004 Letter; Aug. 3, 2004 Letters; *see also City of Auburn,* 260 F.3d at 1173 ("Were we to decline to hear the case on grounds of ripeness, [plaintiff] would be forced to obtain a franchise and then return to court to argue ... exactly the same argument that it makes here."); *TC Systems,* 263 F.Supp.2d at 480 ("No purpose would be served by refraining from deciding the matter at this time" where "[Town's law] has already been enacted; [plaintiff telecommunications provider] is subject to it; and the complete text is before the Court."); *N.J. Payphone Ass'n v. Town of West N.Y.,* 130 F.Supp.2d 631, 635 (D.N.J.2001), *aff'd,* 299 F.3d 235 (3d Cir.2002) (ripeness satisfied where telecommunications provider and Town "remain[ed] at loggerheads" and "the Town [is] forced to decide whether to withdraw or to proceed with its franchise scheme at the risk of offending federal law").

### 3. 42 U.S.C. §§ 1983 and 1988 Claims

**\*8** Defendants argue that the Amended Complaint fails to state a claim for damages under the Civil Rights Act of 1871, 42 U.S.C. § 1983, or for attorney's fees under 42 U.S.C. § 1988 because the "TCA does not create a 'right' covered by Section 1983" and "[i]n the absence of an unambiguously conferred right, a statutory violation does not provide a basis to recover under Section 1983." (Def.12(c) Mot. at 13 (citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002)).) Plaintiff responds that "Section 253 was phrased in terms to benefit telecommunications providers," thereby creating .

a " 'right ... presumptively enforceable by § 1983," ' and that the City has not satisfied its burden of demonstrating that "Congress foreclosed [S]ection 1983 either through the text of the statute itself, or 'impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983 .' " (Pl.12(c) Opp'n at 19-23 (citing *Gonzaga,* 536 U.S. at 284-85).)

"Section 1983, ... enacted pursuant to the authority of Congress to enforce the Fourteenth Amendment, prohibits interference with federal rights under color of state law." *Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982). "In order to seek redress through § 1983, however, a plaintiff must assert the vi olation of a federal *right,* not merely a violation of federal *law." Blessing v.. Freestone,* 520 U.S. 329, 341 (1997) (emphasis in original). The Supreme Court articulated the standard for determining whether a federal statute confers a federal right enforceable under § 1983 in *Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted." ' *Gonzaga,* 536 U.S. at 284. The inquiry is whether "the statutory language 'unambiguously confers an enforceable right' upon an identifiable class of beneficiaries." *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 783 (2d Cir.2002); *see Gonzaga,* 536 U.S. at 285 (inquiry "simply require[s] a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries"). "[O]nce a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga, 536 U.S. at 285; see also Rabin v. Wilson-Coker,* 362 F.3d 190, 201 (2d Cir.2004).[FN10]

> FN10. In *Gonzaga,* the Court determined that certain nondisclosure provisions of the Family Educational Rights and Privacy Act ("FERPA") were not designed to create individual rights because (i) the "provisions contain[ed] no rights-creating language; (ii) "they ha[d] an aggregate, not individual, focus;" and (iii) "they serve[d] primarily to direct the Secretary of Education's distribution of public funds to educational institutions ."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Gonzaga,* 536 U.S. at 290-91. The Court contrasted the statutory language of FERPA, 20 U.S.C. § 1232g(b)(1), with language contained in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (1994 ed.), and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). *Id.* at 284, 287-88 ("We have recognized, for example, that Title VI ... and Title IX ... create individual rights because those statutes are phrased 'with an *unmistakeable focus* on the benefitted class." ') (citing *Cannon v. Univ. of Chicago,* 441 U.S. 677, 692 n. 13 (1979)) (emphasis in original).

