New York State Department of Health
# Application for Financial Assistance
To implement a mandate resulting from the December 2006
*Final Report of the Commission on Health Care Facilities in the 21st Century*
## Schedule 1
## Project Summary

| Applicant Name: | | January 1 – Sept. 30, 2007 | October 1 2007 or Later | Total | Attach Schedule(s) |
|---|---|---|---|---|---|
| **Closure** | Total Cost | | | | **3** and **5** and **6** |
| | Non-HEAL/ F-SHRP Fund Sources | | | | |
| | HEAL / F-SHRP Funding Requested | | | | |
| **Reorganization** | Total Cost | | | | **4** and **5** and **6** |
| | Non-HEAL/ F-SHRP Fund Sources | | | | |
| | HEAL / F-SHRP Funding Requested | | | | |
| **Construction** | Total Cost | | | | **2** and **2a** And **2b** and **5** and **6** |
| | Non-HEAL NY F-SHRP Fund Sources | | | | |
| | HEAL / F-SHRP Funding Requested | | | | |

New York State Department of Health

# Application for Financial Assistance

To implement a mandate resulting from the December 2006
*Final Report of the Commission on Health.Care Facilities in the 21st Century*

## Schedule 2

Construction Project Costs
**Summary of Subprojects**

Applicant Name:

Subproject #____

Subproject Description:

| 1. Construction Costs: | A | B | C |
|---|---|---|---|
| | **Project Cost in Current Dollars** | **Escalation Amount to** Mid-point of Construction | **Estimated Project Costs** |
| | | Computed by applicant | (A + B) |
| 1.1 Land Acquisition | $ | | $ |
| 1.2 Building Acquisition | $ | | $ |
| | | | |
| 2.1 New Construction | $ | $ | $ |
| 2.2 Renovation & Demolition | $ | $ | $ |
| 2.3 Site Demolition | $ | $ | $ |
| 2.4 Temporary Utilities | $ | $ | $ |
| 2.5 Asbestos Abatement | $ | $ | $ |
| | | | |
| 3.1 Fixed Equipment | $ | $ | $ |
| 3.2 Planning Consultant Fees | $ | $ | $ |
| 3.3 Architect/Engineering Fees | $ | $ | $ |
| 3.4 Construction Manager Fees | $ | $ | $ |
| 3.5 Other Fees (Consultant, etc.) | $ | $ | $ |
| Subtotal (Total 1.1 thru 3.5) | $ | $ | $ |
| | | | |
| 4.1 Moveable Equipment | $ | $ | $ |
| 4.2 Telecommunications | $ | $ | $ |
| 5. Total Basic Cost of Construction (total 1.1 thru 4.2) | $ | $ | $ |
| 6.1 Financing Costs (Points etc) | $ | | $ |
| 6.2 Interim Interest Expense, net of earnings: $____ At ____ % For ____ months | $ | | $ |
| 7. Total Project Cost | $ | $ | $ |
| Cost Per Square Foot for New Construction | | | $ / sq. ft. |
| Cost Per Square Foot for Renovation Construction | | | $ / sq. ft. |
| Total Incremental Operating Cost | | | $ |

15

# Schedule 2 (continued)

| 2. Construction Dates: | Dates: |
|---|---|
| **Anticipated Start Date** | |
| Anticipated Completion Date | |

Name, phone number, and e-mail address of the person responsible for preparing this form:

_____

Name

_____

e-mail address

_____

Phone

**For each Schedule 2 submission, complete a corresponding Schedule 5. If the project is comprised of multiple subprojects, complete a Schedule 2a and 2b for each subproject. If there are no sub-projects, complete at least one Schedule 2b for the entire construction project showing the period in which costs are expected to be incurred.**

New York State Department of Health
# Application for Financial Assistance
To implement a mandate resulting from the December 2006
*Final Report of the Commission on Health Care Facilities in the 21st Century*

## Schedule 2a
Construction Project Costs
**Summary of Subprojects**

Applicant Name:
Subproject #____
Subproject Description:

| 1. Construction Costs: | A | B | C |
|---|---|---|---|
| | **Project Cost in Current Dollars** | **Escalation Amount to** Mid-point of Construction | **Estimated Project** Costs |
| | | Computed by applicant | (A + B) |
| 1.1 Land Acquisition | $ | | $ |
| 1.2 Building Acquisition | $ | | $ |
| | | | |
| 2.1 New Construction | $ | $ | $ |
| 2.2 Renovation & Demolition | $ | $ | $ |
| 2.3 Site Demolition | $ | $ | $ |
| 2.4 Temporary Utilities | $ | $ | $ |
| 2.5 Asbestos Abatement | $ | $ | $ |
| | | | |
| 3.1 Fixed Equipment | $ | $ | $ |
| 3.2 Planning Consultant Fees | $ | $ | $ |
| 3.3 Architect/Engineering Fees | $ | $ | $ |
| 3.4 Construction Manager Fees | $ | $ | $ |
| 3.5 Other Fees (Consultant, etc.) | $ | $ | $ |
| Subtotal (Total 1.1 thru 3.5) | $ | $ | $ |
| | | | |
| 4.1 Moveable Equipment | $ | $ | $ |
| 4.2 Telecommunications | $ | $ | $ |
| 5. Total Basic Cost of Construction (total 1.1 thru 4.2) | $ | $ | $ |
| 6.1 Financing Costs (Points etc) | $ | | $ |
| 6.2 Interim Interest Expense, net of earnings: $_____ At _____ % For _____ months | $ | | $ |
| 7. Total Project Cost | $ | $ | $ |
| Cost Per Square Foot for New Construction | | | $ _____ / sq. ft. |
| Cost Per Square Foot for Renovation Construction | | | $ _____ / sq. ft. |
| Total Incremental Operating Cost | | | $ |

| 2. Construction Dates: | Dates: |
|---|---|
| **Anticipated Start Date** | |
| Anticipated Completion Date | |

17

New York State Department of Health

# Application for Financial Assistance

To implement a mandate resulting from the December 2006
*Final Report of the Commission on Health Care Facilities in the 21st Century*

## Schedule 2b

Construction Subproject Costs by Period

Applicant Name:
Subproject #____
Subproject Description: _____

| | A<br>Estimated Project Costs<br>(Col. C from Schedule 2a) | B<br>January 1, 2007 to September 30, 2007 | C<br>October 1, 2007 to September 30, 2008 | D<br>October 1, 2008 to September 30, 2009 [1] |
|---|---|---|---|---|
| | | | | |
| 1.1  Land Acquisition | $ | $ | $ | $ |
| 1.2  Building Acquisition | $ | $ | $ | $ |
| | | | | |
| 2.1  New Construction | $ | $ | $ | $ |
| 2.2  Renovation & Demolition | $ | $ | $ | $ |
| 2.3  Site Development | $ | $ | $ | $ |
| 2.4  Temporary Utilities | $ | $ | $ | $ |
| 2.5  Asbestos Abatement | $ | $ | $ | $ |
| | | | | |
| 3.1  Fixed Equipment | $ | $ | $ | $ |
| 3.2  Planning Consultant Fees | $ | $ | $ | $ |
| 3.3  Architect/Engineering Fees | $ | $ | $ | $ |
| 3.4  Construction Manager Fees | $ | $ | $ | $ |
| 3.5  Other Fees (Consultant, etc.) | $ | $ | $ | $ |
| Subtotal (Total 1.1 thru 3.5) | $ | $ | $ | $ |
| | | | | |
| 4.1  Moveable Equipment | $ | $ | $ | $ |
| 4.2  Telecommunications | $ | $ | $ | $ |
| 5.  Total Basic Cost of Construction (Total 1.1 thru 4.2) | $ | $ | $ | $ |
| 6.1  Financing Costs (Points, etc.) | $ | $ | $ | $ |
| 6.2  Interim Interest Expense, net of earnings:<br><br>$ ____ at ____ %<br><br>For ____ months | $ | $ | $ | $ |
| 7.  Estimated Sub-Project Cost: (Total 5 thru 6.2) | $ | $ | $ | $ |
| Total Incremental Operating Cost | $ | $ | $ | $ |

1 Insert additional columns for later periods.

18

New York State Department of Health
# Application for Financial Assistance
To implement a mandate resulting from the December 2006
*Final Report of the Commission on Health Care Facilities in the 21st Century*

## Schedule 3
### Closing Project Costs

Applicant Name:
Subproject #_____
Subproject Description: _____

| Closing Costs Type (examples) | Total | January 1, 2007 to September 30, 2007 | October 1, 2007 to September 30, 2008 | October 1, 2008 to September 30, 2009 [1] |
|---|---|---|---|---|
| Mortgage | $ | $ | $ | $ |
| Other Loan(s) Outstanding | $ | $ | $ | $ |
| Amounts Owed Vendors | $ | $ | $ | $ |
| Legal fees | $ | $ | $ | $ |
| Consulting fees | $ | $ | $ | $ |
| Realty fees | $ | $ | $ | $ |
| Pension Liabilities | $ | $ | $ | $ |
| Security fees | $ | $ | $ | $ |
| Severance | $ | $ | $ | $ |
| Other (list): | $ | $ | $ | $ |
|  | $ | $ | $ | $ |
|  | $ | $ | $ | $ |
| Total | $ | $ | $ | $ |

[1] Insert additional columns for later periods.

Provide a detailed discussion of the reasonableness of each budgeted item, describing why the item is relevant and necessary to the project and how the cost was determined. Provide copies of all loan documents. If in bankruptcy, describe the current status of proceedings and include the proposed plan for reorganization.

Name, phone number, and e-mail address of the person responsible for preparing this form:

_____                 _____

Name                                     e-mail address

_____

Phone

**For each Schedule 3 submission, complete the corresponding Schedule 5.**

New York State Department of Health
# Application for Financial Assistance
To implement a mandate resulting from the December 2006
*Final Report of the Commission on Health Care Facilities in the 21st Century*
## Schedule 4
## Reorganization Project Costs

Applicant Name:
Subproject #_____
Subproject Description:

| Costs | Total | January 1, 2007 to September 30, 2007 | October 1, 2007 to September 30, 2008 | October 1, 2008 to September 30, 2009 [1] |
|---|---|---|---|---|
| Planning | $ | $ | $ | $ |
| Legal fees | $ | $ | $ | $ |
| Consulting fees | $ | $ | $ | $ |
| Realty fees | $ | $ | $ | $ |
| Pension Liabilities | $ | $ | $ | $ |
| Security fees | $ | $ | $ | $ |
| Severance | $ | $ | $ | $ |
| Other (list): | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| Total | $ | $ | $ | $ |

[1] Insert additional columns for later periods.

Provide a detailed discussion of the reasonableness of each budgeted item,
describing why the item is relevant and necessary to the project and how the cost
was determined.

