032808JA.txt
                                                                    1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOHN E. ANDRUS MEMORIAL, INC.,

                Plaintiff,

        v.                           07 CV. 3432 (CLB)

RICHARD F. DAINES, as Commissioner
of the New York State Department
of Health,

                Defendant.
------------------------------------x
                        U.S. Courthouse
                        White Plains, N.Y.
                        March 28, 2008
                        12:15 p.m.


Before:     HON. CHARLES L. BRIEANT,
                United States District Judge


APPEARANCES

CADWALADER WICKERSHAM & TAFT, LLP
BY:  BRIAN T. MCGOVERN, Esq.
One World Financial Center
New York, N.Y.  10281
Attorney for Plaintiff

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
Litigation Bureau
120 Broadway
New York, N.Y.  10271-0332
BY:  JOHN P. GASIOR, Esq.
Assistant Attorney General

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter
```

                                                                    2


  1         THE CLERK:  John E. Andrus Memorial, Inc. v.
  2  Richard Daines, as Commissioner of the New York State

032808JA.txt

3   Department of Health.
4           THE COURT: Good afternoon.
5           MR. MCGOVERN: Good afternoon, Your Honor.
6           MR. GASIOR: Good afternoon, Your Honor.
7           THE COURT: There is an exchange of correspondence
8   here. The bottom line of it may be that the Court may not
9   have been quite as clear as it intended or may have not
10  thought it through in retrospect. But it was really my
11  expectation that if you could not get this case litigated in
12  the State Court -- apparently, you can't get anywhere with
13  the New York Court of Appeals -- that this Court would have
14  to hear it and try it, and make findings and conclusions, and
15  would want to keep the status quo in effect until we can do
16  that, and I would want to do it as promptly as we can.
17          The only other alternative I would like to suggest
18  to you is, you might want to submit this case to an agreed
19  statement of facts, stipulated agreement of facts, which
20  would allow you to go directly to the Circuit after this
21  Court accepted the stipulated facts.
22          Who is the plaintiff here?
23          MR. MCGOVERN: Your Honor, Brian McGovern --
24          THE COURT: Yes.
25          MR. MCGOVERN: -- for Andrus on-the-Hudson.

            Sue Ghorayeb, Official Court Reporter
                                                              3


1           THE COURT: Now, both of you don't care what I
2   think. You want to go to the Second Circuit or preferably to
3   the New York Court of Appeals, and apparently you can't do
4   that. So, what do you want to do?
5           MR. MCGOVERN: Well, Your Honor, we are very

032808JA.txt

6  interested in what you have to say on this subject. We are
7  not interested in prolonging the litigation through the
8  appellate courts.
9      Your Honor, your suggestion I believe on a
10 stipulated set of facts, given the wide divergence of our --
11 of the issues of fact, as documented on the summary judgment
12 record, I don't think would be viable given, given our
13 disagreement over those facts.
14     And we -- but we are prepared -- we also have
15 discovery that has not been completed. Part of the stay in
16 effect was any pretrial discovery and we would like to
17 conduct limited discovery as early as practicable.
18     THE COURT: I don't know that anyone can ever do
19 limited discovery. It takes on a life of its own.
20     Could I hear what the Attorney General wants to do?
21     MR. GASIOR: Your Honor, it's -- our understanding
22 from what transpired at the earlier proceedings is that the
23 Court stayed proceedings both as to discovery, litigation
24 discovery and as to the limitation of the Berger Commission's
25 recommendations pending your determination.

     Sue Ghorayeb,  Official Court Reporter                    4

1      What the Department of Health and the State are
2  most concerned of at this point is that, according to the
3  enabling legislation, the Department of Health's authority to
4  enable or to effectuate the Berger Commission's
5  recommendations expires on June 30th of 2008, that's this
6  year, in about three months.
7      THE COURT: It certainly would seem to me that
8  there is a reasonable way to obviate that problem and to

032808JA.txt

9 litigate as efficiently as you can, without being subject to
10 unduly burdensome scheduling. But the Court has no desire,
11 nor do I perceive that the plaintiff has any such desire, as
12 to cut you off from your rights.
13     So, it seems to me that there is an easy way to
14 resolve that. One way would be the recourse to the agreed
15 statement of facts. If you have so many differences that you
16 can't do that, then we have to isolate the issues on which
17 you differ, which are factual, and limit our discovery to
18 those issues and have the discovery done immediately as to
19 those issues. It seems to me that that can be resolved. I
20 don't see that as being an obstacle.
21     MR. GASIOR: Your Honor, the State has no objection
22 to, I think, the limited amount of discovery that the
23 plaintiff is seeking.
24     What, what the State is most concerned about is
25 that the June 30th date should come and that either the

           Sue Ghorayeb, Official Court Reporter
                                                              5

1 Circuit or the Court is going to say that the Department of
2 Health failed to try and implement the Berger Commission's
3 recommendations and is therefore precluded from implementing
4 them close to June 30th.
5     THE COURT: Now, as I understand it, you told him
6 you are going to implement it. And you both recognize that
7 this Court would have to give some preliminary relief,
8 because otherwise the issues would be lost. They will be
9 mooted out. It will be closed and done with. And so --
10     MR. GASIOR: We understand that the plaintiff might
11 therefore want to move for an injunction, and the Court could

032808JA.txt

12  issue an order to that effect, and the record then would be
13  clear that --
14              THE COURT: You want him to do a preliminary
