UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOHN E. ANDRUS MEMORIAL, INC. (d/b/a    :
ANDRUS ON HUDSON),                    :

Plaintiff,      :

-against-           :

RICHARD F. DAINES, as Commissioner of the   :
New York State Department of Health,     :

Defendant.   :
-----------------------------------------------------------------x

filed electronically

07-CV-3432 (CLB) (KNF)

**AFFIDAVIT OF JOHN GASIOR
IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION**

**STATE OF NEW YORK   )**
               **: ss.:**
**COUNTY OF NEW YORK )**

       **JOHN GASIOR**, being duly sworn, deposes and says:

    1.     I am an Assistant Attorney General in the Office of Andrew M. Cuomo, Attorney

General of the State of New York, attorney for the defendant in this action.

    2.     I submit this affidavit in opposition to plaintiff's motion for a preliminary

injunction.

    3.     The complaint in this action was filed on or about April 30, 2007. Plaintiff served

defendant on May 30, 2007 with a First Request For Production Of Documents And

Interrogatories. Defendant produced documents responsive to those discovery demands on June

19th and 29th, 2007, and served written responses on July 2, 2008.

    4.     On July 18, 2007, defendant filed a motion for summary judgment. That motion,

after being stayed by this Court to await the resolution of certain state-court proceedings

involving St. Joseph Hospital of Cheektowaga, was denied on March 10, 2008. Annexed hereto

as Exhibit A is a true and accurate copy of the Court's March 10, 2008 Memorandum and Order.

5. Annexed hereto as Exhibit B is a true and accurate copy of a letter dated March 13, 2008, which I sent to the Court regarding the New York State Department of Health's intention to immediately initiate procedures to revoke Andrus' operating license, and take such other measures as were necessary to fulfill the Berger Commission's recommendations. In response to that letter, the Court scheduled a conference for March 28, 2008.

6. Annexed hereto as Exhibit C is a true and accurate copy of the transcript of the court conference which took place on March 28, 2008. At the March 28, 2008 conference, defendant's concern regarding the June 30, 2008 deadline to implement the Berger Commission's recommendations was raised, as well as the issue of a preliminary injunction to enjoin Andrus' closure. See Exhibit C at 4:3-8, 5:9-20.

7. Plaintiff filed the present motion for a preliminary injunction on April 15, 2008. The Court previously had scheduled "pretrial conference" for April 25, 2008 to discuss plaintiff's motion and other matters. Exhibit C at 14:25-18:6, 17:13-24. On April 21, 2008, I contacted plaintiff's counsel to request that the April 25, 2008 conference with the Court be adjourned for personal reasons. In the course of the ensuing discussions regarding my request for an adjournment, I informed plaintiff's counsel that DOH intended to take certain actions prior to June 30, 2008 to preserve the status quo, i.e., defendant's ability to implement the Berger Commission's recommendations should it prevail in this action. Specifically, I informed plaintiff's counsel that DOH was contemplating issuing Andrus a modified operating certificate that would terminate on June 30, 2008, the last day of DOH's statutory authority to implement the Berger Commission's recommendations. A series of letters regarding my request for an adjournment of the April 25, 2008 conference, and DOH's intentions regarding implementation

2

of the Commissions recommendations, were sent by counsel for plaintiff and defendant. Those

letters are attached as follows:

      a.      Annexed hereto as Exhibit D is a true and accurate copy of a letter I sent to

the Court on April 21, 2008.

      b.      Annexed hereto as Exhibit E is a true and accurate copy of a letter

plaintiff's counsel, Brian McGovern sent to the Court on April 22, 2008.

      c.      Annexed hereto as Exhibit F is a true and accurate copy of a letter I sent to

the Court on April 22, 2008, responding to Mr. McGovern's April 22nd letter, Exhibit E hereto.

      d.      Annexed hereto as Exhibit G is a true and accurate copy of a letter

plaintiff's counsel, Brian McGovern, sent to the Court on April 22, 2008, responding to my April

22nd letter, Exhibit F hereto.

      8.      Annexed hereto as Exhibit H is a true and accurate copy of the Court's April 23,

2008 Order to Show Cause For Injunctive Relief With Temporary Restraining Order.

      **WHEREFORE**, I respectfully request that the Court deny defendant's motion for

a preliminary injunction and that the Court grant defendant such other and further relief as the

Court deems just and proper.

/
/
/
/
/
/
/
/
/
/
/

3

Dated: New York, New York
    May 1, 2008

_____

JOHN  GASIOR
Assistant Attorney General

Sworn to before me this
1st day of May, 2008

_____
Notary Public

CARRELL A. GILES
NOTARY PUBLIC STATE OF NEW YORK
NO. 01GI4876134
QUALIFIED IN KINGS COUNTY
TERM EXPIRES APRIL 20, 2011

4

**GASIOR  AFFIDAVIT  - EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JOHN E. ANDRUS MEMORIAL, INC.
(d/b/a ANDRUS ON HUDSON),

                        Plaintiff,

                                                    07 Civ. 3432 (CLB)

            - against -
                                                    *Memorandum and Order*

RICHARD F. DAINES, as Commissioner of
the New York State Department of Health,

                        Defendant.
--------------------------------------------------------x
Brieant, J.

        Plaintiff John E. Andrus Memorial, Inc. ("Andrus"), doing business as Andrus on

Hudson, commenced this action in April 2007 seeking declaratory and injunctive relief from the

attempt of Defendant Richard F. Daines, Commissioner of the New York State Department of

Health, upon the recommendation of the Berger Commission, to require Andrus to either cease

operating as a nursing home or to operate as an assisted living facility.  Defendant filed a motion

for summary judgment on July 13, 2007. (Doc. 12.)  The Andrus filed its opposition on August

13, 2007 and Defendant filed its reply on August 22, 2007.  Oral arguments were held on

September 7, 2007.

        At oral arguments, because similar actions challenging decisions made by the Berger

Commission were pending in the New York State courts, this Court concluded that *Burford*

abstention was appropriate.  (Tr. 18, Sept. 7, 2007.)  All proceedings in the matter were "stayed,

including pretrial discovery, and the operating certificate of the plaintiff [was to] remain in full

force and effect until further order of this Court."  (Tr. 18-19.)  This Court ordered "the *Burford*

abstention [to] extend to a period of ten business days following the date on which the Court of

Appeals decision is rendered in [*St. Joseph Hospital of Cheektowaga v. Novello*]," which was

then being appealed as of right to the Court of Appeals. This Court stated that "[t]he motion [would] remain in abeyance . . . until that time." (Tr. at 19.)

On November 27, 2007, the Court of Appeals dismissed the appeal as of right in *St. Joseph Hospital of Cheektowaga* and on February 12, 2008, the Court of Appeals denied a motion for leave to appeal. Thus, the time is ripe for disposition of this motion for summary judgment in the instant action.

### Facts

The following facts are presumed true for the purposes of this motion only.

The Andrus is a not-for-profit nursing home located in Hastings-on-Hudson. The Andrus operated as a not-for profit home for elderly residents beginning in 1953 and became a licensed residential health care facility, or nursing home, in 1969.

