UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                        :    Index No. 2007 Civ. 3432

JOHN E. ANDRUS MEMORIAL, INC.      :    (CLB) (MDF)
(d/b/a ANDRUS ON HUDSON),        :

                                          :

                         Plaintiff,     :

              -against-                 :

                                          :

RICHARD F. DAINES, as Commissioner of the  :
New York State Department of Health,     :

                                          :

                          Defendant.    :

                                          :
-----------------------------------------------------------------------X

**MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S
OBJECTIONS TO REPORT AND RECOMMENDATION
AND REQUEST FOR EMERGENCY RELIEF**

CADWALADER, WICKERSHAM & TAFT
One World Financial Center
New York, New York  10281

Attorneys for Plaintiff

**PRELIMINARY STATEMENT**

Plaintiff John E. Andrus Memorial, Inc. ("the Andrus"), a not-for-profit nursing home located in Hastings-on-Hudson, New York, submits this memorandum of law in opposition to defendant's unsigned Order to Show Cause for Modification of Temporary Restraining Order and request for other "emergency relief"; and in response to his objections to the Report and Recommendation of the Hon. Mark D. Fox dated June 25, 2008 (the "Report and Recommendation). The relevant facts are placed before the Court in the affirmation of Brian McGovern dated June 30, 2008.

Contrary to defendant's moving affidavit (¶ 3), the current application to narrow the scope of the Temporary Restraining Order issued by Judge Brieant on April 23, 2008 (the "TRO") – which would permit the Department of Health to issue an amended operating certificate to the Andrus – represents defendant's <u>third</u> request to this Court for essentially the same relief. At bottom, the application seeks reargument of the scope of injunctive relief argued and decided by Judge Brieant on April 23, 2008, 65 days ago. Based on the June 27th application filed by defendant, as such, the application is plainly untimely under Local Rule 6.3, requiring any motion for reconsideration or reargument to be made within ten days of the TRO, or by May 7, 2008 (excluding Saturdays and Sundays pursuant to Fed. R. Civ. P. 6(a)).

Nor has there been any change in circumstances, as to either the material facts or controlling law, to justify such an out-of-time modification of the TRO. Instead, this latest application represents a second blatant attempt at an "end run" around Judge Brieant's TRO issued over two months ago. Defendant cites no authority, and there is none, for such a collateral attack on Judge Brieant's ruling through an application to a different judge of this Court. Defendant seeks nothing more than to get what now is a <u>third</u> ruling from a <u>third</u> judge, for no other reason than that the two prior applications before Judge Brieant and Magistrate Fox were

unsuccessful, and defendant's time to appeal the TRO to the United States Court of Appeals has long expired.

Further, even assuming that the application were timely and valid grounds existed for revisiting Judge Brieant's TRO, it would be inequitable to afford the relief requested by the defendant at this late date. The preliminary injunction hearing, held last week on June 25th and June 26th and now concluded, was delayed at defendant's instance – he did not make any of three witnesses available for deposition (as agreed, to be deposed before the preliminary injunction hearing) until, at the earliest, June 3, 2008. The defendant was well aware of both any supposed defect in the TRO and of the date of the preliminary injunction hearing, for well over a month, but took no action to secure the rights he now claims are in jeopardy until learning that Judge Brieant was unavailable due to illness.

Finally, the sole "precedent" cited by the defendant for issuing an amended operating certificate provides no legal authority or factual basis for allowing that relief in this action. In re Legacy Healthcare, LLC, Bk No. 1-05-11270 (Bankr. W.D.N.Y. June 27, 2008). As a preliminary matter, the defendant in Legacy Healthcare, Williamsville Suburban, timely moved for reconsideration before Bankruptcy Judge Kaplan of Judge Kaplan's prior order, issued on May 22, 2008, enjoining issuance of an amended operating certificate. Moreover, the nursing home in that matter, a proprietary facility operating in Williamsville, New York, failed to make the showing of "irreparable harm" presented by the Andrus. Indeed, the nursing facility there was cited by the federal Centers for Medicare and Medicare Services ("CMS") as one of the worst nursing homes in New York State in terms of quality of care to its residents. By contrast, the Andrus has shown that the Berger Commission overstated by almost double the deficiencies cited in one of the Andrus' annual resident surveys, and none of those citations involved a finding of harm to any of its residents.

At all relevant times from the issuance of the Berger Commission's Final Report in November 2006 through this day, the Andrus has continued operating as a nursing home pursuant to an operating certificate without any limitation. With this untimely application, defendant again seeks to upset the status quo by amending the operating certificate with a date certain for its termination.