The United States Court of Appeals for the Second Circuit has yet to address the issue of whether subsection (a) or (c) of Section 253 of the TCA confers an individual right that gives rise to a suit for § 1983 damages. The courts that have considered the issue have arrived at varying conclusions. *See, e.g., Spring Telephony PCS v. County of San Diego,* 311 F.Supp.2d 898, 916 (S.D.Cal.2004) (finding that § 253(a) confers private right of action enforceable pursuant to § 1983); *Qwest Corp. v. City of Santa Fe,* 380 F.3d 1258, 1275-77 (10th Cir.2004) (Hartz, J., dissenting) (same); *Bellsouth Telecomms., Inc. v. Town of Palm Beach,* 252 F.3d 1169, 1191 (11th Cir.2001) (finding that § 253(c) but not § 253(a) confers private right of action); *TCG Detroit v. City of Dearborn,* 206 F.3d 618, 624 (6th Cir.2000) (same); *Pac. Bell Tel. Co. v. City of Hawthorne,* 188 F.Supp.2d 1169, 1172 (C.D.Cal.2001) (same); *Cablevision of Boston, Inc. v. Pub. Improvement Comm'n of the City of Boston,* 38 F.Supp.2d 46, 55 (D.Mass.1999) (finding that § 253(c) does not confer a private right of action enforceable pursuant to § 1983); *Qwest Corp.,* 380 F.3d at 1266-67 (finding that § 253 does not confer private right of action enforceable pursuant to § 1983).[FN11]

> FN11. An implied private right of action, as opposed to a private right of action enforceable under Section 1983, was found in *Bellsouth* and *TCG Detroit. Bellsouth,* 252 F.3d at 1191; *TCG Detroit,* 206 F.3d at 624; *see Gonzaga,* 536 U.S. at 283 ("[W]e further

reject the notion that our implied right of action cases are separate and distinct from our § 1983 cases. To the contrary, our implied right of action cases should guide the determination of whether a statute confers rights enforceable under § 1983."); 1 Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 4.06 (4th ed. 2004-2 Supp.) ("federal statutes that are not enforceable under § 1983 ... cannot satisfy the more stringent implied right of action doctrine").

### a. Section 253(a)

*9 Applying the *Gonzaga* analysis, the Court concludes that Section 253(a) confers a private right presumptively enforceable under § 1983. *Gonzaga,* 536 U.S. at 284. For one thing, Section 253(a) is phrased in terms of persons (entities) benefitted, *i.e.* telecommunications providers. *Id.* at 284; 47 U.S.C. § 253(a) ("No State or local statute or regulation ... may prohibit ... *any entity* to provide ... telecommunications service.") (emphasis added). In *Gonzaga,* the Court concluded that "[u]nlike the individually focused terminology of Titles VI and IX, ... [FERPA's] focus is two steps removed from the interests of individual students and parents and clearly does not confer the sort of *'individual* entitlement' that is enforceable under § 1983." *Gonzaga,* 536 U.S. at 287 (emphasis in original); *see* FERPA, 20 U.S.C. § 1232g(b)(1) ("No funds shall be made available" to any "educational agency or institution" which has a prohibited "policy or practice ..."); Titles VI and IX, 42 U.S.C. § 2000d, 20 U.S.C. § 1681(a) ("No person ... shall ... be subjected to discrimination ..."). The wording of Section 253(a) contains "the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *See Gonzaga,* 536 U.S. at 287; *see also Alexander v. Sandoval,* 532 U.S. 275, 287 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons." ') (quoting *California v. Sierra Club,* 451 U.S. 287, 294 (1981)); *accord Spring Telephony,* 311 F.Supp.2d at 911 ("Congress intended the TCA to benefit telecommunications providers like plaintiffs."). Second, Section 253(a) appears to be "concerned with whether