Name, phone number, and e-mail address of the person responsible for preparing
this form:

_____          _____

Name                                                                    e-mail address

_____

Phone

**For each Schedule 4 submission, complete the corresponding
Schedule 5.**

20

New York State Department of Health
# Application for Financial Assistance
To implement a mandate resulting from the December 2006
*Final Report of the Commission on Health Care Facilities in the 21st Century*
## Schedule 5
## Sources of Funds

**To be included with each Closure, Reorganization and Construction Schedule.**

Applicant Name:
Subproject #____
Subproject Description:

| Summary: Check all that apply and fill in corresponding amounts. | | Total | January 1, 2007 to September 30, 2007 | October 1, 2007 to September 30, 2008 | October 1, 2008 to September 30, 2009 [1] |
|---|---|---|---|---|---|
| | Type | Amount | Amount | Amount | Amount |
| ☐ | A. Leases | $ | $ | $ | $ |
| ☐ | B. Cash | $ | $ | $ | $ |
| ☐ | C. Mortgage, Notes, or Bonds | $ | $ | $ | $ |
| ☐ | D. Land / Real Property | $ | $ | $ | $ |
| ☐ | E. Refinancing | $ | $ | $ | $ |
| ☐ | F. Other (describe) | $ | $ | $ | $ |
| ☐ | G. HEAL/ F-SHRP Request | $ | $ | $ | $ |
| ☐ | Total Project Financing (Sum A to G) | $ | $ | $ | $ |

1 Insert additional columns for later periods.

## Details

| A. **Leases** List each lease, whether capital or operating. | Not Applicable | Title of attachment |
|---|---|---|
| 1. List each lease with corresponding cost as if purchased each leased item. Breakdown each lease by total project cost and subproject costs, if applicable. | ☐ | |
| 2. Attach a copy of the proposed lease(s). | ☐ | |
| 3. Submit an affidavit indicating any business or family relationships between principals of the landlord and tenant. | ☐ | |
| 4. If applicable, provide a copy of the lease assignment agreement and the Landlord's consent to the proposed lease assignment. | ☐ | |
| 5. If applicable, identify separately the total square footage to be occupied by the facility and the total square footage of the building. | ☐ | |
| 6. Attach two letters from independent realtors verifying square footage rate. | ☐ | |
| 7. For all capital leases as defined by FASB Statement No. 13, "Accounting for Leases", provide the net present value of the monthly, quarterly or annual lease payments. | ☐ | |

# Schedule 5 (continued)

| B. Cash | Amount | January 1, 2007 to September 30, 2007 | October 1, 2007 to September 30, 2008 | October 1, 2008 to September 30, 2009 [1] |
|---|---|---|---|---|
| Accumulated Funds | $ | $ | $ | $ |
| Sale of Existing Assets | $ | $ | $ | $ |
| Gifts (fundraising program) | $ | $ | $ | $ |
| Government Grants | $ | $ | $ | $ |
| HEALNY/ F-SHRP Grant Requested | $ | $ | $ | $ |
| Other | $ | $ | $ | $ |
| TOTAL CASH | $ | $ | $ | $ |

| | Not Applicable | Title of Attachment |
|---|---|---|
| 1. Provide a breakdown of the sources of cash. See sample table above. | ☐ | |
| 2. Attach a copy of the latest certified financial statement and interim monthly or quarterly financial reports to cover the balance of time to date. | ☐ | |
| 3. If amounts are listed in "Accumulated Funds" provide a cross-reference to certified financial statement or Schedule 2a, if applicable | ☐ | |
| 4. Attach a full and complete description of the assets to be sold, if applicable. | ☐ | |
| 5. If amounts are listed in "Gifts (fundraising program)":<br>• Provide a breakdown of total amount expected, amount already raised, and any terms and conditions affixed to pledges.<br>• If a professional fundraiser has been engaged, submit fundraiser's contract and fundraising plan.<br>• Provide a history of recent fund drives, including amount pledged and amount collected. | ☐ | |
| 6. If amounts are listed in "Government Grants":<br>• List the grant programs which are to provide the funds with corresponding amounts. Include the date the application was submitted.<br>• Provide documentation of eligibility for the funds.<br>• Attach the name and telephone number of the contact person at the awarding Agency(ies). | ☐ | |
| 7. If amounts are listed in "Other" attach a description of the source of financial support and documentation of its availability. | ☐ | |

[1] Insert additional columns for later periods.

| C. Mortgage, Notes or Bonds<br>1. Provide a breakdown of the terms of the mortgage. | Total Project | Units |
|---|---|---|
| Interest | | % |
| Term | | Years |
| Payout Period | | Years |
| Principal | | $ |

| | Not Applicable | Title of Attachment |
|---|---|---|
| 2. Attach a copy of a letter of interest from the intended source of permanent financing that indicates principal, interest, term, and payout period | ☐ | |

22

# Schedule 5 (continued)

| D. Land 1. Provide details for the land including but not limited to; appraised value, historical cost, and purchase price. | | | |
|---|---|---|---|
| Appraised Value | $ | | |
| Historical Cost | $ | | |
| Purchase Price | $ | | |
| Other | $ | | |

| | Not Applicable | Title of Attachment |
|---|---|---|
| 2. If amounts are listed in "Other", attach documentation and a description as applicable. | ☐ | |
| 3. Attach a copy of the Appraisal. Supply the appraised date and the name of the appraiser. | ☐ | |
| 4. Submit a copy of the proposed purchase/option agreement. | ☐ | |
| 5. Provide an affidavit indicating any and all relationships between seller and the proposed operator/owner. | ☐ | |

| E. Refinancing | Not Applicable | Title of Attachment |
|---|---|---|
| 1. Provide a breakdown of the terms of the refinancing, including principal, interest rate, and term remaining. | ☐ | |
| 2. Attach a description of the mortgage to be refinanced. Provide full details of the existing debt and refinancing plan inclusive of original and current amount, term, assumption date, and refinancing fees. The term of the debt to be refunded may not exceed the remaining average useful life of originally financing assets. If existing mortgage debt will not be refinanced, provide documentation of consent from existing lien holders of the proposed financing plan. | ☐ | |

| F. Other 1. Provide listing and breakdown of other financing mechanisms. | Total Project | |
|---|---|---|
| Notes | | |
| Stock | | |
| Other | | |

| | Not Applicable | Title of Attachment |
|---|---|---|
| 2. Attach documentation and a description of the method of financing. | ☐ | |

| G. HEAL/F-SHRP | Total | January 1, 2007 to September 30, 2007 | October 1, 2007 to September 30, 2008 | October 1, 2008 to September 30, 2009 [1] |
|---|---|---|---|---|
| Disbursements from January 1, 2007 – September 30, 2007 | $ | $ | $ | $ |
| Disbursements on or after October 1, 2007 | $ | $ | $ | $ |
| Total HEAL/ F-SHRP | $ | $ | $ | $ |

1 Insert additional columns for later periods.

23

New York State Department of Health

# Application for Financial Assistance

To implement a mandate resulting from the December 2006
*Final Report of the Commission on Health Care Facilities in the 21st Century*

## Schedule 6
# ELIGIBLE APPLICANT CERTIFICATION

**CERTIFICATION FOR HEALTH CARE EFFICIENCY AND AFFORDABILITY LAW (HEAL NY) AND FEDERAL-STATE HEALTH REFORM PARTNERSHIP (F-SHRP)GRANTS**

I hereby warrant and represent to the New York State Department of Health ("DOH") and the Dormitory Authority of the State of New York ("the Authority") that:

- The project described in this application is consistent with the goals and recommendations of the Commission on Health Care Facilities in the Twenty-First Century, as established pursuant to Section 31 of Part E of Chapter 63 of the Laws of 2005.
- All contracts entered into by the Grantee in connection with the Project shall (A) provide that the work covered by such contract shall be deemed "public work" subject to and in accordance with Articles 8, 9 and 10 of the Labor Law; and (B) shall provide that the contractors performing work under such contract shall be deemed a "state agencies" for the purposes of Article 15A of the Executive Law
- Awarded HEAL/F-SHRP grant funds will be expended solely for the project purposes described in this Application for Financial Assistance and in the resulting contract and for no other purpose.
- HEAL/F-SHRP funds are requested and will be used only to the extent that the applicant is unable to identify other sources of available funding. All available sources of funds have been properly identified and included in the appropriate Schedules included with the Application for Financial Assistance.
- In the event that the project funded with the proceeds of a HEAL/F-SHRP grant ceases to meet one or more of the criteria set forth above, then DOH and/or the Dormitory Authority shall be authorized to seek recoupment of all HEAL/F-SHRP grant funds paid to the Grantee and to withhold any grant funds not yet disbursed.

Applicant Name_____

Signature _____Date _____

Name (Please Print) _____

Title (Please Print)_____

Please note that in accordance with Part 86-2.6 of the Commissioner's Administrative Rules and Regulations, **ONLY** the following individuals may sign the attestation form:

- Proprietary Sponsorship – Operator/Owner
- Voluntary Sponsorship – Officer (President, Vice President, Secretary or Treasurer), Chief Executive Officer, Chief Financial Officer or any Member of the Board of Directors
- Public Sponsorship – Public Official Responsible for Operation of the Facility

24

# EXHIBIT E

## Federal-State Health Reform Partnership (F-SHRP)

On September 29, 2006, the Centers for Medicare and Medicaid Services (CMS) approved New York State's request to join in a partnership to reform and restructure the State's healthcare delivery system. To accomplish the reform and restructuring, CMS has approved a new five-year 1115 demonstration entitled Federal-State Health Reform Partnership (F-SHRP). The waiver is effective October 1, 2006.

### F-SHRP Goals and Objectives

The goals of this reform partnership are to promote the efficient operation of the State's health care system; consolidate and right-size New York's health care system by reducing excess capacity in the acute care system; shift emphasis in long-term care from institutional-based to community-based settings; expand the adoption of advanced health information technology and improve ambulatory and primary care provision.

Under F-SHRP, the federal government will invest up to $1.5 billion ($300 million per year) in agreed upon reform initiatives. The primary focus of these initiatives will be to right size and restructure the acute and long-term care delivery systems, expand the use of e-prescribing, foster the implementation of electronic medical records and regional health information organizations and expand ambulatory and primary care services.

The federal investment in these reforms is conditioned upon the following:

- The F-SHRP waiver must generate federal savings sufficient to offset the federal investment
- The State must meet a series of established performance milestones set forth in the waiver terms and conditions

### Savings

The reform initiatives to right-size and restructure the State's health care delivery system and to expand use of health information technology are expected to generate significant savings to both the State and federal government. However, these reforms will be implemented over a number of years and although some of the savings are expected to accrue in the next 5 years, much of the savings will be long term. In order to generate sufficient federal Medicaid savings to offset it's investment, CMS has agreed to count savings in two areas – savings generated due to decreased hospital utilization resulting from eliminating excess acute care capacity and savings generated through Medicaid managed care expansions. The managed care expansions include the current implementation of mandatory SSI enrollment and expansion of mandatory Medicaid enrollment in additional counties. Counting these managed care savings for F-SHRP required moving these populations from the existing 1115 Partnership Plan to the new F-SHRP waiver.

The state is required to generate $3 billion in gross Medicaid savings ($1.5 billion federal) over the 5-year waiver. Should the State not achieve these savings by the end of the waiver, it will be required to refund to the federal government the difference between the federal investment in the F-SHRP reforms and the federal savings generated.