15  injunction?
16              MR. GASIOR: Correct, Your Honor.
17              THE COURT: All right. What's wrong with that?
18              MR. MCGOVERN: I have no problem with that at all,
19  Your Honor, and we would like two weeks to submit a motion
20  for preliminary injunction. We are prepared to do that. We
21  think we can establish all of the elements.
22              THE COURT: Well, when you do that, you have a
23  problem that the preliminary injunction, unlike the State
24  system, can't be issued in this court without findings of
25  fact and conclusions of law. So, you are going to have to,

                Sue Ghorayeb, Official Court Reporter
                                                                        6


1   at the very least, accompany it with proposed findings. And
2   either the Attorney General will stipulate with you that
3   those findings are binding only for this motion for
4   preliminary injunction or he will tell you which ones he
5   can't stand for, and I have to come in and take testimony.
6               Do you disagree with that?
7               MR. GASIOR: Well, Your Honor, we have in place
8   now -- and this is just thinking off the top of my head --
9   you have decided a motion for summary judgment. So I think a
10  lot of the plaintiff's work is probably done, but that's just
11  speculation on my part.
12              MR. MCGOVERN: Well, obviously, the submission made
13  on the summary judgment motion concerned their request for a
14  affirmative relief. We need to develop -- obviously, we

032808JA.txt
15  would need to develop a record that responds to the elements
16  of preliminary injunction as set forth by the Second Circuit.
17              THE COURT: Is it feasible to consent to an order
18  preserving the status quo with the express understanding that
19  the Andrus Memorial, Inc. will not contend now or later that
20  the State failed to use its utmost powers to close out the
21  institution before June 30th?
22              Would you give some thought to that. I don't ask
23  you to answer that immediately, but maybe you can do it that
24  way.
25              MR. MCGOVERN: I think Mr. Gasior will be able to

                Sue Ghorayeb, Official Court Reporter
                                                                7


1   tell you.
2               MR. GASIOR: Well, certainly, I could take that to
3   my client, Your Honor, but I think --
4               THE COURT: I don't want to see you counted out. I
5   also don't want to see you or the Court having to do
6   unnecessary work or having to do a rush job on something.
7               MR. GASIOR: Understood, Your Honor. But I think
8   that my client would be most comfortable with an order from
9   the Court that would be very clear that, on the record, that
10  there had not been any waiver or any problem at all.
11              THE COURT: And that's what I want to give you.
12              MR. GASIOR: And I think probably that the clearest
13  tried and true method for doing that would be for the
14  plaintiff to go ahead and make their motion for a preliminary
15  injunction and for the Court to grant that motion or deny it,
16  but one way or the other.
17              THE COURT: But the Court can't grant it without

032808JA.txt

18  making findings of fact and conclusions of law, because that
19  would be an appealable order.
20         MR. GASIOR:  I understand, Your Honor.
21         THE COURT:  And the Circuit would take one look at
22  it and they would say "where is the findings?"  That's a
23  problem with that.
24         MR. GASIOR:  Well, one of the suggestions --
25         THE COURT:  He has to do it that way, if you are

               Sue Ghorayeb, Official Court Reporter

                                                              8


1   going to insist on it.
2          MR. GASIOR:  I have to insist on that, Your Honor.
3          THE COURT:  I'm sorry.
4          MR. GASIOR:  I do have to insist on that.
5          THE COURT:  Well, all right.  How soon can you do
6   it?
7          MR. MCGOVERN:  Well, we would endeavor to get our
8   motions papers in in two weeks from today.
9          THE COURT:  All right.  And what are you going to
10  do about the Court's requirement to issue findings of fact
11  and conclusions of law?
12         Are you going to tell me what -- is the State going
13  to tell me what you are contesting for purposes of this
14  motion only and what you are not contesting?
15         Or do I just have to schedule it for a plenary
16  hearing, with no discovery?
17         What do you want, what do you want me to do?
18         MR. GASIOR:  Well, I guess I would like to see what
19  plaintiff puts into the motion and we would decide at that
20  point.

032808JA.txt

21       THE COURT: What are you going to put in the
22  motion, due process? What?
23       MR. MCGOVERN: Yes, due process. Much, much of the
24  evidence that we presented in opposition to the summary
25  judgment motion.

            Sue Ghorayeb, Official Court Reporter
                                                              9


1        On those, on those allegations, we had divergent
2   positions with respect to the facts, and I think there are
3   some facts we could stipulate to, but I do believe that there
4   are differences.
5        THE COURT: Then you are going to have to set up an
6   evidentiary hearing with me and you are going to have to
7   bring witnesses.
8        MR. MCGOVERN: Your Honor, I --
9        THE COURT: And some of them may be on the other
10  side.
11       MR. MCGOVERN: I understand that. I understand
12  that possibility.
13       I don't know if we can determine right now which
14  witnesses, what facts would require an inquiry. I think we
15  can certainly in our summary judgment -- excuse me, in our
16  preliminary injunction papers identify what we believe to be
17  the uncontested facts and to identify what we believe to be
18  the disputed facts and --
19       THE COURT: Could I ask you to do this.
20       Could I ask you to draft your motion papers, have
21  an office conference with the Attorney General and try to
22  ascertain in that office conference what facts in there
23  really require a hearing?