In 1996, the Andrus attempted to change into continuing care retirement community. It sought State and local government approvals for the project, which would serve 400 senior residents in its existing building and add new buildings to its campus. While the applications were pending, the Andrus voluntarily suspended new admissions to its nursing home. Predictably, this resulted in a temporary decline in occupancy and revenues.

All the state regulatory agencies approved the Andrus's plan to become a continuing care retirement community. However, in November 2001, the Village of Hastings-on-Hudson, where the Andrus is located, denied the Andrus's applications for the requisite construction permits to build on its campus. Andrus was thus forced to abandon its plans to change into a continuing care retirement community.

The Andrus decided instead to continue operating as a nursing home, but to scale back on

2

the number of beds it operated by 50, from 247 to 197 beds. In July 2002 the Andrus negotiated

an agreement with Beth Abraham Health Services to transfer 50 certified nursing home beds to

Beth Abraham. The Department of Health was apprised of the transfer agreement and the

Andrus thereafter made a formal request for permanent decertification of 50 nursing home beds.

The Department of Health approved the bed decertification on January 24, 2007 and made the

approval retroactive to July 1, 2006.

The Andrus resumed admission of residents to its nursing home in October 2002. In

2002, following the four-year suspension in admissions, the Andrus had an average of 72

residents. The number of residents thereafter grew to an average of 171 residents in 2005 and

176 residents in 2006, which is an occupancy rate of 89% based on a 197-bed capacity. The

Andrus also achieved an operating surplus in 2005 and 2006.

In April 2005, New York State enacted Section 31 of Part E of Chapter 63 of the Laws of

2005 (the "Enabling Legislation"), which created the New York State Commission on

Healthcare Facilities in the 21st Century, often referred to as the "Berger Commission" after the

commission's chairman, Stephen Berger. The Commission consisted of eighteen statewide

members and regional members from six regions in New York State. The Berger Commission

was to conduct "a rational, independent review of health care capacity and resources in the state

to ensure that the regional and local supply of general hospital and nursing home facilities is best

configured to appropriately respond to community needs." Enabling Legislation § 31(2). The

Enabling Legislation established a regional advisory committee for each region to "develop

recommendations for reconfiguring its region's general hospital and nursing home bed supply to

align bed supply with regional and local needs." Enabling Legislation § 31(7)(d). The

3

Commission's review focused on six main criteria: service to vulnerable populations, availability of services, quality of care, utilization, viability, and economic impact. The Commission was to make a final report to the Governor and Legislature by December 1, 2006, and if the Governor approved the recommendations and the legislature did not reject the recommendations by December 31, 2006, the recommendations would acquire the force of law. Enabling Legislation § 31(9)(b).

Defendant states that the "Andrus was identified as a possible candidate for right-sizing and/or conversion to an assisted living program due to its low occupancy level, recent history of patient care deficits, low care needs of its residents and its financial problems." (Def.'s 56.1 Stmt. ¶ 28.) The Andrus alleges that it was never notified that it had been identified as one of the "facilities of interest," however. (Pl's 56.1 Stmt. ¶ 28.)

The Commission and regional advisory committees conducted nineteen public hearings statewide, including three in the Hudson Valley Region, where the Andrus is located. The Andrus did not participate in any of these public hearings. The Andrus alleges that it did not participate in the hearings it "did not receive notice from either the [regional advisory committee] or the Berger Commission that the Berger Commission was considering the Andrus' nursing home for closure . . . and was not notified that it had to defend itself against closure in public hearings or otherwise." (Pl's 56.1 Stmt. ¶ 25.)

The Hudson Valley regional advisory committee and Berger Commission staff met with the Andrus individually on June 20, 2006. Defendant states that the Commission met with representatives of "facilities of interest to learn each facility's perspective on the factors leading to their being identified as right-sizing candidates." (Def.'s 56.1 Stmt. ¶ 29.) The Andrus

4

maintains that the regional advisory committee told the Andrus that "the purpose of the meeting was to hear the . . . 'good story' about its current situation and future prospects." (Pl.'s 56.1 Stmt. ¶ 29.) At the meeting, the participants discussed the Andrus's history, its transfer of 50 beds to Beth Abraham Hospital, and its finances. (Def.'s 56.1 Stmt. ¶ 30; Pl.'s 56.1 Stmt. ¶ 30.) Following the meeting, on June 23, 2006, Betsy Biddle, the executive director of the Andrus, sent a letter to the chairman of the Hudson Valley regional advisory committee attaching copies of the Andrus's 2005 financial statement and the agreement between the Andrus and Beth Abraham. Defendant states that further opportunity to present the Andrus's views to the Commission or the Hudson Valley regional advisory committee was available, but the Andrus maintains that, as no one notified it that it was being considered for rightsizing, it "did not know that it needed to 'present its views' to the Commission or the Hudson Valley [regional advisory committee]." (Def.'s 56.1 Stmt. ¶ 32; Pl.'s 56.1 Stmt. ¶ 32.)

On November 28, 2006, the Berger Commission issued a Final Report recommending, among other things, that the Andrus eliminate all 247 of the residential health care beds it was licensed to operate and replace them with 140 assisted living program beds. (Def.'s 56.1 Stmt. ¶ 33.) Governor Pataki approved the recommendations and the Legislature did not reject the recommendations. Therefore, as of January 1, 2007, the Commission Report gained the force of law. Accordingly, on January 31, 2007, the Department of Health sent a letter to Andrus which advised it of the Berger Commission's recommendations and included an implementation outline.

The Andrus avers that "[t]he Berger Commission failed to consider accurate and current data about the Andrus' level of occupancy, financial stability, quality of resident care, and

5

resident care needs, and instead relied on outmoded and inaccurate data in recommending
closure of the Andrus' nursing home." (Pl.'s 56.1 Stmt. ¶ 12.) The Andrus further states that, in
its Final Report, "the Berger Commission assumed, contrary to the Andrus' 2005 certified
financial statements, that the Andrus was 'operating at a significant loss' in 2005, and
characterized the Andrus' reported surplus in 2006 as a mere 'claim.'" (Pl.'s 56.1 Stmt. ¶ 41.)
The Andrus also disputes Defendant's claim that it "had among the lowest occupancy rates in
Westchester County." (Def.'s 56.1 Stmt. ¶ 42.)

The Andrus commenced this action on April 30, 2007 seeking declaratory and injunctive
relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202. The Andrus alleged in its complaint
that the Enabling Legislation and the Berger Commission's recommendations violate the
Andrus's rights secured by the Due Process Clause, Takings Clause, and Contracts Clause of the
United States Constitution.

Defendant brought this motion for summary judgment on the grounds that "plaintiff's
constitutional challenges cannot be supported legally and that there are no genuine issues of
material fact." (Def.'s Br. 1.) In opposition to the motion, the Andrus argues that there are
material issues of fact precluding summary judgment on any of its claims.