The Andrus will be harmed, irreparably, by the amendment of its operating certificate. With an average length of stay of four and a half years, residents come to the Andrus primarily from the "word of mouth" of Andrus residents and family members, with the expectation that the Andrus will remain operational for their remaining years. The issuance of an amended operating certificate, be it with a six-month, one-year, or other longer-period term, would send the ominous message to its current and prospective residents and its staff as well as to the health care provider community. As a consequence, many residents may leave, other elderly interested in long term care will be referred elsewhere, and employees will look for more secure employment. That will very likely adversely and immediately impact its occupancy and revenues, and jeopardize its continued viability at a nursing home. What is more, because this Court cannot award money damages against the State under the Eleventh Amendment to the United States Constitution, it can never be made whole from whatever harm it may suffer. For the reasons detailed below, the application should be denied in all respects.

## BACKGROUND

In November 2006, the New York State Commission on Health Care Facilities in the 21st Century (the "Berger Commission") issued its Final Report, which – without any prior notice to the Andrus or opportunity to be heard – included a recommendation that the Andrus' nursing home be closed. At the preliminary injunction hearing, the Andrus' Executive Director testified that she had informed the Andrus' residents and others of the Berger Commission's

recommendations, but also told them, accurately, that "only the Department of Health could implement those recommendations, and that we were going to fight . . . ." Transcript of April 23, 2008 ("Apr. 23, Tr.") at 278:12-14.

The Andrus commenced this litigation on April 30, 2007, challenging on constitutional grounds the recommendation made by the Berger Commission that the Andrus close its nursing home by June 30, 2008. Defendant moved for summary judgment in May 2007, and oral argument was heard on that motion on September 7, 2007. Both parties consented to a stay on September 7, 2007 to await determination by the New York Court of Appeals of a case challenging the legislation which created the Berger Commission ("the Enabling Legislation"). This stay was continued voluntarily by both parties again in December 2007.

The stay prevented both the Andrus from conducting any further discovery and the defendant from implementing the Berger Commission recommendations with respect to the Andrus. The Andrus' Executive Director informed its residents and others of the stay and continued stay.

By Memorandum Order dated March 10, 2008, the Court denied defendant's motion for summary judgment in all respects. On March 28, 2008, the Andrus committed to move for a preliminary injunction against implementation of the closure recommendation on an accelerated schedule. The Andrus' motion papers were timely submitted on April 11, 2008, and defendant's opposition papers were initially due on April 25, 2008.

Counsel for the defendant requested an extension of the return date for personal reasons, to which the Andrus consented provided that the defendant agreed to maintain the status quo. The defendant would not agree and for the first time threatened to issue an amended operating certificate to the Andrus. In light of this threatened action, on April 23, 2008, the Andrus sought a temporary restraining order ("TRO") against issuance of an amended operating

certificate. The arguments and grounds raised by defendant in opposition to the TRO application are virtually identical to those advanced by defendant on this application. See Apr. 23 Tr. at 6:6-7:9, 11:14-21; see also Exhibit A to McGovern Affirmation.

After hearing and considering the issues and arguments raised by both parties, Judge Brieant granted the TRO "pending hearing and determination of the preliminary injunction motion", with an explicit injunction against "issuing an amended operating certificate." Defendant did not seek reconsideration or reargument of the TRO by the May 7, 2008 deadline.

Although Judge Brieant set an initial return date of May 7, 2008 for the motion, the parties and the Court understood at the April 23, 2008 hearing that the return date would be adjourned and the TRO, extended until the three depositions sought by the Andrus were scheduled and completed, and the evidentiary hearing on the motion could be held. Two days earlier, on April 21, 2008, the Andrus had offered 15 dates, from late April through the end of May 2008, for conducting the three depositions and holding the evidentiary hearing. However, the earliest date that the defendant offered any of the three deponents for deposition was June 3, 2008.

Defendant served his opposition papers on May 1, 2008. On May 2, 2008, counsel for the Andrus, after confirming the contents of his letter with defendant's counsel, wrote to Judge Brieant confirming that the parties would not proceed on May 7, 2008 and that the Court had found good cause for extending the TRO past the initial ten day period as contemplated in Fed. R. Civ. P. 65(b).