Not Reported in F.Supp.2d                                                  Page 10
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the needs of any particular person have been satisfied," *i.e.* whether any entity seeking to provide telecommunications service has been prohibited from doing so by state or local statute or regulation. *Gonzaga,* 536 U.S. at 288; *Nat'l Law Ctr. on Homelessness & Poverty v. State of N.Y.,* No. 04 Civ. 0705, 2004 WL 2375590, at *5 (E.D.N.Y. Oct. 23, 2004)* ("Statutes that focus on specific individuals rather than policies or practices indicate Congressional intent to confer individually enforceable rights."). Third, the "mechanism that Congress chose to provide for enforcing [the] provisions" does not appear exclusively to be the Federal Communications Commission ("FCC"). *Gonzaga,* 536 U.S. at 289-91; *see also TCG New York II,* 305 F.3d at 74 (court considered amicus brief submitted by the FCC which, while not "definitively stat[ing] an opinion on whether it has concurrent jurisdiction with the district courts over § 253," noted that " § 253 does not use language, included elsewhere in the TCA, that confers exclusive jurisdiction in the Commission"); *AT & T Communications of the Southwest,* 975 F.Supp. 928, 938 (W.D.Tex.1997) ("When Congress intended to confer exclusive jurisdiction with the FCC over claims arising under other provisions of the FTA, it made its intentions clear in the statute."); *MCI Telecomms. Corp. v. S. New England Tel. Co.,* 27 F.Supp.2d 326, 334 (D.Conn.1998) ("nothing in the plain language of § 253(d) purports to confer exclusive jurisdiction with the FCC over the types of claims raised here"). [FN12]

> FN12. By contrast, Section 253(d) states that "the Commission shall preempt the enforcement of" any "statute, regulation, or legal requirement" that violates subsection (a) or (b) of Section 253. *Compare* 47 U.S.C. § 253(d), *with* 47 U.S.C. § 255(f) ("Nothing in this section shall be construed to authorize any private right of action to enforce any requirement of this section or any regulation thereunder. The Commission shall have exclusive jurisdiction with respect to any complaint under this section."), *and* 47 U.S.C. § 613(h) (same); *see also TCG New York II,* 305 F.3d at 74; *City of Rome v. Verizon Communications Inc.,* 362 F.3d 168, 185 (2d

Cir.2004) ("There is no serious question that Verizon could have asserted a claim against the City under section 253 of the Telecommunications Act.") (Schiendlin, J., dissenting on other grounds).

#### b. Section 253(c)

*10 Similarly, the Court concludes that Section 253(c) confers a private right presumptively enforceable under § 1983. The provision is worded in terms of an identifiable class of beneficiaries, *i.e.* telecommunications providers. It is concerned with individual entities as opposed to institutional policy or practice. *See* 47 U.S.C. § 253(c) ("State or local government" may "require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis ..."). And, Section 253(c) "lack[s] any federal [administrative] review mechanism," which the Court in *Gonzaga* stated was a reason for "finding a congressional intent to create individually enforceable private rights." *Gonzaga,* 536 U.S. at 28990; *see also supra,* Part IV.3, at 17.

#### c. Rebutting the Presumption

Plaintiff argues that "[h]aving established that an implied private right of action exists under Section 253, and thus a deprivation of rights under Section 1983, the burden shifts to the City to demonstrate that Congress intended to foreclose a remedy under Section 1983 for deprivation of those rights." (Pl.12(c) Opp'n at 21.) Defendants did not appear to address this issue.

"Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga,* 536 U.S. at 284. The burden then shifts to the opposing party "to demonstrate that Congress shut the door to private enforcement either expressly, through 'specific evidence from the statute itself,' or 'impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." ' *Id.* at 285.

Because the City has failed to present evidence that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 11
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Congress either expressly or impliedly intended to preclude Sections 253(a) or (c) from § 1983 enforcement, the Court concludes that Plaintiff may maintain its action under § 1983. *See Spring Telephony,* 311 F.Supp.2d at 916 (after finding a presumptive right of action in the language and purpose of § 253(a) and that defendants failed to rebut that presumption, court concluded that plaintiffs were permitted to maintain a right of action under § 1983); *Qwest Corp.,* 380 F.3d at 1275-77 (Hartz, J., dissenting) (dissent concluded that "47 U.S.C. § 253 contains rights-creating language, and the City has failed to overcome the presumption that the statutory right is enforceable under § 1983").

The Court also concludes that a claim for attorney's fees is available to Plaintiff pursuant to Section 1988. 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of [section 1983] ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...").