**Performance Milestones**

The State is also required to meet a number of significant performance milestones. These milestones are as follows:

1. **Fraud and Abuse Recoveries.** By the end of the demonstration, the State will be responsible for increasing its Medicaid fraud and abuse recoveries to at least 1.5 percent of its total Medicaid expenditures for FFY 2005. The first year of the demonstration requires development of an audit plan to increase recoveries. Specific dollar recovery targets have been established for years 2 through 5 starting with $215 million in annual recoveries for year 2 and increasing to $644 million in recoveries for year 5. Failure to meet these targets will result in a penalty to be paid to the federal government equal to the difference between the actual and target recoveries. However, the penalty cannot exceed on an annual basis the FFP claimed for F-SHRP programs and the penalty is also limited to $500 million over the five-year waiver term.

2. **Preferred Drug List.** The State must implement a PDL for Medicaid. This PDL must be continued over the life of the demonstration.

3. **Baseline Data and Reporting.** The State must report to CMS by November 30, 2006 baseline data including hospital and nursing home discharge and debt data and managed care expenditure data.

4. **Employer Sponsored Insurance.** By January 1, 2008, the State must implement a program to increase the number of currently uninsured but employed New York residents with private insurance coverage. By January 1, 2009, the State must document some increase in the rates of private insurance for such individuals.

5. **Programmatic Changes.** By October 31, 2006, the State must have implemented the Medicaid cost containment initiatives enacted in New York's 2005/2006 State Budget relevant to demonstration programs including changes in FHP, increased Medicaid pharmacy copayments, a one year Managed care premium freeze and cap on administrative costs, expansion of managed long term care and pay for performance demonstrations. By February 1, 2007, the State must implement at least one new Medicaid cost efficiency initiative.

6. **Improvement in ADA Compliance.** By March 31, 2007, the State must submit a report outlining the State's plan for updating its on-site reviews of ADA compliance.

7. **Single Point-of-Entry.** By April 1, 2008, the State must have implemented a program to create a single-point-of-entry for Medicaid recipients needing long-term care in at least one region of the State.

8. **Commission on Health Care Facilities in the 21st Century (Commission).** By January 31, 2007, The State must submit a report indicating that there are no State statutory impediments to implementation of the Commission's recommendations, steps taken to implement the recommendations and a timeline for implementation. By July 15, 2008, a final report on implementation of the Commission's recommendations is required.

With the exception of the targets for audit recoveries, failure to meet any milestone results in termination of the demonstration.

## Funding

The mechanics of the how federal funds will flow to the State are as follows. Under the waiver, the State will be entitled to federal matching (FFP) for approved designated State health programs (DSHP). Approved programs include certain HCRA programs as well as health care programs administered by other State agencies such as the offices of Mental Health, Mental Retardation and Developmental Disabilities, Aging, Alcohol and Substance Abuse Services and Children and Family Services. These programs are not Medicaid programs and normally do not qualify for federal matching. The State will be eligible for 50% federal matching on State expenditures for these programs up to $300 million per year. This means the State must incur annual expenditures of $600 million to be entitled to the full $300 million in federal funds. After incurring the DSHP expenditures, the State may draw down the federal matching funds only as it is ready to expend State funds on the actual reform initiatives. For example, as the State expends money on HEAL-NY grants it can simultaneously draw down the equivalent amount of federal funds and use those funds on any of the reform initiatives. Federal funding is limited to $300 million annually and must be used for reform expenditures incurred in that year. The federal funds cannot be rolled over into subsequent years. However, the State has two years after each demonstration year to claim federal funds and pay for investment expenditures incurred during the demonstration year.

## Evaluation

F-SHRP is a five-year demonstration that will end on September 30, 2011. Over the five-year term, the State will be required to report quarterly and annually to CMS on progress of the waiver. Reporting will include a number of quantifiable metrics to assist CMS in evaluating the effectiveness of the State's reforms including grant activity, data on hospital and nursing home utilization and debt, progress on implementation of Commission recommendations and managed care enrollment information. In addition to reporting, a formal evaluation of the demonstration is required with a report due to CMS when the demonstration expires.

## CENTERS FOR MEDICARE & MEDICAID SERVICES
## SPECIAL TERMS AND CONDITIONS

**NUMBER:**     11-W-00234/2

**TITLE:**     **Federal-State Health Reform Partnership Medicaid Section 1115 Demonstration**

**AWARDEE:**     **New York Department of Health**

### I.    PREFACE

The following are the Special Terms and Conditions (STCs) for New York's Federal-State Health Reform Partnership section 1115(a) Medicaid Demonstration (hereinafter "Demonstration"). The parties to this agreement are the New York Department of Health (State) and the Centers for Medicare & Medicaid Services (CMS). The STCs set forth in detail the nature, character, and extent of Federal involvement in the Demonstration and the State's obligations to CMS during the life of the Demonstration. The STCs are effective October 1, 2006 unless otherwise specified. This Demonstration is approved through September 30, 2011.

The STCs have been arranged into the following subject areas:  Program Description and Objectives; General Program Requirements; Eligibility, Benefits, and Enrollment; Delivery Systems; Federal-State Health Reform Partnership Activities; General Reporting Requirements; General Financial Requirements; Monitoring Budget Neutrality; Medicaid Program Savings Measures; Evaluation of the Demonstration; and Schedule of State Deliverables for the Demonstration.

Additionally, one attachment has been included to provide supplementary information and guidance for STC 42.

### II.    PROGRAM DESCRIPTION AND OBJECTIVES

The aging of New York's population, the continued shift in care from institutional to outpatient settings and the quality and efficiency advantages that are available through health information technology present the State with significant reform opportunities. The State has asked the Federal government to partner with it to implement reform initiatives that will improve quality of care and result in long-term savings for both the State and Federal government. The reform initiatives that the State will pursue under this Demonstration include:

1. **Rightsizing Acute Care Infrastructure.** New York's acute care infrastructure is outdated and oversized, while the facilities are highly leveraged with debt. The inexorable migration of health care services to the outpatient setting has added to the significant excess capacity that exists in the State, estimated at over 19,000 beds. As a

result, State law was enacted establishing the Commission on Health Care Facilities in the 21st Century (Commission) which is charged with recommending reconfiguration measures, including downsizing, restructuring and/or facility closures. Such measures will reduce future Medicaid inpatient hospital costs.

2. **Reforming Long Term Care.** The growth of non-institutional alternatives for long-term care services such as assisted living, advances in medical technology, overall improvement in the health of potential consumers and caregivers, and increasing preference for less restrictive alternatives is generating less demand for nursing facility services. New York will pursue the rightsizing of its long-term care system; implementation of a locally based but statewide point of entry (POE) system to help ensure appropriate services are rendered to recipients; a home modification program to enable recipients to stay at home; and a telehome care program to help individuals stay healthy and at home.

3. **Improvement in Primary/Ambulatory Care.** As increased emphasis is placed on services rendered in outpatient settings, capacity and quality become of primary importance. Under this Demonstration, New York will address the shortage of primary care services; implement programs to better manage individuals with chronic conditions, and collect quality of care data on outpatient services.

CMS will monitor these activities to ensure that the Demonstration delivers on the promise of increased efficiency and savings that it has been given.

## III.    GENERAL PROGRAM REQUIREMENTS

1. **Compliance with Federal Non-Discrimination Statutes.** The State agrees that it shall comply with all applicable Federal statutes relating to non-discrimination. These include, but are not limited to, the Americans with Disabilities Act of 1990, Title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975.

2. **Compliance with Medicaid Law, Regulation, and Policy.** All requirements of the Medicaid program expressed in law, regulation, and policy statement, not expressly waived or identified as not applicable in the award letter of which these STCs are part, shall apply to the Demonstration.

3. **Changes in Medicaid Law, Regulation, and Policy.** The State must, within the timeframes specified in the applicable law, regulation, or policy directive, come into compliance with any changes in Federal law, regulation, or policy that occur after the approval date of this Demonstration, unless the provision being changed is explicitly waived under the STCs herein governing the Demonstration. This requirement shall also apply to all applicable regulation and policy issued by CMS with respect to the Deficit Reduction Act of 2005, signed into law on February 8, 2006, including but not limited to the documentation of citizenship requirements contained in section 1903(x) of the Social

Security Act (the Act).

4. **Impact on Demonstration of Changes in Federal Law.** To the extent that a change in Federal law requires either a reduction or an increase in Federal financial participation (FFP) in expenditures under such the Demonstration, the State will adopt, subject to CMS approval, a modified budget neutrality agreement for the Demonstration as necessary to comply with such change. The modified budget neutrality agreement would be effective upon the implementation of the change. If mandated changes in the Federal law require State legislation, the changes must take effect on the day such State legislation becomes effective, or on the last day such legislation was required to be in effect under the law.

5. **State Plan Amendments.** The State shall not be required to submit title XIX State plan amendments for changes to any populations covered solely through the Demonstration. If a population covered through the State plan is affected by a change to the Demonstration, a conforming amendment to the State plan may be required except as otherwise noted in these STCs.

6. **Changes Subject to the Amendment Process.** Changes related to the health care reforms undertaken by this Demonstration, designated state health programs, eligibility, enrollment, benefits, enrollee rights, delivery systems, evaluation design, sources of non-Federal share of funding, budget neutrality, and other comparable program elements must be submitted to CMS as amendments to the Demonstration. The State must not implement changes to these elements without prior approval by CMS. Amendments to the Demonstration are not retroactive and FFP will not be available for changes to the Demonstration that have not been approved through the amendment process set forth in paragraph 7 below.

7. **Amendment Process:** Requests to amend the Demonstration must be submitted to CMS for approval no later than 120 days prior to the date of implementation of the change and may not be implemented until approved. Amendment requests must be reviewed by the Federal Review Team and must include, but are not limited to, the following:

   a) An explanation of the public process used by the State to reach a decision regarding the requested amendment;

   b) A data analysis which identifies the specific "with waiver" impact of the proposed amendment on the current budget neutrality expenditure cap. Such analysis shall include current "with waiver" and "without waiver" status on both a summary and detailed level through the current extension approval period using the most recent actual expenditures, as well as summary and detailed projections of the change in the "with waiver" expenditure total as result of the proposed amendment which isolates (by Eligibility Group) the impact of the amendment;

   c) A detailed description of the amendment, including impact on beneficiaries, with sufficient supporting documentation; and

    d) If applicable, a description of how the evaluation design shall be modified to incorporate the amendment provisions.

8. **Continuation of the Demonstration.** This Demonstration will expire on September 30, 2011 and may not be extended. The State will comply with the Demonstration phase-out requirements and the transfer of populations as outlined in paragraph 9 below.

9. **Demonstration Phase-Out.** The State may suspend or terminate this Demonstration in whole or in part at any time prior to the date of expiration. The State must promptly notify CMS in writing of the reason(s) for the suspension or termination, together with the effective date. In the event the State elects to phase out the Demonstration, the State must submit a phase-out plan to CMS at least 6 months prior to initiating phase-out activities. Nothing herein shall be construed as preventing the State from submitting a phase-out plan with an implementation deadline shorter than 6 months when such action is necessitated by emergent circumstances. The phase-out plan is subject to CMS approval. If the project is terminated or any relevant waivers suspended by the State, FFP shall be limited to normal closeout costs associated with terminating the Demonstration including services and administrative costs of disenrolling participants.