```
                              032808JA.txt
24          Would both of you agree to do that?
25          MR. GASIOR:  Yes, Your Honor.

            Sue Ghorayeb,  Official Court Reporter
                                                                10


 1          THE COURT:  And then maybe you would come in and
 2  have a prehearing conference with me, after you have met, and
 3  we will decide what has to be done and what witnesses will be
 4  called and when they will be heard, and it might be you have
 5  to depose one or two people.
 6          Would you like to do that?
 7          MR. MCGOVERN:  Yes.  Yes, Your Honor.
 8          I believe that it will be necessary to conduct
 9  limited depositions.
10          THE COURT:  Limited.
11          MR. MCGOVERN:  Yes.
12          THE COURT:  Very limited.
13          MR. GASIOR:  Understood, Your Honor.  I mean, just
14  again throwing out an idea.  One of the ideas I proposed to
15  or proposed to Mr. McGovern was the idea under Rule 65 of
16  consolidating the trial and the motion for a preliminary
17  injunction.
18          Mr. McGovern made the point the plaintiffs would
19  like to take discovery before that happened, before we had a
20  trial.  I don't know if it will be acceptable to do the
21  discovery that plaintiff is looking for.
22          THE COURT:  Is it unfair to say, is it unfair to
23  say he has got a better chance of winning on a preliminary
24  injunction than he is winning on the merits at the end of the
25  day?