**Discussion**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating
the record to determine whether there is a genuine issue as to any material fact, "the evidence of
the non-movant is to be believed and all justifiable inferences are to be drawn in his favor."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

Drawing all inference in the Andrus's favor, as it must, this Court concludes that there
are genuine issues of material fact as to whether the Enabling Legislation and the Berger
Commission's procedures and recommendations satisfy the requirements of the Due Process,
Takings, and Contracts Clauses of the United States Constitution.

Defendant's motion for summary judgment is therefore denied. A status conference of
counsel with the Court will be held on Friday, April 18, 2008 at 9:00 A.M.

SO ORDERED.

Dated: White Plains, New York
       March 10, 2008

Charles L. Brieant

Charles L. Brieant, U.S.D.J.

8

**GASIOR  AFFIDAVIT  - EXHIBIT B**



STATE OF NEW YORK

OFFICE OF THE ATTORNEY GENERAL

**ANDREW M. CUOMO**
Attorney General

Writers Direct Dial
212-416-8570

**LESLIE G. LEACH**
Executive Deputy Attorney General
Division of State Counsel

**JUNE DUFFY**
Assistant Attorney General in Charge
Litigation Bureau

March 13, 2008

**VIA FEDEX**

Hon. Charles L. Brieant
United States District Court
300 Quarropas Street
White Plains, NY 10601-4150

Re:    John E. Andrus Memorial, Inc. v. Daines, S.D.N.Y. 3432 CV 2007 (CLB)(KNF)

Dear Judge Brieant:

This office represents the defendant in the above captioned action. Defendant is in receipt of the Court's March 10, 2008 Memorandum and Order ("Memorandum and Order") which denied defendant's motion for summary judgment. Page one of the Memorandum and Order states:

> At oral arguments, because similar actions challenging decisions made by the Berger Commission were pending in the New York State courts, this Court concluded that *Burford* abstention was appropriate. (Tr. 18, Sept. 7, 2007.) All proceedings in the matter were "stayed, including pretrial discovery, and the operating certificate of the plaintiff [was to] remain in full force and effect until further order of the Court." (Tr. 18-19.) This Court ordered "the *Burford* abstention [to] extend to a period of ten business days following the date on which the Court of Appeals decision is rendered in [*St. Joseph Hospital of Cheektowaga v. Novello*] . . . .
>
> On November 27, 2007, the Court of Appeals dismissed the appeal as of right in *St. Joseph Hospital of Cheektowaga* and on February 12, 2008, the Court of Appeals denied a motion for leave to appeal.

Hon. Charles L. Brieant                                    OFFICE OF THE ATTORNEY GENERAL
March 13, 2008
Page 2


Given these statements by the Court, it is defendant's understanding that, while the Court denied
defendant's motion for summary judgment, there presently is no Court order preventing the New
York State Department of Health ("DOH") from implementing the Berger Commission's
recommendation to close Andrus. Significantly, plaintiff has never moved for an order enjoining
implementation of the Berger Commission's recommendations. It is important for DOH to move
quickly on the Berger Commission's recommendations because section nine of the Enabling
Legislation at issue in this litigation -- Implementation of Recommendations -- "shall expire and
be deemed repealed June 30, 2008."

Accordingly, absent an order specifically enjoining defendant from implementing the Berger
Commission's recommendations regarding Andrus, DOH immediately will initiate procedures to
revoke Andrus' operating license, and take such other measures as are necessary to fulfill the
Berger Commission's recommendations.

Respectfully submitted,

John P. Gasior

encl.

cc:  Brian T. McGovern, Esq. via FedEx

**GASIOR  AFFIDAVIT  - EXHIBIT C**

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
JOHN E. ANDRUS MEMORIAL, INC.,

        Plaintiff,

v.           07 CV. 3432 (CLB)

RICHARD F. DAINES, as Commissioner
of the New York State Department
of Health,

        Defendant.
-----------------------------------x
        U.S. Courthouse
        White Plains, N.Y.
        March 28, 2008
        12:15 p.m.


Before:    HON. CHARLES L. BRIEANT,
          United States District Judge


APPEARANCES

CADWALADER WICKERSHAM & TAFT, LLP
BY: BRIAN T. MCGOVERN, Esq.
One World Financial Center
New York, N.Y. 10281
Attorney for Plaintiff

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
Litigation Bureau
120 Broadway
New York, N.Y. 10271-0332
BY: JOHN P. GASIOR, Esq.
Assistant Attorney General

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter

1       THE CLERK:  John E. Andrus Memorial, Inc. v.

2  Richard Daines, as Commissioner of the New York State

3  Department of Health.

4       THE COURT:  Good afternoon.

5       MR. MCGOVERN:  Good afternoon, Your Honor.

6       MR. GASIOR:  Good afternoon, Your Honor.

7       THE COURT:  There is an exchange of correspondence

8  here.  The bottom line of it may be that the Court may not

9  have been quite as clear as it intended or may have not

10  thought it through in retrospect.

11      But it was really my expectation that if you could

12  not get this case litigated in the State Court -- apparently,

13  you can't get anywhere with the New York Court of Appeals --

14  that this Court would have to hear it and try it, and make

15  findings and conclusions, and would want to keep the status

16  quo in effect until we can do that, and I would want to do it

17  as promptly as we can.

18      The only other alternative I would like to suggest

19  to you is, you might want to submit this case to an agreed

20  statement of facts, stipulated agreement of facts, which

21  would allow you to go directly to the Circuit after this

22  Court accepted the stipulated facts.

23        Who is the plaintiff here?

24        MR. MCGOVERN:  Your Honor, Brian McGovern --

25        THE COURT:  Yes.


        Sue Ghorayeb,  Official Court Reporter

3

1    MR. MCGOVERN: -- for John E. Andrus on-the-Hudson.

2    THE COURT: Now, both of you don't care what I

3  think. You want to go to the Second Circuit or preferably to

4  the New York Court of Appeals, and apparently you can't do

5  that.

6    So what do you want to do?

7    MR. MCGOVERN: Well, Your Honor, we are very

8  interested in what you have to say on this subject. We are

9  not interested in prolonging the litigation through the

10  appellate courts.

11    Your Honor, your suggestion I believe on a

12  stipulated set of facts, given the wide divergence of our --

13  of the issues of fact, as documented on the summary judgment

14  record, I don't think would be viable given, given our

15  disagreement over those facts.

16    And we -- but we are prepared -- we also have

17  discovery that has not been completed. Part of the stay in

18  effect was any pretrial discovery and we would like to

19  conduct limited discovery as early as practicable.

20    THE COURT: I don't know that anyone can ever do

21  limited discovery.  It takes on a life of its own.

22      Could I hear what the Attorney General wants to do?

23      MR. GASIOR:  Your Honor, it's -- our understanding

24  from what transpired at the earlier proceedings is that the

25  Court stayed proceedings both as to discovery, litigation

Sue Ghorayeb,  Official Court Reporter

4

1  discovery and as to the limitation of the Berger Commission's

2  recommendations pending your determination.