On June 18, 2008, the Court informed counsel that Judge Brieant would be unable to conduct the evidentiary hearing on the Andrus' motion for preliminary injunction; that the hearing had been referred to Magistrate Judge Fox but would proceed as scheduled on June 25, 2008; and that Magistrate Judge Fox had scheduled a pre-hearing conference with the parties on

Monday, June 23, 2008.  At the June 23rd conference – for the first time and precisely two months to the day after Judge Brieant issued the TRO – defendant challenged the continued validity of the TRO based on a purported lack of good cause found by Judge Brieant on the April 23, 2008 record, and affirmatively asked Magistrate Judge Fox to reconsider and modify the scope of the TRO to allow defendant to amend the operating certificate of the Andrus by June 30, 2008.

At the June 23, 2008 conference, Magistrate Judge Fox requested briefs and scheduled oral argument on defendant's application for the following day, June 24, 2008.  After receiving the parties' briefs and hearing argument, Magistrate Judge Fox issued his Report and Recommendation the following day, June 25, 2008, the same day that the preliminary injunction had begun.  The parties consented to shorten the period in which to submit any objections to two days.  In the Report and Recommendation, Magistrate Judge Fox concluded that Judge Brieant had found good cause on the record and that the TRO remained in effect.  Magistrate Judge Fox further concluded:

> There will be irreparable harm to the Andrus if it is issued a new operating certificate with an expiration date of June 30, 2008 or any other date, because the Andrus is required under Department of Health regulations to notify "each patient or resident, his next of kin, his sponsor and his physician. . . immediately upon receipt of notification by the Department revoking, suspending, limiting, annulling or refusing to issue the operating certificate."  N.Y. Comp. Codes R. & Regs. tit. 10, § 401.3(h).  The Andrus is also required to post the operating certificate "conspicuously."  N.Y. Comp. Code R. & Regs. tit. 10, § 401.2(c).  The Federal Centers for Medicare and Medicaid Services may sanction the Andrus for failure to operate in compliance with all applicable State regulations.  42 C.F.R. 483.75(b).  The Andrus's compliance with these regulations, upon receipt of an amended operating certificate with an expiration date, would cause immediate, likely irreparable adverse impact on the Andrus's viability.

At the preliminary injunction hearing held on June 25 and June 26, 2008, the Andrus presented evidence of the "irreparable harm" posed by the issuance of an amended operating certificate to its operations and continued viability.

At approximately 9:10 a.m. on the morning of June 27, 2008, the day that objections to the Report and Recommendations were due, the attorney for the defendant informed counsel for the Andrus that he intended to appear in court to request unspecified "emergency relief".

## ARGUMENT

### POINT I

### DEFENDANT'S APPLICATION FOR A "MODIFICATION" OF THE TRO IS UNTIMELY

Significantly, defendant does not cite any authority for this, the second application to "modify" Judge Brieant's TRO. That is because as noted earlier, defendant is, for all practical purposes, seeking to reargue or reconsider the application for a TRO decided by Judge Brieant `on April 23, 2008.

The timing for making such a motion is governed by S.D.N.Y. [CITE, CORRECT FORM] Local Rule 6.3, which requires "[a] notice of motion for reconsideration or reargument of a court order determining a motion within ten (10) days after the entry of the court's determination of the <u>original</u> motion." (emphasis added). Thus, to be timely under Local Rule 6.3, any motion for reconsideration or reargument would have been due no later than May 7, 2008. Instead, defendant did not initially seek "modification" of the TRO until 61 days later.

Defendant has not established, nor can he establish, that he was unaware of the entry of the TRO on April 23, 2008 or of its extension[1], beyond May 7, 2008. The Court and counsel knew well in advance of May 7, 2008 that the May 7th return date for the preliminary injunction hearing would have to be adjourned, and specifically that the hearing would not be held until the three depositions had been scheduled and completed. Simply put, defendant cannot be excused for failing to timely move for reconsideration.

Further, even assuming, for argument's sake, that the TRO was considered an appealable order that could be taken to the Second Circuit, the time for any appeal has also long since run. A temporary restraining order that extends beyond 20 days may be appealed, if at all, within the prescribed time period that governs appeals from a preliminary injunction. See Pan Am. World Airlines, Inc. v. Flight Engineers Int'l Assoc., 306 F.2d 840, 843 (2d Cir. 1962). A preliminary injunction is appealable pursuant to 28 U.S.C. § 1292, but notice of appeal must be filed within 30 days. Fed. R. App. P. 4(a). At best, to seek any appellate review of the TRO, the defendant was required to have filed notice of appeal no later than June 13, 2008 (30 days after expiration of the initial 20 days of the TRO).