### 4. Preliminary Injunction and Temporary Restraining Order

Plaintiff claims that, absent injunctive relief, NextG will suffer irreparable harm because (i) NextG "will lose any competitive advantage it should have had from entering the market two years ago;" (ii) the six companies recommended for franchises "will be able to quickly stake claims to the most favorable and lucrative locations in the City" and NextG will be "precluded from obtaining space on particular poles at particular locations;" and (iii) "NextG continues to be denied the ability to offer its telecommunications services altogether." (Pl. PI Mot. at 5-6.) Defendants respond that (i) "NextG's purported loss of a 'competitive advantage' and the ability to obtain space on particular poles is ... speculative and presupposes that NextG had a right to use City street poles superior to any other interested entity;" and (ii) DoITT has "offered to recommend NextG for a franchise on the same terms and conditions as the other six companies that will have franchise rights to the City's street poles ." (Def. PI Opp'n at 12, 14; July 12, 2004 Letter at 1-2.)

*11 Plaintiff has not met its heavy burden of establishing irreparable harm. *See Subaru Distribs. Corp. v. Subaru of Am., Inc.,* 47 F.Supp.2d 451, 460 (S.D.N.Y.1999) ("The award of a preliminary injunction is an extraordinary and drastic remedy that will not be granted absent a clear showing that the plaintiff has met its burden of proof."). Defendants have not denied NextG the ability to offer its telecommunications services. On the contrary, Defendants informed NextG that "if NextG is prepared to enter into a franchise agreement on the same terms and conditions as the six companies that DoITT is recommending for franchises, DoITT would be prepared to recommend NextG for a franchise as well." (July 12, 2004 Letter at 1.) And, assuming NextG were ultimately successful on the merits, its injuries would be "capable of being fully remedied by money damages." *NAACP v. Town of East Haven,* 70 F.3d 219, 224 (2d Cir.1995); *Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir.1995) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money time and energy ... are not enough."); *Luce v. Edelstein,* No. 85 Civ. 4064, 1985 WL 2257, at *3 (S.D.N.Y. Aug. 8, 1985) ("Even if a movant can prove that he will be entitled to an injunction after trial, in order to be entitled to a preliminary injunction he must prove that interim damages cannot be calculated with sufficient accuracy to make damages an adequate substitute and that his business will be seriously imperiled in the interval before a decision can be rendered after trial."). Because NextG may (still) obtain access to locations it desires by complying with the City's franchising process, and because the six other franchises have only recently been awarded, NextG's claims of irreparable harm due to loss of "competitive advantage" and "loss of access to competitive locations" are unpersuasive. *See Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989) ("The injury must be one requiring a remedy of more than mere money damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation."); *Lentjes Bischoff v. Joy Envtl. Techs., Inc.,* 986 F.Supp. 183, 185 (S.D.N.Y.1997) ( "[C]ourts should avoid issuing preliminary injunctions in cases where money damages would be adequate compensation.").[FN13]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

> FN13. Because Plaintiffs have "failed to establish that [they] would suffer irreparable harm in the absence of an injunction, there is no need to reach the second portion of the preliminary injunction analysis." *Jayaraj,* 66 F.3d at 38-39.

V. Conclusion and Order

For the reasons stated herein, Plaintiff's motion for a temporary restraining order and preliminary injunction [40] is denied. Defendants' cross-motion for judgment on the pleadings [23] is also denied.

Counsel are requested to appear at a settlement/status conference with the Court on Friday, January 21, 2005, at 11:30 a.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. The parties are directed to engage in good faith settlement negotiations prior to the conference.

S.D.N.Y.,2004.
NextG Networks of New York, Inc. v. City of New York
Not Reported in F.Supp.2d, 2004 WL 2884308 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

07-CV-3442 (CLB)(KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN E. ANDRUS MEMORIAL, INC. (d/b/a ANDRUS
ON HUDSON),

*Plaintiff,*

-against-

RICHARD F. DAINES, as Commissioner of the New York
State Department of Health,

*Defendant.*

AFFIDAVIT IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**ANDREW M. CUOMO**
Attorney General of the
State of New York
**ATTORNEY FOR DEFENDANT**
Office and Post Office Address

120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8570

*Personal service of a copy of the within*
*is admitted this*
_____ *day of* _____
_____ *2007.*