If the State wants to continue limiting freedom of choice of providers for the Demonstration populations specified in Section VI, paragraph 45, the authority to do so must be transferred by amendment to the Partnership Plan demonstration project (11-W-00114/2) if that demonstration is still in operation. Otherwise, the State must request new authority to limit freedom of choice of providers for these populations.

10. **CMS Right to Terminate or Suspend.** CMS may suspend or terminate the Demonstration in whole or in part at any time before the date of expiration, whenever it determines, following a hearing that the State has materially failed to comply with the terms of the project. CMS shall promptly notify the State in writing of the determination and the reasons for the suspension or termination, together with the effective date.

11. **Finding of Non-Compliance.** The State does not relinquish its rights to challenge CMS' finding that the State materially failed to comply.

12. **Withdrawal of Waiver Authority.** CMS reserves the right to withdraw waivers or expenditure authorities at any time it determines that continuing the waivers or expenditure authorities would no longer be in the public interest or promote the objectives of title XIX. If a waiver or expenditure authority is withdrawn, FFP is limited to normal closeout costs associated with terminating the Demonstration, including services and administrative costs of disenrolling participants.

13. **Adequacy of Infrastructure.** The State will ensure the availability of adequate resources for implementation and monitoring of the Demonstration, including education, outreach, and enrollment; maintaining eligibility systems; implementation of milestones; and reporting on financial and other Demonstration components.

14. **Quality Review of Eligibility.** The State will continue to submit by December 31st of each year an alternate plan for Medicaid Eligibility Quality Control (MEQC) as permitted by Federal regulations at 42 CFR 431.812(c).

15. **Public Notice and Consultation with Interested Parties.** The State must comply with the State Notice Procedures set forth in 59 FR 49249 (September 27, 1994) when any program changes to the Demonstration, including but not limited to those referenced in paragraph 6 are proposed by the State.

16. **Compliance with Managed Care Regulations.** The State must comply with the managed care regulations at 42 CFR 438 et. seq., except as expressly waived or referenced in the expenditure authorities incorporated into the STCs. Capitation rates must be developed and certified as actuarially sound in accordance with 42 CFR 438.6.

17. **Federal Funds Participation.** No Federal matching funds for expenditures for this Demonstration will be provided until the effective date identified in the Demonstration approval letter. No FFP is available for this Demonstration for Medicare Part D drugs.

## IV.   ELIGIBILITY, BENEFITS, AND ENROLLMENT

The mandatory managed care program operated by New York provides Medicaid State Plan benefits through comprehensive managed care organizations to those recipients eligible under the State plan as noted below.

18. **Eligibility.**

The eligibility categories described below are subject to all applicable Medicaid laws and regulations, except as expressly waived through the waiver authorities for this Demonstration.

| State Plan Mandatory and Optional Groups | FPL Level and/or other qualifying criteria |
|---|---|
| Children under age 1 | Up to 200 % FPL |
| Children 1 through 5 | Up to 133% FPL |
| Children 6 through 18 | Up to 100% FPL |
| Children 19-20 | Monthly income standard (determined annually) |
| Adult (21-64) AFDC-related family members | Monthly income standard (determined annually) |

Under the Partnership Plan Demonstration (11-W-00114/2), the recipients in the categories above who live in New York City and 23 other counties are mandated into managed care enrollment. Under this Demonstration, recipients in these categories who live in the following counties will now be mandated into managed care enrollment:

| | | | | |
|---|---|---|---|---|
| Allegany | Cortland | Dutchess | Fulton | Montgomery |
| Putnam | Orange | Otsego | Schenectady | Seneca |
| Sullivan | Ulster | Washington | Yates | |

| State Plan Mandatory and Optional Groups | FPL Level and/or other qualifying criteria |
|---|---|
| Adults and children (0-64) receiving Supplemental Security Income (SSI) payments or otherwise disabled | Monthly income standard (determined annually) |
| Adults (65+) | Monthly income standard (determined annually) |

Under the Partnership Plan Demonstration (11-W-00114/2), the recipients in the categories above are not mandated into managed care enrollment. Under this Demonstration, all recipients in these categories who live in New York City and the counties that participate in the Partnership Plan will now be mandated into managed care enrollment.

19. **Eligibility Exclusions.** Notwithstanding the eligibility criteria in paragraph 18, the following persons are excluded from the Medicaid mandatory managed care program.

| |
|---|
| Individuals who become eligible for Medicaid only after spending down a portion of their income |
| Residents of state psychiatric facilities or residents of state certified or voluntary treatment facilities for children and youth |
| Patients in residential health care facilities (RHCF) at time of enrollment and residents in a RHCF who are classified as permanent |
| Participants in capitated long term care demonstration projects |
| Medicaid-eligible infants living with incarcerated mothers |
| Infants weighing less than 1200 grams at birth and other infants less than 6 months who meet the criteria for SSI-related categories |
| Individuals with access to comprehensive private health insurance if cost effective |
| Foster care children in the placement of a voluntary agency |
| Foster care children in direct care [at the option of the local Department of Social Services (LDSS)] |
| Certified blind or disabled children living or expected to live separate and apart from their parents for 30 days or more |
| Individuals expected to be Medicaid eligible for less than six months (except for pregnant women) |
| Individuals receiving long-term care services through long-term home health care programs, or child care facilities (except ICF services for the developmentally disabled) |
| Individuals eligible for Medicaid benefits only with respect to tuberculosis-related services |
| Individuals placed in Office of Mental Health (OMH)-licensed family care homes |
| Individuals enrolled in the restricted recipient program |
| Individuals with a "county of fiscal responsibility" code 99 in MMIS |
| Individuals receiving hospice services (at time of enrollment) |
| Youth in the care and custody of the commissioner of the Office of Family & Children Services |
| Individuals with a "county of fiscal responsibility" code of 97 (OMH in MMIS) |
| Individuals with a "county of fiscal responsibility" code of 98 (until program features are approved by the state and operational at the local district level to permit these individuals to voluntarily enroll in Medicaid managed care) |
| Individuals under sixty-five years of age (screened and require treatment) in the Centers for Disease Control and Prevention breast and/or cervical cancer early detection program and need treatment for |

| breast or cervical cancer, and are not otherwise covered under creditable health coverage. |
| Individuals who are eligible for Medicaid buy-in for the working disabled and must pay a premium |

20. **Eligibility Exemptions.** Notwithstanding the eligibility criteria in paragraph 18, the following persons may not be required but may voluntarily enroll in the Medicaid managed care program.

| Individuals who are HIV+ |
| Individuals with severe and persistent mental illness and children with serious emotional disturbances except those individuals whose behavioral health benefits are provided through the Medicaid fee-for-service program. |
| Individuals eligible for both Medicare/Medicaid (dual-eligibles) * |
| Individuals for whom a managed care provider is not geographically accessible |
| Individuals with chronic medical conditions who have been under active treatment for at least six months with a sub-specialist who is not a network provider for any Medicaid MCO in the service area or whose request has been approved by the New York State Department of Health Medical Director because of unusually severe chronic care needs |
| Individuals with end stage renal disease (ESRD) |
| Residents of intermediate care facilities for the mentally retarded (ICF/MR) |
| Individuals with characteristics and needs similar to those residing in an ICF/MR |
| Individuals already scheduled for a major surgical procedure (within 30 days of scheduled enrollment) with a provider who is not a participant in the network of any Medicaid MCO in the service area |
| Individuals with a developmental or physical disability receiving services through a Medicaid home and community based services (HCBS) waiver |
| Individuals with a developmental or physical disability whose needs are similar to participants receiving services through a Medicaid (HCBS) waiver |
| Participants in the Medicaid model waiver (care-at-home) programs |
| Individuals whose needs are similar to participants receiving services through the Medicaid model waiver (care-at-home) programs |
| Residents of alcohol/substance abuse long term residential treatment programs |
| Homeless individuals in the shelter system (at the option of the LDSS). Note: in New York City, all homeless individuals are exempt. |
| Native Americans |
| Individuals who cannot be served by a managed care provider due to a language barrier |
| Individuals temporarily residing out of district |
| Individuals with a "county of fiscal responsibility code of 98" (OMRDD in MMIS) in counties where program features are approved by the State and operational at the local district level to permit these individuals to voluntarily enroll. |
| Individuals who are eligible for the Medicaid buy-in for the working disabled and are not required to pay a premium |

* These persons may only join a qualified Medicaid Advantage Plan

21. **Mandatory Managed Care Program Benefits.** Benefits provided through this

Demonstration for the Medicaid managed care program are as follows:

| |
|---|
| Inpatient and outpatient hospital services |
| Clinic services including Rural Health Clinic and Federally Qualified Health Center services |
| Laboratory and X-ray services |
| Home health services |
| Early Periodic Screening, Diagnosis, and Treatment services (for individuals under age 21 only) |
| Family planning services and supplies |
| Physicians services including nurse practitioners and nurse midwife services |
| Dental services |
| Physical and occupational therapy |
| Speech, hearing and language therapy |
| Prescription drugs, over-the-counter drugs and medical supplies |
| Durable medical equipment including prosthetic and orthotic devices, hearing aids and prescription shoes |
| Vision care services including eyeglasses |
| Intermediate Care Facilities for the Mentally Retarded (ICF/MR) |
| Nursing facility services |
| Personal care services |
| Case management services |
| Hospice care services |
| TB-related services |
| Inpatient and outpatient behavioral health services (mental health and chemical dependence services) |
| Emergency medical services including emergency transportation |
| Adult day care |
| Personal Emergency Response Services (PERS) |
| Renal dialysis |
| Home and Community Based Services waivers (HCBS) |
| Care at Home Program (OMRDD) |
| Non-emergency transportation |
| Experimental or investigational treatment (covered on a case by case basis) |

22. **Facilitated Enrollment.** MCO, health care provider and community-based organization facilitated enrollers will engage in those activities described in 42 CFR 435.904(d)(2), as permitted by 42 CFR 435.904(e)(3)(ii), within the following parameters:

   a) Facilitated enrollers will provide program information to applicants and interested individuals as described in 42 CFR 435.905 (a).

   b) Facilitated enrollers must afford any interested individual the opportunity to apply for Medicaid without delay as required by 42 CFR 435.906.

c) If an interested individual applies for Medicaid by completing the information required under 42 CFR 435.907(a) and (b) and 42 CFR 435.910(a) and signing a Medicaid application, that application must be transmitted to the local department of social services (LDSS) for determination of eligibility.

d) The protocols for facilitated enrollment practices between the LDSS and the facilitated enrollers must:
   i.   Ensure that choice counseling activities are closely monitored to minimize adverse risk selection; and
   ii.  Specify that determinations of Medicaid eligibility are made solely by the LDSS.

e) The State must submit all protocols and training materials for any counties beginning to use facilitated enrollment processes to CMS for review and approval at least thirty days prior to starting facilitated enrollment.