            Sue Ghorayeb,  Official Court Reporter
                           Page 9
```

032808JA.txt    11

1       MR. GASIOR:  I don't know if I thought about that,
2  Your Honor.  I don't know.
3       THE COURT:  Well, because the irreparable damage is
4  real.  These patients are not going to be there anymore.  The
5  doors are going to be closed.  It has to be diverted to
6  another use, correct?
7       MR. GASIOR:  Correct.
8       MR. MCGOVERN:  Yes, Your Honor, that is the
9  eventuality of any closure.
10      It simply would be a --
11      THE COURT:  It seems to me -- and I don't mean to
12 tell you what to do, but it seems to me that your chances of
13 prevailing here, and on appeal, on a preliminary injunction
14 are far better than your chances of prevailing on the merits.
15      MR. MCGOVERN:  I think you are correct, Your Honor.
16      THE COURT:  Because you have this irreparable
17 damage, which is supposed to be so significant when public
18 interests are involved in this Circuit.
19      But there is considerable possibility that the
20 Circuit might say, "well, we don't see any federal question
21 here.  The State is entitled to deal with the healthcare
22 problems that it has in innovative ways, and while this one
23 is pretty innovative, we will let you do it."  Let the Second
24 Circuit tell you that.
25      MR. MCGOVERN:  Your Honor, I understand that may be

          Sue Ghorayeb, Official Court Reporter        12

1  an outcome on any appeal.

032808JA.txt

2   THE COURT:  Are there other hospitals still in your
3   position as to this issue?
4   MR. MCGOVERN:  There are, there are some facilities
5   and one hospital in particular I am aware of that is still --
6   THE COURT:  I meant to say facility.
7   MR. MCGOVERN:  Yes.  That would include -- yes,
8   there are hospitals that are still challenging the Berger
9   Commission mandate.
10  Some of those have reached settlements with the
11  Department of Health, which allowed them to continue
12  operating notwithstanding the Berger Commission
13  recommendation.
14  THE COURT:  Continue forever?
15  MR. MCGOVERN:  Continue in a different, in a
16  different format.
17  THE COURT:  Yes.
18  MR. MCGOVERN:  But, effectively, the institution --
19  the institutions are continuing to operate, notwithstanding
20  the Berger Commission recommendation.
21  So, there were more litigants in September of 2007,
22  when we were last here, Your Honor.
23  THE COURT:  Yes.
24  MR. MCGOVERN:  A number of those have now resolved
25  their issues with the Department of Health, that have allowed

Sue Ghorayeb,   Official Court Reporter

13

1   them to continue operating, albeit in a modified form, but
2   they are still operating, notwithstanding the Berger
3   Commission recommendation.
4   There are, there are others that are still fighting

032808JA.txt

5      the, the Berger Commission mandate.
6              And just, Your Honor, on the question of fairness,
7      I do want to note that we -- this -- the stay in the case was
8      granted on consent of the parties, so that the Court could
9      hear how the Court of Appeals in Cheektowaga may decide the
10     issues. And that stay was continued again in December of
11     this past year to allow the Court of Appeals to weigh in on
12     this issue.
13             THE COURT: I am surprised they didn't, frankly.
14             MR. MCGOVERN: Well, Your Honor, if I -- I may be
15     able to help explain why they haven't. In both instances,
16     the Attorney General's Office opposed the Court of Appeals
17     reaching the merits in those cases.
18             In the first instance, the Attorney General argued
19     that there was no appeal as of right. And then, when the --
20     when the hospital moved for leave to appeal, they argued that
21     the appeal doesn't raise any issues of statewide importance,
22     because there is only a handful of litigants out there who
23     are still fighting the --
24             THE COURT: But they have a duty, don't they, to
25     uphold the Commission?

               Sue Ghorayeb,  Official Court Reporter
                                                                14


1              MR. MCGOVERN: Well --
2              THE COURT: They have a duty even to uphold the
3      legislature; isn't that right?
4              MR. GASIOR: Yes, Your Honor.
5              MR. MCGOVERN: I don't dispute that.
6              THE COURT: Yes.
7              MR. MCGOVERN: But on the other -- but I do, I do

032808JA.txt

8   feel that we only are here in March not because of inaction
9   on the plaintiff's part, but because of the -- essentially,
10  the opposition from the State to let the Court of Appeals
11  decide the issue.
12          THE COURT:  They had a duty to do what they did.
13          MR. GASIOR:  Well, ultimately, it's the Court of
14  Appeals's decision -- determination to decide what they were
15  going to decide, and they decided that there were no
16  significant constitutional issues, and that was the Court of
17  Appeals' decision, not the Attorney General's.
18          THE COURT:  I guess that's true.