3        What the Department of Health and the State are

4  most concerned of at this point is that, according to the

5  enabling legislation, the Department of Health's authority to

6  enable or to effectuate the Berger Commission's

7  recommendations expires on June 30th of 2008, that's this

8  year, in about three months.

9        THE COURT:  It certainly would seem to me that

10  there is a reasonable way to obviate that problem and to

11  litigate as efficiently as you can, without being subject to

12  unduly burdensome scheduling.

13        But the Court has no desire, nor do I perceive that

14  the plaintiff has any such desire, as to cut you off from

15  your rights.  So, it seems to me that there is an easy way to

16  resolve that.

17        One way would be the recourse to the agreed

18  statement of facts.  If you have so many differences that you

19  can't do that, then we have to isolate the issues on which

20  you differ, which are factual, and limit our discovery to

21   those issues and have the discovery done immediately as to

22   those issues.

23        It seems to me that that can be resolved.  I don't

24   see that as being an obstacle.

25        MR. GASIOR:  Your Honor, the State has no objection


          Sue Ghorayeb,  Official Court Reporter

5

1  to, I think, the limited amount of discovery that the

2  plaintiff is seeking.

3         What, what the State is most concerned about is

4  that the June 30th date should come and that either the

5  Circuit or the Court is going to say that the Department of

6  Health failed to try and implement the Berger Commission's

7  recommendations and is therefore precluded from implementing

8  them close to June 30th.

9         THE COURT:  Now, as I understand it, you told him

10  you are going to implement it.  And you both recognize that

11  this Court would have to give some preliminary relief,

12  because otherwise the issues would be lost.  They will be

13  mooted out.  It will be closed and done with.  And so --

14         MR. GASIOR:  We understand that the plaintiff might

15  therefore want to move for an injunction, and the Court could

16  issue an order to that effect, and the record then would be

17  clear that --

18         THE COURT:  You want him to do a preliminary

19  injunction?

20         MR. GASIOR:  Correct, Your Honor.

21      THE COURT: All right. What's wrong with that?

22      MR. MCGOVERN: I have no problem with that at all,

23  Your Honor, and we would like two weeks to submit a motion

24  for preliminary injunction. We are prepared to do that. We

25  think we can establish all of the elements.


        Sue Ghorayeb,  Official Court Reporter

6

1        THE COURT: Well, when you do that, you have a

2   problem that the preliminary injunction, unlike the State

3   system, can't be issued in this court without findings of

4   fact and conclusions of law. So, you are going to have to,

5   at the very least, accompany it with proposed findings. And

6   either the Attorney General will stipulate with you that

7   those findings are binding only for this motion for

8   preliminary injunction or he will tell you which ones he

9   can't stand for, and I have to come in and take testimony.

10       Do you disagree with that?

11       MR. GASIOR: Well, Your Honor, we have in place

12   now -- and this is just thinking off the top of my head --

13   you have decided a motion for summary judgment. So I think a

14   lot of the plaintiff's work is probably done, but that's just

15   speculation on my part.

16       MR. MCGOVERN: Well, obviously, the submission made

17   on the summary judgment motion concerned their request for a

18   affirmative relief.

19       We need to develop -- obviously, we would need to

20   develop a record that responds to the elements of preliminary

21  injunction as set forth by the Second Circuit.

22       THE COURT:  Is it feasible to consent to an order

23  preserving the status quo with the express understanding that

24  the Andrus Memorial, Inc. will not contend now or later that

25  the State failed to use its utmost powers to close out the


        Sue Ghorayeb,  Official Court Reporter

7

1  institution before June 30th?

2      Would you give some thought to that?

3      I don't ask you to answer that immediately, but

4  maybe you can do it that way.

5      MR. MCGOVERN:  I think Mr. Gasior will be able to

6  tell you.

7      MR. GASIOR:  Well, certainly, I could take that to

8  my client, Your Honor, but I think --

9      THE COURT:  I don't want to see you counted out.  I

10  also don't want to see you or the Court having to do

11  unnecessary work or having to do a rush job on something.

12      MR. GASIOR:  Understood, Your Honor.  But I think

13  that my client would be most comfortable with an order from

14  the Court that would be very clear that, on the record, that

15  there had not been any waiver or any problem at all.

16      THE COURT:  And that's what I want to give you.

17      MR. GASIOR:  And I think probably that the clearest

18  tried and true method for doing that would be for the

19  plaintiff to go ahead and make their motion for preliminary

20  injunction and for the Court to grant that motion or deny it,

21  but one way or the other.

22      THE COURT: But the Court can't grant it without

23  making findings of fact and conclusions of law, because that

24  would be an appealable order.

25      MR. GASIOR: I understand, Your Honor.


        Sue Ghorayeb,  Official Court Reporter

8

1      THE COURT: And the Circuit would take one look at

2  it and they would say "where is the findings?" That's a

3  problem with that.

4      MR. GASIOR: Well, one of the suggestions --

5      THE COURT: He has to do it that way, if you are

6  going to insist on it.

7      MR. GASIOR: I have to insist on that, Your Honor.

8      THE COURT: I'm sorry.

9      MR. GASIOR: I do have to insist on that.

10      THE COURT: Well, all right. How soon can you do

11  it?

12      MR. MCGOVERN: Well, we would endeavor to get our

13  motions papers in in two weeks from today.

14      THE COURT: All right. And what are you going to

15  do about the Court's requirement to issue findings of fact

16  and conclusions of law?

17      Are you going to tell me what -- is the State going

18  to tell me what you are contesting for purposes of this

19  motion only and what you are not contesting?

20      Or do I just have to schedule it for a plenary

21  hearing, with no discovery?

22        What do you want, what do you want me to do?

23        MR. GASIOR:  Well, I guess I would like to see what

24  plaintiff puts into the motion and we would decide at that

25  point.

        Sue Ghorayeb,  Official Court Reporter

9

1       THE COURT:  What are you going to put in the

2  motion, due process?  What?

3       MR. MCGOVERN:  Yes, due process.  Much, much of the

4  evidence that we presented in opposition to the summary

5  judgment motion.

6       On those, on those allegations, we had divergent

7  positions with respect to the facts, and I think there are

8  some facts we could stipulate to, but I do believe that there

9  are differences.

10      THE COURT:  Then you are going to have to set up an

11  evidentiary hearing with me and you are going to have to

12  bring witnesses.

13      MR. MCGOVERN:  Your Honor, I --

14      THE COURT:  And some of them may be on the other

15  side.

16      MR. MCGOVERN:  I understand that.  I understand

17  that possibility.

18      I don't know if we can determine right now which

19  witnesses, what facts would require an inquiry.

20      I think we can certainly in our summary judgment --

21  excuse me, in our preliminary injunction papers identify what

22  we believe to be the uncontested facts and to identify what

23  we believe to be the disputed facts and --

24        THE COURT:  Could I ask you to do this.

25        Could I ask you to draft your motion papers, have

            Sue Ghorayeb,  Official Court Reporter

10

1  an office conference with the Attorney General and try to

2  ascertain in that office conference what facts in there

3  really require a hearing?