In sum, there is no justification for defendant's failure to seek either reargument or appeal of the TRO, as the defendant was aware of the June 30, 2008 deadline for implementation of the Berger Commission recommendations since April 23, 2008 and, indeed, from the very outset of the litigation. As such, defendant is time-barred for seeking review of the TRO, collaterally or otherwise, at this late stage.

---

[1]  Curiously, in his moving papers, defendant asserts that he was aware of these issues but had decided not to raise them until June 25, 2008, at the preliminary injunction hearing scheduled before Judge Brieant. He has offered no explanation as to why he would choose to wait to do so until long after the period for seeking reargument or reconsideration had expired.

## POINT II

### DEFENDANT HAS FAILED TO DEMONSTRATE THAT THE COURT HAS OVERLOOKED ANY FACTS OR CONTROLLING LAW THAT JUSTIFY MODIFICATION

Even if somehow defendant were not time-barred from seeking reargument of Judge Brieant's TRO, defendant would have no valid basis for obtaining relief in any event. Local Rule 6.3 requires a party seeking reconsideration or reargument to set forth "the matters or controlling decisions which counsel believes the court has overlooked." Further, any fact or law that counsel believes was overlooked must be so material that it would alter the outcome of the order. Toth v. Bd. of Ed., Queens District, 2007 WL 3034078, No. 07-CV-3239 (E.D.N.Y. Oct. 15, 2007). Inasmuch as a reargument or reconsideration motion is not the proper vehicle for an appeal, the party may not simply rehash points that previously proved unavailing nor raise arguments that could have been, but were not raised, on the original application. Wechsler v. Hunt Health Sys., Ltd. , 186 F.Supp.2d 402, 410, 413 (S.D.N.Y. 2002).

Defendant can point to no "overlooked" facts or decisional law that would justify reconsideration of the TRO. Suffice it to say that the substitution of a jurist due to the assigned judge's unavailability does not reopen a prior motion for reconsideration in the absence of a timely motion and an otherwise proper basis.

In any event, Judge Brieant himself was clearly made aware of the June 30, 2008 deadline when he issued the TRO, as it was defendant who explicitly raised it on April 23, 2008. During that hearing, counsel for the defendant stated: "And the reason the Department is concerned that [the amended operating certificate] needs to be issued before June 30 is because the enabling legislation states its authority, the Department of Health's authority, terminates on June 30th." Transcript of April 23, 2008 Conference, 11:14-18. In response, Judge Brieant

stated: "Well, if you would have issued it but for the Court's order, I think that's all you need, if anything, at some point." Id. at 11:19-21.

Judge Brieant clearly considered the June 30, 2008 expiration date in the Enabling Legislation and the State's claimed need to issue the amended operating certificate by June 30th, and determined to issue the TRO regardless.

### POINT III

### THERE HAS BEEN NO CHANGE IN CIRCUMSTANCES THAT JUSTIFIES MODIFYING THE INJUNCTIVE RELIEF GRANTED

Though a court has discretion to modify an injunction, generally it may do so only when there has been a change in facts or law. King-Seeley Thermos Co. v. Aladdin Inds., Inc., 418 F.2d 31, 35 (2d Cir. 1969); S.E.C. v. Vision Communications, Inc. 94-CV-0615 (S.D.N.Y. Mar. 6, 1995) (noting also that "hardship" alone does not constitute a change in circumstance) (citing Huk-a-Poo Sportswear, Inc. v. Little Lisa, Lta., 74 F.R.D. 621 (S.D.N.Y. 1977). Here, defendant can establish no change in facts or law that would justify modifying the TRO. The parties are in exactly the same positions as they were in April when the TRO was initially granted. In fact, the arguments now being made by the defendant mirror the arguments raised in opposition to the TRO, which Judge Brieant found to be unavailing.

Moreover, the order of the Bankruptcy Court judge in Legacy Healthcare, whose ruling does not govern this Court, does not constitute a change in the controlling law. That "precedent" should not otherwise be followed in this case, for several reasons. The facility at issue in Legacy Healthcare was identified by the federal Centers for Medicare and Medicaid Services as the "Worst of the Worst", and by virtue of its bankruptcy proceeding, has continued to experience financial difficulties. The Legacy Healthcare facility did not, and could not, make the showing of irreparable harm presented by the Andrus where, in contrast, the Andrus provides

quality care to its residents, is nearly fully occupied, and is otherwise financially sound. Further, the facility in <u>Legacy Healthcare</u> had already submitted a closure plan, which was approved by the Department of Health. In that circumstance, issuing an amended operating certificate was merely in furtherance of the facility's closure plan. Here, the Andrus has not submitted a closure plan, and obtained a stay against the requirement to do so in September 2007.