## V.   DELIVERY SYSTEMS

23. **Contracts.** Procurement and the subsequent final contracts developed to implement selective contracting by the State with any provider group shall be subject to CMS approval prior to implementation. Existing contracts with Federally Qualified Health Centers (FQHC) shall continue in force.

Payments under contracts with public agencies, that are not competitively bid in a process involving multiple bidders, shall not exceed the documented costs incurred in furnishing covered services to eligible individuals (or a reasonable estimate with an adjustment factor no greater than the annual change in the consumer price index).

24. **Institutions for Mental Diseases (IMDs).** Services to enrollees of the State's mandatory managed care program who are patients in IMDs will be covered only to the extent permitted under Section VIII, paragraph 51.

25. **Health Services to Native American Populations.** The plan for patient management and coordination of services for Medicaid-eligible Native Americans developed for the Partnership Plan in consultation with the Indian tribes and/or representatives from the Indian health programs located in participating counties shall apply to recipients in this Demonstration.

## VI.   FEDERAL-STATE HEALTH REFORM PARTNERSHIP (F-SHRP) ACTIVITIES

**Funding**
26. **State Obligation.** The State must invest $3.0 billion over the five-year demonstration period for health care reform initiatives in order to receive $1.5 billion in FFP.

a) These initiatives will include programs that will promote the efficient operation of the State's health care system; consolidate and right-size New York's health care system by reducing excess capacity in the acute care system; shift emphasis in long-term care from institutional-based to community-based settings; expand the use of e-prescribing, electronic medical records and regional health information organizations; and improve ambulatory and primary care provision.

b) These reform initiatives may include but are not limited to:

  i. Reform activities set forth in (a) above and consistent with the goals of Health Care Efficiency and Affordability Law for New Yorkers (HEAL NY)

  ii. State Department of Health programs–
   1. Diagnostic and Treatment Centers for Indigent Care

  iii. State Office on Aging programs – Expanded In-Home Services to the Elderly

  iv. Office of Mental Health programs –
   1. Community Support Services and Residential Services Program
   2. New York University Child Studies Center

  v. Office of Alcoholism and Substance Abuse Services – Prevention and Treatment Program

c) Additional State-only health care reform investments or changes in the listed uses will be considered an amendment to the Demonstration and processed in accordance with Section III, paragraph 7.

27. **Federal Financial Participation for Designated State Health Programs (DSHP).**

a) **Five-year Demonstration Period.** Federal Financial Participation (FFP) will be available beginning October 1, 2006, for State expenditures on the DSHP described in paragraph 28 incurred by the State during the period October 1, 2006 and ending September 30, 2011 subject to the limitations outlined below.

  i. FFP Cap. FFP for DSHP is limited to the lesser of $1.5 billion or half the amount of monies the State expends over the demonstration period on the health care reform activities described in paragraph 26.

  ii. Milestones. FFP will only be available if the milestones outlined in paragraphs 31 through 37 are completed in accordance with the due dates set forth for each milestone.

  iii. Demonstrated Savings. The State must achieve an amount of total

Medicaid program savings by the end of the Demonstration period as calculated under the provisions of Section X.

iv. <u>Reconciliation and Recoupment.</u> If the Federal share of these savings are not at least equal to the amount determined under subparagraph (i) the State must return to CMS the amount of Federal funds that exceed Medicaid program savings achieved.

1. As part of the annual report required under Section IV, paragraph 43, the State will report both DSHP claims and expenditures for health care reforms.
2. The reported claims and expenditures will be reconciled at the end of the Demonstration with the State's MBES submissions.
3. Any repayment required under this subparagraph will be accomplished by the State making an adjustment for its excessive claim for FFP on the CMS-64 by entering an amount in line 10(b) of the Summary sheet equal to the amount by which FFP exceeds Medicaid program savings.

b) **Annual Demonstration Year.** The following limitations apply to Federal funding of DSHP in each Demonstration year:

i. <u>FFP Cap.</u> FFP for DSHP is limited to the lesser of $300 million or half of the State's expenditures on the health care reform activities specified in paragraph 26. Any remaining FFP authority, if any, between the $300 million limit and the State's expenditures on health care reform, may not roll over into subsequent demonstration years.

ii. <u>Milestones.</u> FFP will only be available if the milestones outlined in paragraphs 31 through 37 are completed in accordance with the due dates set forth for each milestone.

iii. <u>Timing.</u> The State may not draw Federal funds for the programs described in paragraph 28 until such time as the State makes expenditures for the health care reform initiatives described in paragraph 26.

iv. <u>Reconciliation and Recoupment.</u>

1. As part of the quarterly report required under Section IV, paragraph 42, the State will report both DSHP claims and expenditures for health care reforms.
2. The reported claims and expenditures will be reconciled quarterly with the State's MBES submission.
3. Any amount of FFP provided in excess of the calculation in subparagraph 2 (iii) will be reduced from future grant awards. To accomplish this, the State must make an adjustment for it excessive claim for FFP on the CMS-64 by entering an amount in line 10(b) of the Summary sheet equal to the excessive claims.

c) **FFP Expiration.** The State agrees that the authority for Federal funding of DSHP expires on September 30, 2011; will not be available for any expenditure incurred after September 30, 2011; and may not be extended.

28. **Designated State Health Programs.** Subject to the conditions outlined in paragraphs 27 and 30 (f), FFP may be claimed for expenditures made for the following designated State health programs beginning October 1, 2006 through September 30, 2011:

   a) Health Care Reform Act programs –
      i. Healthy New York
      ii. AIDS Drug Assistance
      iii. Tobacco Use Prevention and Control
      iv. Health Workforce Retraining
      v. Recruitment and Retention of Health Care Workers
      vi. Telemedicine Demonstration
      vii. Pay for Performance Initiatives

   b) State Office on Aging programs –
      i. Community Services for the Elderly
      ii. Expanded In-Home Services to the Elderly

   c) Office of Mental Health – Community Support Services and Residential Services Program

   d) Office of Mental Retardation/Developmental Disabilities – Residential and Community Support Services

   e) Office of Alcoholism and Substance Abuse Services – Prevention and Treatment Program

   f) Office of Children and Family Services - Committees on Special Education direct care programs

   g) State Department of Health – Early Intervention Program Services

29. **Designated State Health Programs Claiming Process**

   a) Documentation of each designated state health program's expenditures must be clearly outlined in the State's supporting work papers and be made available to CMS.

   b) Federal funds must be claimed within two years after the calendar quarter in which the State disburses expenditures for the designated state health programs in paragraph 28. Claims may not be submitted for State expenditures disbursed after September 30, 2011. The State may draw Federal funds only as the State makes disbursements for the health care reform initiatives identified in paragraph 26.

c) Sources of non-Federal funding must be compliant with section 1903(w) of the Act and applicable regulations. To the extent that Federal funds from any Federal programs are received for the designated state health programs listed in paragraph 28, they shall not be used as a source of non-Federal share.

d) The administrative costs associated with programs in paragraph 28 and any others subsequently added by amendment to the Demonstration shall not be included in any way as Demonstration and/or other Medicaid expenditures.

e) Any changes to the designated state health programs listed in paragraph 28 shall be considered an amendment to the Demonstration and processed in accordance with Section III, paragraph 7.

## Milestones

The State will be required to complete various activities by the prescribed dates below in order to continue the Demonstration. If the State fails to meet any milestone, with the exception of paragraph 30, it must begin Demonstration close-out procedures in accordance with Section III, paragraph 9. These milestones include State-level Medicaid reforms, reporting requirements related to F-SHRP, and compliance with Administration policy.

30. **Fraud and Abuse Recoveries.** Medicaid expenditure data for FFY 2005 shows that the State recovers less than one percent of its total Medicaid expenditures. By the end of this Demonstration, the State will be responsible for increasing its Medicaid fraud and abuse recoveries to at least 1.5 percent of its total Medicaid expenditures for FFY 2005 ($42.9 billion). This will be monitored using State-reported fraud and abuse recoveries on the CMS-64, line 9c for each Federal fiscal year.

a) By October 31, 2006, the State must develop and submit to CMS its plan for achieving this milestone by the end of the demonstration period, including details of Office of Medicaid Inspector General (OMIG) staffing and new budget proposals to further enhance OMIG resources.

b) By September 30, 2008, (for the period 10/1/07 through 9/30/08), the State must demonstrate that its annual level of fraud and abuse recoveries is equal to .5% of total computable Medicaid expenditures ($215 million).

c) By September 30, 2009, (for the period 10/1/08 through 9/30/09), the State must demonstrate that its annual level of fraud and abuse recoveries is equal to .75 percent of total computable Medicaid expenditures ($322 million).

d) By September 30, 2010, (for the period 10/1/09 through 9/30/10), the State must demonstrate that its annual level of fraud and abuse recoveries is equal to 1 percent of total computable Medicaid expenditures ($429 million).

e) By September 30, 2011, (for the period 10/1/10 through 9/30/11), the State must demonstrate that its annual level of fraud and abuse recoveries is equal to 1.5 percent of total computable Medicaid expenditures ($644 million).

f) Achievement of the above targets will be assessed within 90 days after the end of each Demonstration year. If the State does not meet the targets in any of the Demonstration years, the State will be required to pay the Federal government the lesser of:

      i. the dollar difference between actual and target recoveries (as specified above); or

      ii. total claimed FFP for designated state health programs in that Demonstration year, not to exceed $500 million over the five-year Demonstration period.

The Federal government will recoup the penalty calculated in items (i) and (ii) above. To accomplish this, the State must make an adjustment for its claims for FFP on the CMS-64 by entering an amount in line 10(b) of the Summary sheet equal to the amount of the penalty divided by the federal matching rate. This will ensure that the State's claim of FFP is reduced by the total computable amount calculated in items (i) and (ii) above.

31. **Preferred Drug List.** States currently have flexibility to control rising drug costs by implementing a preferred drug list (PDL). By February 1, 2007, the State must implement a PDL for Medicaid mandatory, optional and expansion populations, with the exception of enrollees in Family Health Plus. This PDL must remain in effect for the duration of this Demonstration period. If the State ends its PDL prior to the end of the demonstration, the Federal government will immediately cease providing FFP for designated State health programs.

32. **Baseline Data and Reporting.** After collaboration between the State and Federal governments to define the base year, the State must report to CMS by November 30, 2006 baseline data including, but not limited to:

a) Hospitals: total hospital discharges; Medicaid discharges, total hospital expenditures; and total hospital debt.

b) Nursing homes: total nursing facility days; Medicaid days, total nursing facility expenditures; and total nursing facility debt.

c) Managed care: total fee-for-service and managed care expenditures and enrollment for TANF and SSI enrollees, including the aged.

Once the baseline data is established, quarterly and annual reporting on these data elements is required under Section VII, paragraphs 42 and 43.

33. **Employer Sponsored Insurance.** States may design programs to incorporate private insurance options for beneficiaries. Under this milestone, the State will be required to increase health insurance coverage by coordinating currently available Medicaid funding with private insurance options.

    a) By January 1, 2008, the State must implement, subject to CMS approval, a program to increase the number of currently uninsured but employed New York residents with private insurance coverage. This private insurance coverage program should include members of New York's current waiver program, Family Health Plus.

    b) By January 1, 2009, the State must document increased rates of private insurance for individuals referenced above.