19          Can we have a pretrial conference date after you
20  will have filed your motion, your renewed motion, and after
21  you will have had your office conference with the Attorney
22  General --
23          MR. MCGOVERN:  Yes.
24          THE COURT:  -- as to what the coverage or scope of
25  the hearing on the motion ought to be?

            Sue Ghorayeb,  Official Court Reporter
0                                                              15


1           MR. MCGOVERN:  Yes, Your Honor.
2           THE CLERK:  April 18th, 11:00 a.m..
3           MR. MCGOVERN:  Yes, Your Honor.
4           THE COURT:  Is that okay?
5           MR. MCGOVERN:  That's fine, Your Honor.
6           THE COURT:  Okay for you?
7           MR. GASIOR:  Just so I understand, the plaintiff
8   will file their motion.
9           THE COURT:  He is going to do it in two weeks.
10          MR. GASIOR:  In two weeks.  And we will be able to

032808JA.txt

11 submit opposition papers?
12        THE COURT:  You will be able to submit opposition
13 papers any time prior to the 18th.
14        However, I have asked, and I thought you said you
15 would, for you to agree to have an office conference and
16 discuss what the scope of the hearing would be --
17        MR. GASIOR:  Yes, Your Honor.
18        THE COURT:  -- in advance of coming to see me.
19        MR. GASIOR:  Correct.  So we will submit our
20 opposition papers and have the discussion with the plaintiff
21 and then --
22        THE COURT:  The opposition papers don't have to be
23 extensive, because I have to make findings of fact and
24 conclusions of law in order to grant the motion, and I have
25 to have a hearing unless I get agreement.

         Sue Ghorayeb,  Official Court Reporter
                                                              16


1         MR. GASIOR:  Okay.  So --
2         THE COURT:  But I want to have a pretrial
3 conference for that, so that those  -  so we are not going at
4 cross purposes all of us and so we are not dealing with
5 things that aren't real.
6         MR. GASIOR:  Okay, Your Honor.  So -- but you are
7 not precluding the defendant from submitting opposition
8 papers?
9         THE COURT:  Oh, of course not.
10        MR. GASIOR:  Okay.
11        THE COURT:  I'm not precluding you from attempting
12 to resolve it.
13        If these other charities have been able to resolve

032808JA.txt

14  their issue, maybe they will give you the same most favored
15  nation treatment, you know.
16              MR. MCGOVERN:  Your Honor, well, without getting
17  into any detail, our client has made every effort to do so
18  and has met with the Department twice since our last
19  appearance.
20              THE COURT:  It's inconceivable to me that the State
21  is going to treat people differently in responding to this.
22              If they are going to do it for one, they are going
23  to do it for anyone who is similarly situated, with a similar
24  facility and similar desires to continue in business, I
25  think.

            Sue Ghorayeb,   Official Court Reporter
                                                                17


1               MR. MCGOVERN:  I believe that's correct.  And we
2   have again tried to -- without getting into the details of
3   those discussions --
4               THE COURT:  Just keep talking, that's all.
5               MR. MCGOVERN:  We intend to and have done so, and
6   we will continue to do so.
7               THE COURT:  Thank you both for your attendance here
8   today.  Do we have a date yet?
9               Yes, April 18th sounds a little short.  How about
10  the following week?
11              MR. MCGOVERN:  April 25th, Your Honor?
12              THE CLERK:  The April 18th date is a little short,
13  because you have to file and oppose.
14              MR. GASIOR:  April 25th?
15              THE CLERK:  Is that okay?
16              MR. GASIOR:  That's good.

032808JA.txt

17  THE COURT: April 25. All right. The matter is
18 continued until April 25.
19  When you come back, I will expect that you will
20 have an office conference.
21  The Court, by the end of that discussion on that
22 date, should be able to know what issues are going to be
23 litigated and the date to do it, and what doesn't have to be
24 litigated.
25  MR. MCGOVERN: And, Your Honor, at that conference

Sue Ghorayeb, Official Court Reporter

18

1 can we also discuss -- to the extent that Mr. Gasior and I
2 cannot resolve that beforehand -- what discovery would be
3 made available to the plaintiffs?
4  THE COURT: Yes, but we are not going to have a lot
5 of far-ranging discovery, because that isn't going to help
6 anybody.
7  MR. MCGOVERN: I am not interested, Your Honor.
8  THE COURT: Of course you can. You can discuss
9 anything that's in the interests of justice as far as I am
10 concerned.
11  Thank you all for your attendance here today. Have
12 a pleasant weekend.
13  MR. MCGOVERN: Thank you, Your Honor.
14  MR. GASIOR: Thank you, Your Honor.
15  (Case adjourned)
16
17
18
19

032808JA.txt

20
21
22
23
24
25

        Sue Ghorayeb, Official Court Reporter