4       Would both of you agree to do that?

5       MR. GASIOR:  Yes, Your Honor.

6       THE COURT:  And then maybe you would come in and

7  have a prehearing conference with me, after you have met, and

8  we will decide what has to be done and what witnesses will be

9  called and when they will be heard, and it might be you have

10  to depose one or two people.

11       Would you like to do that?

12       MR. MCGOVERN:  Yes.  Yes, Your Honor.

13       I believe that it will be necessary to conduct

14  limited depositions.

15       THE COURT:  Limited.

16       MR. MCGOVERN:  Yes.

17       THE COURT:  Very limited.

18       MR. GASIOR:  Understood, Your Honor.

19       I mean, just again throwing out an idea.  One of

20  the ideas I proposed to or proposed to Mr. McGovern was the

21  idea under Rule 65 of consolidating the trial and the motion

22  for preliminary injunction.

23      Mr. McGovern made the point the plaintiffs would

24  like to take discovery before that happened, before we had a

25  trial. I don't know if it will be acceptable to do the

Sue Ghorayeb, Official Court Reporter

11

1  discovery that plaintiff is looking for.

2      THE COURT: Is it unfair to say, is it unfair to

3  say he has got a better chance of winning on a preliminary

4  injunction than he is winning on the merits at the end of the

5  day?

6      MR. GASIOR: I don't know if I thought about that,

7  Your Honor. I don't know.

8      THE COURT: Well, because the irreparable damage is

9  real. These patients are not going to be there anymore. The

10  doors are going to be closed. It has to be diverted to

11  another use, correct?

12      MR. GASIOR: Correct.

13      MR. MCGOVERN: Yes, Your Honor, that is the

14  eventuality of any closure.

15      It simply would be a --

16      THE COURT: It seems to me -- and I don't mean to

17  tell you what to do, but it seems to me that your chances of

18  prevailing here, and on appeal, on a preliminary injunction

19  are far better than your chances of prevailing on the merits.

20      MR. MCGOVERN: I think you are correct, Your Honor.

21          THE COURT: Because you have this irreparable

22   damage, which is supposed to be so significant when public

23   interests are involved in this Circuit.

24          But there is considerable possibility that the

25   Circuit might say, "well, we don't see any federal question

          Sue Ghorayeb,  Official Court Reporter

12

1  here. The State is entitled to deal with the healthcare

2  problems that it has in innovative ways, and while this one

3  is pretty innovative, we will let you do it." Let the Second

4  Circuit tell you that.

5       MR. MCGOVERN: Your Honor, I understand that may be

6  an outcome on any appeal.

7       THE COURT: Are there other hospitals still in your

8  position as to this issue?

9       MR. MCGOVERN: There are, there are some facilities

10  and one hospital in particular I am aware that is still --

11      THE COURT: I meant to say facility.

12      MR. MCGOVERN: Yes. That would include -- yes,

13  there are hospitals that are still challenging the Berger

14  Commission mandate.

15      Some of those have reached settlements with the

16  Department of Health, which allowed them to continue

17  operating notwithstanding the Berger Commission

18  recommendation.

19      THE COURT: Continue forever?

20      MR. MCGOVERN: Continue in a different, in a

21  different format.

22      THE COURT:  Yes.

23      MR. MCGOVERN:  But, effectively, the institution --

24  the institutions are continuing to operate, notwithstanding

25  the Berger Commission recommendation.


        Sue Ghorayeb,  Official Court Reporter

13

1    So, there were more litigants in September of 2007,

2   when we were last here, Your Honor.

3    THE COURT:  Yes.

4    MR. MCGOVERN:  A number of those have now resolved

5   their issues with the Department of Health, that have allowed

6   them to continue operating, albeit in a modified form, but

7   they are still operating, notwithstanding the Berger

8   Commission recommendation.

9    There are, there are others that are still fighting

10  the, the Berger Commission mandate.

11    And just, Your Honor, on the question of fairness,

12  I do want to note that we -- this -- the stay in the case was

13  granted on consent of the parties, so that the Court could

14  hear how the Court of Appeals and Chief **Dewaga may decide

15  the issues.

16    And that stay was continued again in December of

17  this past year to allow the Court of Appeals to weigh in on

18  this issue.

19    THE COURT:  I am surprised they didn't.

20    MR. MCGOVERN:  Well, Your Honor, if I -- I may be

21  able to help explain why they haven't.  In both instances,

22  the Attorney General's Office opposed the Court of Appeals

23  reaching the merits in those cases.

24      In the first instance, the Attorney General argued

25  that there was no appeal as of right.  And then, when the --


Sue Ghorayeb,  Official Court Reporter

14

1 when the hospital moved for leave to appeal, they argued that

2 the appeal doesn't raise any issues of statewide importance,

3 because there is only a handful of litigants out there who

4 are still fighting the --

5    THE COURT: But they have a duty, don't they, to

6 uphold the Commission?

7    MR. MCGOVERN: Well --

8    THE COURT: They have a duty even to uphold the

9 legislature; isn't that right?

10    MR. GASIOR: Yes, Your Honor.

11    MR. MCGOVERN: I don't dispute that.

12    THE COURT: Yes.

13    MR. MCGOVERN: But on the other -- but I do -- I do

14 feel that they only are here in March not because of inaction

15 on the plaintiff's part, but because of the -- essentially,

16 the opposition from the State to let the Court of Appeals

17 decide the issue.

18    THE COURT: They had a duty to do what they did.

19    MR. GASIOR: Well, ultimately, it's the Court of

20 Appeals's decision -- determination to decide what they were

21  going to decide, and they decided that there were no

22  significant constitutional issues, and that was the Court of

23  Appeals' decision, not the Attorney General's.

24          THE COURT: I guess that's true.

25          Can we have a pretrial conference date after you

            Sue Ghorayeb, Official Court Reporter

15

1  will have filed your motion, your renewed motion, and after

2  you will have had your office conference with the Attorney

3  General --

4         MR. MCGOVERN: Yes.

5         THE COURT: -- as to what the coverage or scope of

6  the hearing on the motion ought to be?

7         MR. MCGOVERN: Yes, Your Honor.

8         THE CLERK: April 18th, 11:00 a.m..

9         MR. MCGOVERN: Yes, Your Honor.

10        THE COURT: Is that okay?

11        MR. MCGOVERN: That's fine, Your Honor.

12        THE COURT: Okay for you?

13        MR. GASIOR: Just so I understand, the plaintiff

14  will file their motion.

15        THE COURT: He is going to do it in two weeks.

16        MR. GASIOR: In two weeks. And we will be able to

17  submit opposition papers?

18        THE COURT: You will be able to submit opposition

19  papers any time prior to the 18th.

20        However, I have asked, and I thought you said you

21  would, for you to agree to have an office conference and

22  discuss what the scope of the hearing would be --

23        MR. GASIOR:  Yes, Your Honor.

24        THE COURT:  -- in advance of coming to see me.

25        MR. GASIOR:  Correct.  So we will submit our


        Sue Ghorayeb,  Official Court Reporter

16

1  opposition papers and have the discussion with the plaintiff

2  and then --

3      THE COURT:  The opposition papers don't have to be

4  extensive, because I have to make findings of fact and

5  conclusions of law in order to grant the motion, and I have

6  to have a hearing unless I get agreement.