**POINT IV**

**THE EQUITABLE CONSIDERATIONS DO NOT<br>WEIGH IN FAVOR OF MODIFYING THE TRO**

Though a district court judge can modify an interlocutory order, it may not do so when such action requires overturning another judge of the same district, except for the "most cogent reasons." <u>Tanner Motor Livery, Ltd.</u> v. <u>Avis, Inc.</u>, 316 F.2d 804, 809 (9th Cir. 1963). Here, putting aside that defendant is time-barred from applying for the instant relief, defendant has failed to put forth any cogent reasons not previously considered and rejected by both Judge Brieant and Magistrate Judge Fox.

Whatever time bind the defendant now faces is largely of his own making, and is not the fault of the Andrus. Indeed, it is because of delays occasioned by the defendant's inaction that the hearing on the Andrus' preliminary injunction was not scheduled until June 25 and June 26, 2008. The defendant was aware of these hearing dates by at least May 22, 2008, as well as the likelihood that a decision on the Andrus' motion would not be issued until after June 30, 2008. Nevertheless, defendant took no steps to seek modification of the TRO until two days before the hearing, immediately after hearing that Judge Brieant was unavailable. In fact, the defendant did not produce the first of the three requested witnesses for deposition until June 3, 2008.

-11-

Further, defendant's assertion that no judge has addressed the merits of the Andrus' case is patently untrue. Judge Brieant denied the defendant's motion for summary judgment on all claims, and in so doing, rejected defendant's arguments seeking dismissal of the claims as a matter of law. See Memorandum and Order dated March 10, 2008. Further, Magistrate Judge Fox directly addressed the merits of the Andrus' claims in his Report and Recommendation, finding that, if the Andrus proved at the evidentiary hearing the lack of notice to the Andrus and the multiple errors contained in the Final Report about the Andrus' occupancy, financial condition, and the quality of care – which the Andrus has now done – the Andrus will have established a likelihood of prevailing on both its procedural and substantive due process claims.

Moreover, where a party has consented to certain relief, modification is not justified merely because they are dissatisfied with the bargain struck. Here, the parties clearly contemplated that the TRO might extend past June 30, 2008. At the hearing on the Andrus' application for a TRO, counsel for the defendant, after agreeing that a TRO could be extended until the evidentiary hearing was held, stated: "My main concern, your Honor, is that the TRO be issued, because that would be a clear indication that my client is precluded from proceeding with issuing the amended certificate, and that way there will be no question later on that it was not able to proceed with meeting the Berger Commission's mandate by June 30th." See Transcript of April 23, 2008 hearing, 36:13-18. The precise situation the defendant is now faced with was contemplated on April 23rd; then and now, defendant's "only concern" was that the TRO would extend beyond June 30th.

Defendant argues that the Andrus would receive a "windfall" unless the amended operating certificate is issued. However, it is the defendant who, having failed to convince both Judge Brieant and Magistrate Judge Fox that the defendant should be allowed to issue that

document, now seeks a third opportunity to present the same failed arguments via a collateral attack on Judge Brieant's TRO, with Judge Brieant ill and presently unavailable to adjudicate the case.   By contrast, if the amended operating certificate is issued, it is the Andrus that will be forever precluded from obtaining relief against the resulting harm, because under the Eleventh Amendment to the United States Constitution, it does not have a remedy at law – money damages – to compensate it before this Court.   The Eleventh Amendment bars the award of money damages to the Andrus from the defendant, a state official, in Federal Court.   See Edelman v. Jordan, 415 U.S. 651, 663 (1974) (citing Great N. Life Ins. Co. v. Read, 322 U.S. 47 (1944); Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573 (1946)).

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Andrus' motion for preliminary injunctive relief and application for a temporary restraining order, the request of the defendant for a modification of the TRO should be denied, and the defendant should continue to be prevented from taking any steps to implement the Berger Commission's recommendation to close the Andrus nursing facility, including the issuance of an amended operating certificate.

Dated:    New York, New York
          June 30, 2008


                                    CADWALADER, WICKERSHAM & TAFT LLP



                                    By: _____/s/Brian T. McGovern_____
                                            Brian T. McGovern (BM-5453)

                                    Attorneys for Plaintiff
                                       John E. Andrus Memorial, Inc.
                                       (d/b/a Andrus on Hudson)
                                    One World Financial Center
                                    New York, New York  10281
                                    Telephone: (212) 504-6000


Of Counsel:
   Peter G. Bergmann
   Ariel V. Gordon