34. **Programmatic Changes.**

    a) By October 31, 2006, the State must implement the following Medicaid cost containment initiatives enacted in New York's 2005/2006 State Budget relevant to Demonstration programs. If the State ends its cost containment initiatives prior to the end of the demonstration, the Federal government will cease providing FFP for designated State health programs.

        1. Restructure the benefit package and cost sharing requirements for the Family Health Plus program (authorized under the Partnership Plan Demonstration 11-W-00114/2)
        2. Increase Medicaid co-payments for drugs from $.50 to $1 for generic drugs and from $2 to $3 for brand-name drugs;
        3. Implement managed care premium cost containment including a one year premium freeze and cap on administrative costs;
        4. Implement mandatory managed care enrollment for SSI recipients;
        5. Expand the managed long term care program; and
        6. Begin implementation of a collaborative multiple payer Pay for Performance demonstration.

    b) By February 1, 2007, the State must submit evidence that the State has implemented at least one new Medicaid cost efficiency initiative. These may include, but are not limited to State plan flexibility options offered by the Deficit Reduction Act of 2006. If the initiative requires legislative approval in order for the State to implement, legislative approval must be granted no later than July 1, 2007, and implementation must begin no later than January 1, 2008. After implementation, if the State ends its cost efficiency initiative prior to the end of the demonstration, the Federal government will cease providing FFP for designated state health programs.

    No initiative implemented as a result of other milestones or savings measures may be used to comply with this requirement.

35. **Improvement in ADA Compliance.** By March 31, 2007, the State must submit a report

outlining the State's plan for updating its on-site reviews of ADA compliance, including sampling methodology and timeframes. The report shall include an evaluation of possible incentives for MCOs to improve accessibility at beneficiary point-of-service.

36. **Single Point-of-Entry.** By April 1, 2008, the State must have implemented, subject to CMS approval, a program to create a single-point-of-entry for Medicaid recipients needing long-term care in at least one region of the State.

37. **Report on Progress of the Commission.** The State must submit two reports on the work of the Commission:

    a) By January 31, 2007, a report which shall include: certification from the State that there are no State statutory impediments to implementation of the Commission's recommendations on reconfiguring the State's general hospital and nursing home bed capacity; steps taken to implement those recommendations on or after January 1, 2007; and a timeline for implementation of those recommendations.

    b) By July 15, 2008, a report on the final recommendations of the Commission. This report shall provide a certification that each of the Commission's recommendations has been acted upon, as well as the strategy and timeline for full implementation. Any recommendations that have been completely implemented by this date should be so noted. The report shall also address how the implementation of the Commission's recommendations will impact the provision of primary/ambulatory care services in affected communities.

## VII.    GENERAL REPORTING REQUIREMENTS

38. **General Financial Requirements.** The State must comply with all general financial requirements set forth in section VIII.

39. **Compliance with Managed Care Reporting Requirements.** The State must comply with all managed care reporting regulations at 42 CFR 438 et. seq. except as expressly waived or referenced in the expenditure authorities incorporated into these STCs.

40. **Reporting Requirements Related to Budget Neutrality.** The State must comply with all reporting requirements for monitoring budget neutrality set forth in section IX and the Medicaid Program Savings set forth in section X.

41. **Monthly Calls.** Monthly discussions between CMS and the State regarding this demonstration shall be conducted as part of the monthly calls held for the Partnership Plan Demonstration (11-W-00114/2).   During these calls, the progress of the health care reforms authorized by this Demonstration shall be discussed, as well as any pertinent State legislative developments, and any Demonstration amendments the State is considering submitting. CMS shall update the State on any amendments or concept papers under review, as well as Federal policies and issues that may affect any aspect of

the Demonstration. The State and CMS shall jointly develop the agenda for the calls.

42. **Quarterly Reports:** The State must submit progress reports in accordance with the guidelines in Attachment A no later than 60 days following the end of each quarter.

43. **Annual Report.** The State must submit a draft annual report documenting accomplishments, project status, health reform initiatives, quantitative and case study findings, interim evaluation findings, utilization data, and policy and administrative difficulties in the operation of the Demonstration. Additionally, the annual report should include updated workbooks for both the reform metrics and budget neutrality monitoring. The State must submit the draft annual report no later than January 1 after the close of each Demonstration year. Within 30 days of receipt of comments from CMS, a final annual report must be submitted.

## VIII.    GENERAL FINANCIAL REQUIREMENTS

44. **Quarterly Reports.** The State must provide quarterly expenditure reports using Form CMS-64 to separately report total expenditures for services provided under the Medicaid program, including those provided through the Demonstration under section 1115 authority. This project is approved for expenditures applicable to services rendered during the Demonstration period. CMS shall provide FFP for allowable Demonstration expenditures only as long as they do not exceed the pre-defined limits on the costs incurred as specified in section IX.

45. **Reporting Expenditures Under the Demonstration:** The following describes the reporting of expenditures under the Demonstration:

   a) In order to track expenditures under this Demonstration, the State must report Demonstration expenditures through the Medicaid and State Children's Health Insurance Program Budget and Expenditure System (MBES/CBES), following routine CMS-64 reporting instructions outlined in Section 2500 of the State Medicaid Manual. All Demonstration expenditures must be reported each quarter on separate Forms CMS-64.9 Waiver and/or 64.9P Waiver, identified by the Demonstration project number assigned by CMS (including the project number extension, which indicates the DY in which services were rendered or for which capitation payments were made).

   b) For monitoring purposes, quarterly cost settlements and pharmaceutical rebates relevant to the Demonstration will be allocated (using an approved methodology) to the Demonstration populations specified in subparagraph (i) and offset against current quarter waiver expenditures. Demonstration expenditures net of these cost settlement offsets will be reported on Form CMS 64.9 Waiver. Amounts offset will be identifiable in the State's supporting work papers and made available to CMS.

   c) For each Demonstration year, seven (7) separate waiver Forms CMS-64.9 Waiver

and/or 64.9P Waiver must be completed, using the waiver name noted below, to report expenditures for the following Demonstration populations, as well as for the designated State health programs.

i.  **Demonstration Population 1:**   TANF Child under 1 through 20 required to enroll in managed care in Allegany, Cortland, Dutchess, Fulton, Montgomery, Putnam, Orange, Otsego, Schenectady, Seneca, Sullivan, Ulster, Washington and Yates counties [TANF Child New MC].

ii.  **Demonstration Population 2:**   TANF Adults aged 21-64 required to enroll in managed care in Allegany, Cortland, Dutchess, Fulton, Montgomery, Putnam, Orange, Otsego, Schenectady, Seneca, Sullivan, Ulster, Washington, and Yates counties [TANF Adult New MC].

iii.  **Demonstration Population 3:**   Disabled Adults and Children 0-64 voluntarily enrolled in managed care in those counties participating in the Partnership Plan as of October 1, 2006 [SSI 0-64 Current MC].

iv.  **Demonstration Population 4:**   Disabled Adults and Children 0-64 required to enroll in managed care in those counties participating in the Partnership Plan as of October 1, 2006 [SSI 0-64 New MC].

v.  **Demonstration Population 5:**   Aged or Disabled Elderly voluntarily enrolled in managed care in those counties participating in the Partnership Plan as of October 1, 2006 [SSI 65+ Current MC].

vi.  **Demonstration Population 6:**   Aged or Disabled Elderly required to enroll in managed care in those counties participating in the Partnership Plan as of October 1, 2006 [SSI 65+ New MC].

vii.  **Demonstration Expenditures:**  Designated State Health Programs [DSHP]

46. **Expenditures Subject to the Budget Neutrality Cap.** For purposes of this section, the term "expenditures subject to the budget neutrality cap" must include all Medicaid expenditures on behalf of individuals who are enrolled in this Demonstration and for designated State health program expenditures as described in paragraph 45 (e) (i-vii). All expenditures that are subject to the budget neutrality cap are considered Demonstration expenditures and must be reported on Forms CMS-64.9 Waiver and /or 64.9P Waiver.

All expenditures for managed care enrollment for Demonstration Populations 1 and 2 residing in the counties other than those specified in Section IV, paragraph 18 who are required to enroll in managed care ("current" mandatory managed care enrollment) will be reported under the Partnership Plan Demonstration (11-W-00114/2). These expenditures may not be reported under this Demonstration.

47. **Administrative Costs.** Administrative costs will not be included in the budget neutrality

limit, but the State must separately track and report additional administrative costs that are directly attributable to the Demonstration, subject to the restriction in Section VI, paragraph 29 (d). All administrative costs must be identified on the Forms CMS-64.10 Waiver and/or 64.10P Waiver.

48. **Claiming Period.** All claims for expenditures subject to the budget neutrality cap (including any cost settlements) must be made within 2 years after the calendar quarter in which the State made the expenditures. All claims for services during the Demonstration period (including any cost settlements) must be made within 2 years after the conclusion or termination of the Demonstration. During the latter 2-year period, the State must continue to identify separately net expenditures related to dates of service during the operation of the Demonstration on the CMS-64 waiver forms in order to properly account for these expenditures in determining budget neutrality.

49. **Reporting Member Months.** The following describes the reporting of member months for Demonstration populations:

   a) For the purpose of calculating the budget neutrality expenditure cap and for other purposes, the State must provide to CMS, as part of the quarterly report required under paragraph 42, the actual number of eligible member months for the Demonstration Populations defined in paragraph 45 (e) (i-vi). The State must submit a statement accompanying the quarterly report which certifies the accuracy of this information.

   The actual number of member months for current mandatory managed care enrollment for Demonstration Populations 1 and 2 as defined in paragraph 46 will not be used for the purpose of calculating the budget neutrality expenditure agreement for this Demonstration. They will be used for the budget neutrality expenditure agreement for the Partnership Plan Demonstration (11-W-00114/2).

   To permit full recognition of "in-process" eligibility, reported counts of member months may be subject to revisions after the end of each quarter. Member month counts may be revised retrospectively for up to two years as needed.

   b) The term "eligible member months" refers to the number of months in which persons are eligible to receive services. For example, a person who is eligible for 3 months contributes 3 eligible member months to the total. Two individuals who are eligible for 2 months each contribute 2 eligible member months to the total, for a total of 4 eligible member months.

   c) For the purposes of this Demonstration, the term "Demonstration eligibles" excludes unqualified aliens and refers only to the Demonstration Populations described in paragraph 45 (e) (i-vi).

50. **Standard Medicaid Funding Process.** The standard Medicaid funding process must be used during the Demonstration. The State must estimate matchable Demonstration

expenditures (total computable and Federal share) subject to the budget neutrality expenditure cap and separately report these expenditures by quarter for each Federal fiscal year on the Form CMS-37 for both the Medical Assistance Payments (MAP) and State and Local Administration Costs (ADM). CMS shall make Federal funds available based upon the State's estimate, as approved by CMS. Within 30 days after the end of each quarter, the State must submit the Form CMS-64 quarterly Medicaid expenditure report, showing Medicaid expenditures made in the quarter just ended. CMS shall reconcile expenditures reported on the Form CMS-64 with Federal funding previously made available to the State, and include the reconciling adjustment in the finalization of the grant award to the State.