7      MR. GASIOR:  Okay.  So --

8      THE COURT:  But I want to have a pretrial

9  conference for that, so that those  -  so we are not going at

10  cross purposes all of us and so we are not dealing with

11  things that aren't real.

12      MR. GASIOR:  Okay, Your Honor.  So -- but you are

13  not precluding the defendant from submitting opposition

14  papers?

15      THE COURT:  Oh, of course not.

16      MR. GASIOR:  Okay.

17      THE COURT:  I'm not precluding you from attempting

18  to resolve it.

19      If these other charities have been able to resolve

20  their issue, maybe they will give you the same most favored

21  nation treatment, you know.

22      MR. MCGOVERN:  Your Honor, well, without getting

23  into any detail, our client has made every effort to do so

24  and has met with the Department twice since our last

25  appearance.

Sue Ghorayeb,  Official Court Reporter

17

1       THE COURT: It's inconceivable to me that the State

2  is going to treat people differently in responding to this.

3       If they are going to do it for one, they are going

4  to do it for anyone who is similarly situated, with a similar

5  facility and similar desires to continue in business, I

6  think.

7       MR. MCGOVERN: I believe that's correct. And we

8  have again tried to -- without getting into the details of

9  those discussions --

10      THE COURT: Just keep talking, that's all.

11      MR. MCGOVERN: We intend to and have done so, and

12  we will continue to do so.

13      THE COURT: Thank you both for your attendance here

14  today. Do we have a date yet?

15      Yes, April 18th sounds a little short. How about

16  the following week?

17      MR. MCGOVERN: April 25th, Your Honor?

18      THE CLERK: The April 18th date is a little short,

19  because you have to file and oppose.

20      MR. GASIOR: April 25th?

21        THE CLERK:  Is that okay?

22        MR. GASIOR:  That's good.

23        THE COURT:  April 25.  All right.  The matter is

24   continued until April 25.

25        When you come back, I will expect that you will


          Sue Ghorayeb,  Official Court Reporter

18

1  have an office conference.

2      The Court, by the end of that discussion on that

3  date, should be able to know what issues are going to be

4  litigated and the date to do it, and what doesn't have to be

5  litigated.

6      MR. MCGOVERN: And, Your Honor, at that conference

7  can we also discuss -- to the extent that Mr. Gasior and I

8  cannot resolve that beforehand -- what discovery would be

9  made available to the plaintiffs?

10      THE COURT: Yes. But we are not going to have a

11  lot of far-ranging discovery, because that isn't going to

12  help anybody.

13      MR. MCGOVERN: I am not interested, Your Honor.

14      THE COURT: Of course you can. You can discuss

15  anything that's in the interests of justice as far as I am

16  concerned.

17      Thank you all for your attendance here today. Have

18  a pleasant weekend.

19      MR. MCGOVERN: Thank you, Your Honor.

20      MR. GASIOR: Thank you, Your Honor.

21        (Case adjourned)

22

23

24

25


          Sue Ghorayeb,  Official Court Reporter

**GASIOR  AFFIDAVIT  - EXHIBIT D**



## STATE OF NEW YORK
## OFFICE OF THE ATTORNEY GENERAL

ANDREW M. CUOMO
Attorney General

LESLIE G. LEACH
Executive Deputy Attorney General
Division of State Counsel

Writers Direct Dial
212-416-8570

JUNE DUFFY
Assistant Attorney General in Charge
Litigation Bureau

April 21, 2008

**VIA FACSIMILE TO 914-390-4085**

Hon. Charles L. Brieant
United States District Court
300 Quarropas Street
White Plains, NY 10601-4150

Re:    John E. Andrus Memorial, Inc. v. Daines, S.D.N.Y. 3432 CV 2007 (CLB)(KNF)

Dear Judge Brieant:

This office represents the defendant in the above captioned action. On March 28, 2008, the
Court granted plaintiff's request to file a motion for a preliminary injunction. The Court further
ordered a conference for April 25, 2008 at 11 a.m. to consider issues related to plaintiff's motion,
with defendant's opposition to the motion to be served before that conference. This letter is sent
to request a one week adjournment, to May 2, 2008, of the April 25th conference. Defendants
still are prepared to file their opposition on or before March 25th. However, subsequent to the
March 28th court conference, the physical condition of my parents, both in the 90's, has
significantly deteriorated. Their doctors have recommended that they be moved, as soon as
possible, to an Extended Congregate Care facility. That move is scheduled for April 28th and I
am flying down to Florida on April 25th to assist in the move. Within the Attorney General's
office, I am the attorney with the greatest knowledge of proceedings in this action, which also is
why I am requesting the adjournment. Plaintiff's counsel has not consented to this adjournment.

Respectfully submitted,

John P. Gasior

cc: Brian T. McGovern, Esq. via Facsimile to 212-504-6666

120 Broadway, New York, N.Y. 10271-0332 ● Phone (212) 416-8610 ● Fax (212) 416-6075 · Not For Service of Papers
http://www.oag.state.ny.us

**GASIOR  AFFIDAVIT  - EXHIBIT E**

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

April 22, 2008

**VIA FACSIMILE AND FEDERAL EXPRESS**

Honorable Charles L. Brieant
United States District Judge
United States District Court for the
  Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

Re:  John E. Andrus Memorial, Inc. (d/b/a Andrus on Hudson) v. Daines
     07-CV-3432 (CLB) (KNF)

Dear Judge Brieant:

As Your Honor is aware, we represent the plaintiff John E. Andrus Memorial, Inc. (d/b/a Andrus on Hudson) in the above-referenced action. I am constrained to correct a misstatement in Mr. Gasior's letter to Your Honor dated April 21, 2008. It is simply untrue that plaintiff would not consent to defendant's requested one-week adjournment of the Court conference currently scheduled for April 25, 2008.

At the outset, our client and we fully appreciate and respect Mr. Gasior's need to assist his parents in what I am sure is a difficult task of relocating them to another health care facility. I told Mr. Gasior that the Andrus would have no objection to adjourning the conference for as long as Mr. Gasior needed, so long as in the interim the status quo in the action would continue. In response, Mr. Gasior alluded to a letter that the Department of Health was intending to send to the Andrus sometime in the very near future. Unfortunately, the contents of this letter have not been shared with me or (to my knowledge) even Mr. Gasior, despite repeated requests. I am led to believe, however, that the threatened letter concerns the revocation or termination of the Andrus' operating certificate as of June 30, 2008 – directly relating to the very relief sought in this action and preliminarily on this motion. The defendant has refused to consent to refraining from issuing the letter for another week, until we appear before Your Honor on May 2, 2008.