51. **Extent of Federal Financial Participation for the Demonstration.** Subject to CMS approval of the source(s) of the non-Federal share of funding, CMS shall provide FFP at the applicable Federal matching rates for the Demonstration as a whole as outlined below, subject to the limits described in section IX:

   a) Administrative costs, including those associated with the administration of the Demonstration, subject to the restriction in Section VI, paragraph 29 (d);

   b) Net expenditures and prior period adjustments of the Medicaid program that are paid in accordance with the approved Medicaid State plan.

   c) FFP will be phased down for expenditures for services to a Partnership Plan enrollee age 21 through 64 residing in an Institution for Mental Disease for the first 30 days of an inpatient episode, subject to an aggregate annual limit of 60 days. The FFP match rate will be phased down as follows:

| Demonstration Year | Demonstration Period | Allowable Portion of Expenditures |
|---|---|---|
| 1 | October 1, 2006 – September 30, 2007 | 100% |
| 2 | October 1, 2007 – September 30, 2008 | 50% |
| 3 | October 1, 2008 – September 30, 2009 | 0% |

   For Demonstration years 4 and 5, no FFP will be available for these services.

52. **Medicare Part D Drugs.** No FFP is available for this Demonstration for Medicare Part D drugs.

53. **Sources of Non-Federal Share.** The State certifies that the non-Federal share of funds for the Demonstration are State/local monies. The State further certifies that such funds shall not be used to match for any other Federal grant or contract, except as permitted by law. All sources of non-Federal funding must be compliant with section 1903(w) of the Act and applicable regulations. In addition, all sources of the non-Federal share of funding are subject to CMS approval.

   a) CMS shall review the sources of the non-Federal share of funding for the Demonstration at any time. The State agrees that all funding sources deemed

unacceptable by CMS shall be addressed within the time frames set by CMS.

b) Any amendments that impact the financial status of the program shall require the State to provide information to CMS regarding all sources of the non-Federal share of funding.

54. **State Certification of Funding Conditions.** The State must certify that the following conditions for non-Federal share of Demonstration expenditures are met:

a) Units of government, including governmentally operated health care providers, may certify that State or local tax dollars have been expended as the non-Federal share of funds under the Demonstration.

b) To the extent the State utilizes certified public expenditures (CPEs) as the funding mechanism for title XIX (or under section 1115 authority) payments, CMS must approve a cost reimbursement methodology. This methodology must include a detailed explanation of the process by which the State would identify those costs eligible under title XIX (or under section 1115 authority) for purposes of certifying public expenditures.

c) To the extent the State utilizes CPEs as the funding mechanism to claim Federal match for payments under the demonstration, governmental entities to which general revenue funds are appropriated must certify to the State the amount of such tax revenue (State or local) used to satisfy demonstration expenditures. The entities that incurred the cost must also provide cost documentation to support the State's claim for Federal match.

d) The State may use intergovernmental transfers to the extent that such funds are derived from State or local tax revenues and are transferred by units of government within the State. Any transfers from governmentally operated health care providers must be made in an amount not to exceed the non-Federal share of title XIX payments. Under all circumstances, health care providers must retain 100 percent of the claimed expenditure. Moreover, no pre-arranged agreements (contractual or otherwise) exist between health care providers and State and/or local government to return and/or redirect any portion of the Medicaid payments. This confirmation of Medicaid payment retention is made with the understanding that payments that are the normal operating expenses of conducting business, such as payments related to taxes, (including health care provider-related taxes), fees, business relationships with governments that are unrelated to Medicaid and in which there is no connection to Medicaid payments, are not considered returning and/or redirecting a Medicaid payment.

55. **Monitoring the Demonstration.** The State will provide CMS with information to effectively monitor the Demonstration, upon request, in a reasonable time frame.

## IX.    MONITORING BUDGET NEUTRALITY

56. **Limit on Title XIX Funding.** The State shall be subject to a limit on the amount of Federal title XIX funding that the State may receive on selected Medicaid expenditures during the period of approval of the Demonstration. The limit is determined by using a per capita cost method, and budget neutrality expenditure caps are set on a yearly basis with a cumulative budget neutrality expenditure limit for the length of the entire Demonstration. The data supplied by the State to CMS to set the annual limits is subject to review and audit, and if found to be inaccurate, will result in a modified budget neutrality expenditure limit.

57. **Risk.** The State shall be at risk for the per capita cost (as determined by the method described below) for Demonstration eligibles under this budget neutrality agreement, but not for the number of Demonstration eligibles in each of the groups. By providing FFP for all Demonstration eligibles, The State shall not be at risk for changing economic conditions that impact enrollment levels. However, by placing The State at risk for the per capita costs for Demonstration eligibles under this agreement, CMS assures that Federal Demonstration expenditures do not exceed the level of expenditures that would have occurred had there been no Demonstration.

58. **Demonstration Populations Used to Calculate the Budget Neutrality Cap.** The following Demonstration populations are used to calculate the budget neutrality cap and are incorporated into the following eligibility groups (EGs):

a)  **Eligibility Group 1:**    TANF Child under 1 through 20 required to enroll in managed care in Allegany, Cortland, Dutchess, Fulton, Montgomery, Putnam, Orange, Otsego, Schenectady, Seneca, Sullivan, Ulster, Washington and Yates counties (Demonstration Population 1)

b)  **Eligibility Group 2:**    TANF Adults aged 21-64 required to enroll in managed care in Allegany, Cortland, Dutchess, Fulton, Montgomery, Putnam, Orange, Otsego, Schenectady, Seneca, Sullivan, Ulster, Washington, and Yates counties (Demonstration Population 2)

c)  **Eligibility Group 3:**    Disabled Adults and Children 0-64 voluntarily enrolled in managed care in those counties participating in the Partnership Plan as of October 1, 2006 (Demonstration Population 3)

d)  **Eligibility Group 4:**    Disabled Adults and Children 0-64 required to enroll in managed care in those counties participating in the Partnership Plan as of October 1, 2006 (Demonstration Population 4)

e) **Eligibility Group 5:**   Aged or Disabled Elderly 65+ voluntarily enrolled in managed care in those counties participating in the Partnership Plan as of October 1, 2006 (Demonstration Population 5)

f) **Eligibility Group 6:**   Aged or Disabled Elderly 65+ required to enroll in managed care in those counties participating in the Partnership Plan as of October 1, 2006 (Demonstration Population 6)

59. **Budget Neutrality Expenditure Cap:** The following describes the method for calculating the budget neutrality expenditure cap for the Demonstration:

   a) For each year of the budget neutrality agreement an annual budget neutrality expenditure cap is calculated for each EG described in paragraph 58 as follows:

      i. An annual EG estimate must be calculated as a product of the number of eligible member months reported by the State under paragraph 49 for each EG, times the appropriate estimated per member per month (PM/PM) costs from the table in subparagraph (ii) below.

      ii. The PM/PM costs for the calculation of the annual budget neutrality expenditure cap for the eligibility groups subject to the budget neutrality agreement under this Demonstration are specified below.

| Eligibility Group | Trend Rate | DY 1 (10/1/06 – 9/30/07) | DY 2 (10/1/07 – 9/30/08) | DY 3 (10/1/08 – 9/30/09) | DY 4 (10/1/09 - 9/30/10) | DY 5 (10/1/10 - 9/30/11) |
|---|---|---|---|---|---|---|
| TANF Children under age 1 through 20 | 6.7% | $482.15 | $514.58 | $549.19 | $586.13 | $625.56 |
| TANF Adults 21-64 | 6.6% | $661.56 | $705.21 | $751.73 | $801.33 | $854.19 |
| Disabled Adults and Children 0 – 64 voluntarily enrolled in managed care | 6.12% | $1,746 | $1,852 | $1,966 | $2,086 | $2,214 |
| Disabled Adults and Children 0 – 64 required to enroll in managed care | 6.12% | $1,746 | $1,852 | $1,966 | $2,086 | $2,214 |
| Aged or Disabled Elderly 65+ voluntarily enrolled in managed care | 5.38% | $1,126 | $1,186 | $1,250 | $1,318 | $1,389 |
| Aged or Disabled Elderly 65+ required to enroll in managed care | 5.38% | $1,126 | $1,186 | $1,250 | $1,318 | $1,389 |

      iii. The annual budget neutrality expenditure cap for the Demonstration as a whole is the sum of the projected annual expenditure caps for each EG calculated in subparagraph (i) above.

   b) The overall budget neutrality expenditure cap for the 5-year demonstration period is the sum of the annual budget neutrality expenditure caps calculated in subparagraph (a) (iii) above for each of the 5 years. The Federal share of the overall budget

Demonstration Approval Period: October 1, 2006 through September 30, 2011          Page 23

neutrality expenditure cap represents the maximum amount of FFP that the State may receive for expenditures on behalf of Demonstration populations and expenditures described in paragraph 45 (e) during the Demonstration period.

60. **Enforcement of Budget Neutrality.** CMS shall enforce budget neutrality over the life of the Demonstration rather than on an annual basis. However, if the State exceeds the calculated cumulative budget neutrality expenditure cap by the percentage identified below for any of the Demonstration years, the State must submit a corrective action plan to CMS for approval.

| Demonstration Year | Cumulative Expenditure Cap Definition | Percentage |
|---|---|---|
| Year 1 | Budget neutrality expenditure cap plus | 1 percent |
| Years 1 and 2 | Combined budget neutrality expenditure caps plus | 0.5 percent |
| Years 1 through 3 | Combined budget neutrality expenditure caps plus | 0.4 percent |
| Years 1 through 4 | Combined budget neutrality expenditure caps plus | 0.3 percent |
| Years 1 through 5 | Combined budget neutrality expenditure caps plus | 0 percent |

61. **Exceeding Budget Neutrality.** If, at the end of this Demonstration period the overall budget neutrality expenditure cap has been exceeded, the excess Federal funds must be returned to CMS. If the Demonstration is terminated prior to the end of the budget neutrality agreement, an evaluation of this provision shall be based on the time elapsed through the termination date.

## X.    MEDICAID PROGRAM SAVINGS MEASURES

62. **Cumulative Savings Cap.** The State is required to save $3 billion total computable over the five-year demonstration period through specified health care reform initiatives in Section VI, paragraph 27. The $3 billion cumulative savings cap is considered a sub cap of the budget neutrality expenditure cap calculated in Section IX.