We are obviously deeply troubled to have learned of defendant's threatened course of action, particularly in light of Your Honor's intention, expressed clearly on March 28, 2008, to "keep the status quo in effect until we can do that [*i.e.* make findings of fact and conclusions of law]". March 28, 2008 Transcript at page 4. Moreover, we offered to make our motion for a

Brian T. McGovern  Tel 212 504 6117  Fax 212 504 6666  brian.mcgovern@cwt.com

# CADWALADER

Honorable Charles L. Brieant
April 22, 2008

preliminary injunction and prepare the requisite proposed findings of fact on only a two-week turnaround so that the Court could make a ruling on preliminary injunctive relief, supplemented by an evidentiary hearing and supported by appropriate factual findings, as early as practicable, with the understanding that the status quo would remain in effect during the accelerated briefing and hearing schedule. Having delivered on our pledge, it is defendant that is now threatening action that would contravene the spirit if not the letter of the Court's instructions given just over two weeks ago.

For the record, we reiterate that the Andrus does in fact consent to the requested one-week adjournment of the Court conference so long as the defendant does not send the threatened letter or take any other action relating in any way to the closure of the Andrus before we next meet with Your Honor.

Respectfully,

Brian T. McGovern

Brian T. McGovern

BTM

cc:    John Peter Gasior, Esq. (via Facsimile and Federal Express)

**GASIOR  AFFIDAVIT  - EXHIBIT F**

Case 7:07-cv-03432-CS-MDF   Document 36-3   Filed 05/01/2008   Page 59 of 67
P.02/03
APR-22-2008 Case 7:07-cv-03432-CLB   Document 31   Filed 04/22/2008   Page 1 of 2



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ANDREW M. CUOMO
Attorney General

LESLIE G. LEACH
Executive Deputy Attorney General
Division of State Counsel

Writers Direct Dial
212-416-8570

JUNE DUFFY
Assistant Attorney General in Charge
Litigation Bureau

April 22, 2008

**VIA FACSIMILE TO 914-390-4085**

Hon. Charles L. Brieant
United States District Court
300 Quarropas Street
White Plains, NY 10601-4150

Re:   John E. Andrus Memorial, Inc. v. Daines, S.D.N.Y. 07-CV-3432 (CLB) (KNF)

Dear Judge Brieant:

This office represents the defendant in the above captioned action. This letter responds to the
letter sent to you earlier today by plaintiff's counsel, Brian McGovern. When I sought Mr.
McGovern's consent yesterday to adjourn the April 25th hearing, it was based solely on my own
personal situation, i.e., the need to attend to my parents in Florida. As a condition for the
adjournment, however, plaintiff demanded that the New York State Department of Health
("DOH") refrain from issuing Andrus an amended operating certificate, which would terminate
on June 30, 2008. June 30th was chosen as the date for the amended certificate to terminate
because that also is the termination date of DOH's authority under the Enabling Legislation to
effectuate the Berger Commission's recommendations. As requested by Mr. McGovern, I asked
whether DOH would refrain from issuing the amended certificate and was told that it would not,
because issuance of the amended certificate will not change the status quo in this litigation.

First, DOH has informed me, and I informed Mr. McGovern, that issuance of the amended
certificate will have no consequence whatsoever to Andrus' day-to-day operation prior to June
30, 2008. No one, outside of Andrus and DOH, needs to know that an amended certificate has
been issued. Nothing would require the disclosure of the amended certificate to residents,
physicians, vendors or the community, pending resolution of plaintiff's motion for a preliminary
injunction or, if the injunction is granted, the conclusion of this litigation. Second, plaintiff itself
asserts that it has been thriving during the period since the Commission's closure

120 Broadway, New York, N.Y. 10271-0332 ● Phone (212) 416-8610 ● Fax (212) 416-6075 ● Not For Service of Papers
http://www.oag.state.ny.us

Case 7:07-cv-03432-CS-MDF   Document 36-3   Filed 05/01/2008   Page 60 of 67
P.03/03
APR-22-2008  13:14 Case 7:07-cv-03432-CLB   Document 31   Filed 04/22/2008   Page 2 of 2

OFFICE OF THE ATTORNEY GENERAL

Hon. Charles L. Brieant
April 22, 2008
Page 2

recommendation was publicly announced in November 2006. It is thus difficult to understand
how issuance of the amended certificate, of which the public is not aware, would alter the status
quo, especially since the Court, presumably, will have decided plaintiff's motion well before
June 30, 2008. Third, should the Court issue a preliminary injunction, DOH is fully prepared to
do everything necessary to keep Andrus operating in its present form, including issuance of an
amended operating certificate operative for the duration of this litigation, including appeals.
Thus, DOH's issuance of the letter and amended operating certificate will have no effect on the
status quo in this litigation.

I also note that, in an effort to expedite the Court's consideration of plaintiff's motion, I informed
plaintiff's counsel that DOH is prepared to concede, for purposes of plaintiff's current motion
only, that Andrus would suffer irreparable harm if the amended certificate expired on June 30th
and it was forced to close its doors. Defendant believes that this concession would largely
obviate the need for a hearing on factual issues related to plaintiff's motion for a preliminary
injunction and assure that the motion is decided well in advance of June 30th. If plaintiff is
determined to introduce more extensive evidence to support a finding of irreparable harm, then
defendant will want to present evidence negating such a finding.

In conclusion, the request for an adjournment of the April 25th conference was based solely on
my own circumstances. I requested an adjournment only to May 2, 2008, even though a longer
adjournment, preferably at least to May 7th, would have allowed me to be better prepared for the
conference. It is my understanding that the actions DOH intends to take will not disturb the
status quo.

Accordingly, I request that the Court adjourn the April 25th conference to May 7, 2008.

Respectfully submitted,

John P. Gasior

cc: Brian T. McGovern, Esq. via Facsimile to 212-504-6666

**GASIOR  AFFIDAVIT  - EXHIBIT G**

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York  London  Charlotte  Washington  Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

April 22, 2008

**VIA FACSIMILE AND FEDERAL EXPRESS**

Honorable Charles L. Brieant
United States District Judge
United States District Court for the
    Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

Re:    John E. Andrus Memorial, Inc. (d/b/a Andrus on Hudson) v. Daines
         07-CV-3432 (CLB) (KNF)

Dear Judge Brieant:

I just received Mr. Gasior's letter of today's date, referring no longer to a "letter" from the Department of Health to our client, John E. Andrus Memorial, Inc. (the "Andrus"), but to an "amended operating certificate, which would terminate on June 30, 2008". Terminating the Andrus' operating certificate on June 30, 2008 is, of course, precisely what the Berger Commission mandated in its Final Report, and precisely what the Andrus has sought to enjoin in this action. Mr. Gasior concedes as much, stating that the Department of Health specifically chose June 30th as "the date for the amended certificate to terminate because that is also the termination date of DOH's authority under the Enabling Legislation to effectuate the Berger Commission's recommendations." While Mr. Gasior had assured counsel that issuing the missive would not change the status quo, it is hard to conceive of an act that would more definitively move the Andrus toward the June 30, 2008 closure mandated by the Berger Commission than the termination of its operating certificate on that date. After all, the current operating certificate of the Andrus does not have any expiration date.