63. **Demonstration Populations Used to Calculate the Estimated Savings.** The following Demonstration populations are used to calculate the estimated savings and are incorporated into the following EGs:

    a) **Eligibility Group 1:**    TANF Child under 1 through 20 required to enroll in managed care in Allegany, Cortland, Dutchess, Fulton, Montgomery, Putnam, Orange, Otsego, Schenectady, Seneca, Sullivan, Ulster, Washington and Yates counties (Demonstration Population 1)

    b) **Eligibility Group 2:**    TANF Adults aged 21-64 required to enroll in managed care in Allegany, Cortland, Dutchess, Fulton, Montgomery, Putnam, Orange, Otsego, Schenectady, Seneca, Sullivan, Ulster, Washington, and Yates counties (Demonstration Population 2)

c) **Eligibility Group 4:**  Disabled Adults and Children 0-64 required to enroll in managed care in those counties participating in the Partnership Plan as of October 1, 2006 (Demonstration Population 4)

d) **Eligibility Group 6:**  Aged or Disabled Elderly 65+ required to enroll in managed care in those counties participating in the Partnership Plan as of October 1, 2006 (Demonstration Population 6)

64. **Estimated Medicaid Program Savings As a Subset of the Budget Neutrality Expenditure Cap:** The following describes the method for calculating the estimated Medicaid Program savings cap for the Demonstration:

a) For each year of the budget neutrality agreement an annual Medicaid program savings is calculated for each EG described in paragraph 63 as follows:

    i.   An annual EG estimate must be calculated as a product of the number of eligible member months reported by the State under paragraph 49 for each EG times the appropriate estimated per member per month (PM/PM) costs from the table in paragraph 59 (a)(ii).

    ii.   The <u>annual</u> Medicaid savings cap for the Demonstration as a whole is the sum of the projected annual expenditure caps for each EG calculated in subparagraph (i) above minus the actual expenditures for the EGs in paragraph 63 reported on Forms CMS-64.9 Waiver and/or 64.9P Waiver.

b) For each year under the Demonstration the amount of savings attributable to hospital rightsizing will be calculated using the following method from the data provided in the annual report required by Section VII, paragraph 43:

    i.   (Base Year Medicaid discharges/enrollee – Demonstration Year Medicaid discharges/enrollee) * (Average DY Medicaid costs per discharge) * (Total DY Medicaid enrollees)

c) The <u>overall</u> Medicaid savings cap for the 5-year demonstration period is the sum of the annual Medicaid savings calculated in subparagraph (a) (ii) plus the amount calculated in subparagraph (b) for each of the 5 years. The Federal share of the overall Medicaid savings limit represents the maximum amount of FFP that the State may receive.

## XI.  EVALUATION OF THE DEMONSTRATION

65. **Evaluation Design.** The State must submit to CMS for approval a draft evaluation design no later than January 1, 2007. At a minimum, the draft design must include a

discussion of the goals, objectives, and evaluation questions specific to the purposes of and expenditures made by the State for its health care reform activities. The draft design must discuss the outcome measures that will be used in evaluating the impact of these activities on the efficient operation of the State's health care system during the period of the Demonstration. The outcome measures below represent agreed-upon metrics under which the State and CMS can measure the shared financial benefit of the health care reforms and must be included in the evaluation design:

- Nursing home admissions - "Value of Averted Medicaid Nursing Home Admissions": For each fiscal year under the demonstration, the number of the reduction in the number of Demonstration Year (DY) Medicaid bed-days below Base Year (BY) level * average cost per bed-day * DY Medicaid enrollees.

- Reduction in Medicaid debt payment for hospitals - "Value of Avoided Inpatient Debt Payments": For each fiscal year under the demonstration, the reduction in the total inpatient debt per discharge from Base Year (BY) level * Medicaid discharges.

- Reduction in Medicaid debt payment for nursing homes - "Value of Avoided Nursing Home Debt Payments": For each fiscal year under the demonstration, the reduction in the total nursing facility debt per day from Base Year (BY) level * Medicaid days.

66. **Final Evaluation Plan and Implementation.** CMS shall provide comments on the draft design within 60 days of receipt, and the State must submit a final plan for the evaluation of the Demonstration described in paragraph 65, within 60 days of receipt of CMS comments. The State must implement the evaluation designs and report its progress on each in the quarterly reports. The State must submit to CMS a draft evaluation report 120 days prior to the expiration of the Demonstration. CMS shall provide comments within 60 days of receipt of the report. The State must submit the final report prior to the expiration date of the Demonstration.

67. **Cooperation with CMS Evaluators.** Should CMS conduct an independent evaluation of any component of the Demonstration, the State will cooperate fully with CMS or the independent evaluator selected by CMS. The State will submit the required data to the contractor or CMS.

## XI.    SCHEDULE OF STATE DELIVERABLES FOR THE DEMONSTRATION

| Date - Specific | Deliverable | STC Reference |
|---|---|---|
| 10/31/2006 | Submit Plan for Fraud and Abuse Recoveries | Section VI, paragraph 30 |
| 10/31/2006 | Implement Medicaid Cost Containment Initiatives | Section VI, paragraph 34 |
| 11/30/2006 | Submit Baseline Data on Health Reform Initiatives | Section VI, paragraph 32 |
| 1/1/2007 | Submit Evaluation Design | Section XI, paragraph 65 |

Demonstration Approval Period: October 1, 2006 through September 30, 2011    Page 26

| Date - Specific | Deliverable | STC Reference |
|---|---|---|
| 1/31/2007 | Submit Initial Report on Progress of Commission | Section VI, paragraph 37 |
| 2/1/2007 | Implement Preferred Drug List | Section VI, paragraph 31 |
| 2/1/2007 | Implement New Medicaid Reform Initiative | Section VI, paragraph 34 |
| 3/31/2007 | Submit Report on MCO ADA Compliance Activities | Section VI, paragraph 35 |
| 1/1/2008 | Implement Employee Sponsored Insurance Program | Section VI, paragraph 33 |
| 4/1/2008 | Implement Single Point-of-Entry Program | Section VI, paragraph 36 |
| 7/15/2008 | Submit Report on Implementation of Commission's Recommendations | Section VI, paragraph 37 |
| 1/1/2009 | Demonstrate Fraud and Abuse Recoveries of $215 million | Section VI, paragraph 30 |
| 1/1/2009 | Document Increased Rates of Private Insurance | Section VI, paragraph 33 |
| 1/1/2009 | Demonstrate Fraud and Abuse Recoveries of $322 million | Section VI, paragraph 30 |
| 1/1//2011 | Demonstrate Fraud and Abuse Recoveries of $429 million | Section VI, paragraph 30 |
| 5/31/2011 | Submit Draft Evaluation Report | Section XI, paragraph 66 |
| 1/1/2012 | Demonstrate Fraud and Abuse Recoveries of $644 million | Section VI, paragraph 30 |
| 9/30/2011 | Submit Final Evaluation Report | Section XI, paragraph 66 |

| | Deliverable | STC Reference |
|---|---|---|
| **Annual** | By January 1st - Draft Report | Section VII, paragraph 43 |
| | By December 31st – MEQC Program Report | Section III, paragraph 14 |
| **Quarterly** | | |
| | Quarterly Operational Reports | Section VII, paragraph 42 |
| | CMS-64 Reports | Section IX, paragraph 45 |
| | Eligible Member Months | Section IX, paragraph 49 |

Demonstration Approval Period: October 1, 2006 through September 30, 2011

## ATTACHMENT A

### Quarterly Report Guidelines

Under Section VII, paragraph 42 of these STCs, the State is required to submit quarterly progress reports to CMS. The purpose of the quarterly report is to inform CMS of significant demonstration activity from the time of approval through completion of the demonstration. The reports are due to CMS 60 days after the end of each quarter.

The following report guidelines are intended as a framework and can be modified when agreed upon by CMS and the State. A complete quarterly progress report must include an updated budget neutrality monitoring workbook, as well as an updated reform metric workbook. An electronic copy of the report narrative, as well as both Microsoft Excel workbooks is provided.

### NARRATIVE REPORT FORMAT:

> **Title Line One** – Federal-State Health Reform Partnership
>
> **Title Line Two** - Section 1115 Quarterly Report
>
> **Demonstration/Quarter Reporting Period:**
> Example:
> Demonstration Year: 1 (10/1/06 - 9/30/07)
> Federal Fiscal Quarter: 4/2007 (7/07 - 9/07)

**Introduction:** Information describing the goal of the demonstration, what it does, and key dates of approval /operation. (This should be the same for each report.)

**Enrollment Information :** Complete the following table that outlines all enrollment activity under the demonstration. The State should indicate "N/A" where appropriate. If there was no activity under a particular enrollment category, the State should indicate that by "0".

**Note:** Enrollment counts should be person counts for the current quarter only, not participant months.

| Population Groups | Current Enrollees | # Voluntary Disenrollments | # Involuntary Disenrollments |
|---|---|---|---|
| **Population 1 – TANF Child under 1 through 20 ("new" MC enrollment)** | | | |
| **Population 2 – TANF Child under 1 through 20 ("new" MC enrollment)** | | | |
| **Population 3 – Disabled Adults and Children 0-64 ("old" voluntary MC enrollment)** | | | |
| **Population 4 – Disabled Adults and Children 0-64 ("new" MC enrollment)** | | | |
| **Population 5 – Aged or Disabled Elderly ("old" voluntary MC enrollment)** | | | |
| **Population 6 – Aged or Disabled Elderly ("new" MC enrollment)** | | | |

## ATTACHMENT A

### Quarterly Report Guidelines

**Voluntary Disenrollments:**
Cumulative Number of Voluntary Disenrollments in Current Demonstration Year:
Reasons:

**Involuntary Disenrollments:**
Cumulative Number of Involuntary Disenrollments in Current Demonstration Year:
Reasons:

**Progress of Expansion of Mandatory Managed Care:**  Summarize progress towards meeting projected enrollment targets

**Documentation of Successful Achievement of Milestones (if any during the quarter):**
Identify all activities relating to implementation of milestones required under the Demonstration, including but not limited to:
- The activities of the Commission and progress in implementing its recommendations;
- An explanation of grants, contracts or other financial arrangements entered into for purposes of implementing the health system reform efforts of this Demonstration; and
- Any other information pertinent to the health system reform efforts of this Demonstration.

**Consumer Issues:**  A summary of the types of complaints or problems consumers identified about the program in the current quarter. Include any trends discovered, the resolution of complaints, and any actions taken or to be taken to prevent other occurrences. Also discuss feedback, issues or concerns received from the MCARP, advocates and county officials.

**Financial/Budget Neutrality Developments/Issues:**

Provide information on:
- Health reform expenditures – when and what
- Designated State health programs – amount of FFP claimed for the quarter
- Savings estimates
- Reform metrics

Submit both a completed reform metric workbook and an updated budget neutrality monitoring workbook

**Demonstration Evaluation:**

Summarize progress on evaluation design, plan and final report.

**Enclosures/Attachments:**

Identify by title any attachments along with a brief description of what information the document contains.

## ATTACHMENT A

### Quarterly Report Guidelines

**State Contact(s):**

Identify individuals by name, title, phone, fax, and address that CMS may contact should any questions arise.

**Date Submitted to CMS:**

07-CV-3442 (CLB)(KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN E. ANDRUS MEMORIAL, INC. (d/b/a ANDRUS
ON HUDSON),

                                 *Plaintiff,*

-against-

RICHARD F. DAINES, as Commissioner of the New York
State Department of Health,

                                 *Defendant.*

**AFFIDAVIT IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**ANDREW M. CUOMO**
Attorney General of the
State of New York
**ATTORNEY FOR DEFENDANT**
Office and Post Office Address

120 Broadway, 24th Floor
New York, New York 10271
(212)-416-8570

*Personal service of a copy of the within*
*is admitted this*
_____ *day of* _____
_____ *2007.*