With an Andrus' "amended" operating certificate due to expire in a little over two months, it is at best disingenuous for defendant to maintain that issuing this document "will have no consequence whatsoever to Andrus' day-to-day operation prior to June 30, 2008", or that "the Andrus would not be required to disclose the amended certificate to residents, physicians, vendors or the community." Nothing could be further from the truth: termination of the Andrus' operating certificate on June 30, 2008 means that the Andrus would be compelled to shutter the nursing home and transfer all of its 196 residents by that date. A license to operate a nursing facility expiring on a date certain means that no Medicaid, Medicare or insurance company payments could properly be made for services after that date.

Brian T. McGovern  Tel 212 504 6117  Fax 212 504 6666  brian.mcgovern@cwt.com

# CADWALADER

Honorable Charles L. Brieant
April 22, 2008

Mr. Gasior suggests that if the Court were to grant a preliminary injunction (which defendant intends to oppose), the Department would not enforce the terms of the amended operating certificate. However, issuing the amended operating certificate with a termination date of June 30, 2008 itself represents the most substantial step that the Department of Health could take toward implementing the Berger Commission closure mandate. With an operating certificate establishing June 30, 2008 as the cut-off date – extended further only at the mercy of the same agency that is now seeking to shut it down – the Andrus would bear the burden – financial, regulatory, and logistical – of planning for the transfer of all of its 196 elderly residents to other nursing homes notwithstanding the issuance of a preliminary injunction. Furthermore, the Andrus would be duty-bound to disclose to prospective residents as well as health care providers that refer patients to the Andrus for long term care that the Andrus could not assure residents that they could remain in the nursing home beyond June 30, 2008. In short, the issuance of the amended operating certificate would have calamitous effects on the Andrus' continued viability – falling occupancy, reputation as a "lame-duck" provider – that would make closure of the Andrus – now a thriving not-for-profit nursing facility – a self-fulfilling prophecy.

What is more, even if the preliminary injunction were to continue through June 30, 2008 or beyond, the Andrus would be at risk of regulatory non-compliance if come July 1, 2008 it continued operating as a nursing home. Besides the Department of Health, the federal Centers for Medicare and Medicaid Services ("CMS") has regulatory oversight over nursing homes in New York. CMS could sanction the Andrus for operating without a valid operating certificate at any point from July 1, 2008 onward. That is, while the preliminary injunction may bar the Department of Health from taking action, it would not stop CMS from taking regulatory action against the Andrus. Nor would it relieve the Andrus of the collateral consequences, alluded to earlier, of operating under a certificate that will expire on June 30, 2008 – just as the Berger Commission had decreed.

Mr. Gasior states that he sought a one-week adjournment "based solely on my own personal situation."[1] The Court should know that I have never questioned Mr. Gasior's motives. Unfortunately, Mr. Gasior's client appears to view the adjournment as a window of opportunity to implement the Berger Commission closure mandate, notwithstanding this Court's stated intention to maintain the status quo and the pending motion for preliminary injunction seeking to enjoin that very kind of action. Such brinkmanship should not be

---

[1] Evidently, because the Andrus would not acquiesce to the "letter" cum "amended operating certificate" with a two-month lease on its operations, Mr. Gasior is requesting another five days until May 7, 2008 to give him more time to prepare for the Court conference.

Page 2

# C A D W A L A D E R

Honorable Charles L. Brieant
April 22, 2008

countenanced when the fate of 196 frail seniors and a half-century old charitable organization
hangs in the balance. It is imperative that the defendant refrain from issuing an amended
operating certificate at this juncture lest the defendant subvert through accelerated self-help the
preliminary injunctive relief that the Andrus in its motion papers has established it is entitled to
obtain. In light of defendant's threatened action, we will appear at the White Plains
Courthouse tomorrow morning to seek a temporary restraining order.

Respectfully,

*Brian T. M'Gom*

Brian T. McGovern

BTM

cc:    John Peter Gasior, Esq. (via Facsimile and Federal Express)

**Page 3**

**GASIOR  AFFIDAVIT  - EXHIBIT H**

Case 7:07-cv-03432-CLB    Document 36    Filed 04/23/2008    Page 1 of 2

*Brieant, J.    RR*

# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                                              :
JOHN E. ANDRUS MEMORIAL, INC. (d/b/a ANDRUS       :    2007 Civ. 3432 (CLB)(MDF)
ON HUDSON),                                                    :
                                                              :
                                    Plaintiff,                :
                                                              :    **ORDER TO SHOW**
                        -against-                             :    **CAUSE FOR INJUNCTIVE**
                                                              :    **RELIEF WITH**
RICHARD F. DAINES, as Commissioner of the New York  :    **TEMPORARY**
State Department of Health,                                   :    **RESTRAINING ORDER**
                                                              :
                                    Defendant.                :
                                                              :
                                                              :
-------------------------------------------------------------------- x

Upon the annexed affirmation of Brian T. McGovern, dated on April 23, 2008,

together with the exhibits annexed thereto, and upon all prior papers filed and proceedings had

herein, and good cause appearing therefor, it is

ORDERED, that defendant Richard F. Daines, as Commissioner of the New York

State Department of Health, or his attorneys, show cause before the Honorable Charles L.

Brieant, United States District Judge for the Southern District of New York, at the United States

Courthouse, located at 300 Quarropas Street, White Plains, New York, on May 7 *th*, 2008 at

_9_ :*30* A.M., why an Order should not issue pursuant to Rule 65 of the Federal Rules of Civil

Procedure, enjoining defendant and his agents preliminarily: (i) from taking any further steps to

implement the recommendation made by the Commission on Health Care Facilities in the 21st

Century to close John E. Andrus Memorial, Inc.'s nursing facility; and (ii) from otherwise

seeking to revoke or modify the Andrus' operating certificate pending the final determination of

this matter; and it is further

ORDERED that, security in the sum of *waived*
~~shall be deposited by plaintiff on or before~~ _____.

ORDERED that, pending the hearing and determination of plaintiff's application for preliminary injunctive relief, defendant and its agents be, and hereby are, enjoined from (a), taking any further steps to implement the recommendation made by the Commission on Health Care Facilities in the 21st Century to close John E. Andrus Memorial, Inc.'s nursing facility; (b) issuing an amended operating certificate to the Andrus; and (c) otherwise seeking to revoke or modify the Andrus' operating certificate; and it is further

ORDERED that personal service of this Order to Show Cause for Injunctive Relief with Temporary Restraining Order, together with the papers upon which it is made, on the New York State Office of the Attorney General, 120 Broadway, New York, New York, attorneys for defendant Daines, on or before 5: P.M. on April 23, 2008, shall be deemed good and sufficient service; and that papers in opposition, if any, shall be delivered so as to be received by the attorneys for plaintiff on or before 5: P.M. on April 1, 2008.

ENTER. So Ordered.

Charles C Brieant

CHARLES L. BRIEANT, U. S. D. J.

Dated: White Plains, New York
April 23, 2008
Signed at 10:30 AM
See transcript

-2-