UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
JOHN E. ANDRUS MEMORIAL, INC. (d/b/a ANDRUS ON HUDSON),

                      Plaintiff,

          -against-

RICHARD F. DAINES, as Commissioner of the New York State Department of Health,

                      Defendant.
---------------------------------------------------------------- x

2007 Civ. 3432 (CLB)(MDF)

**AFFIRMATION IN OPPOSITION TO DEFENDANT'S ORDER TO SHOW CAUSE FOR A MODIFICATION OF THE TEMPORARY RESTRAINING ORDER**

      BRIAN T. MCGOVERN affirms and states under penalty of perjury that the following is true and correct:

      1.    I am an attorney admitted to the bar of this Court, and am Special Counsel at Cadwalader, Wickersham & Taft LLP. We represent the plaintiff John E. Andrus Memorial, Inc. (the "Andrus"), a not-for-profit nursing home in Hastings-on-Hudson, New York, in the above-captioned action. I submit this Affirmation in response to defendant's Objections to Report and Recommendation and Request for Emergency Relief, including any modification to the Temporary Restraining Order ("TRO") issued on April 23, 2008 that enjoins the defendant or his agents from taking any steps to implement the recommendation of the Commission on Health Care Facilities in the 21st Century (the "Berger Commission") that the Andrus' nursing facility be closed. The TRO specifically enjoins defendant from amending the Andrus' current operating certificate.

2. The purpose of this Affirmation is to place before the Court certain documentary evidence and facts cited in plaintiff's Memorandum of Law in Opposition to Defendant's Objections to Report & Recommendations and Request for Emergency Relief. For the Court's reference, we have included the procedural history of this case later in this Affirmation.

3. Not only is defendant's application untimely, it also fails to raise any issues that were not or could not have been placed before both Judge Brieant and Magistrate Judge Fox during review of defendant's prior applications to limit the scope of any TRO. Moreover, unless this application is denied, the Andrus will be immediately and irreparably harmed and any preliminary injunctive relief the Court may thereafter grant on the Andrus' fully submitted motion would be ineffective.

**The Present Application for "Emergency Relief"**

4. At approximately 9:10 A.M. on Friday, June 27, 2008, I received a phone call from Assistant Attorney General John Gasior, who informed me that he intended to appear before the Court that afternoon to request some form of "emergency relief" that would permit the defendant to issue an amended operating certificate to the plaintiff. That relief would directly contravene the TRO and the Report and Recommendation issued by Magistrate Judge Fox to Judge Stein. This is a patently unauthorized circumvention of both the original TRO and the Report and Recommendation. Defendant participated in both the proceedings on the original TRO application and the request for a modification of the TRO. A copy of the transcript of the April 23, 2008 TRO proceedings is attached as Exhibit A. There is no procedure by which defendant may now seek a third chance at obtaining the relief requested, having been unsuccessful on the first two occasions.

5. Defendant's prior application before Magistrate Judge Fox on June 23, 2008, at issue in the Report and Recommendation, was a request for reargument and reconsideration of the Andrus' application for a TRO, argued and decided 61 days earlier, on April 23, 2008. In this emergency application, defendant is again seeking reconsideration of the Andrus' TRO application. <u>Both the application on June 23rd and the June 27, 2008 application made before Judge Stein are time-barred under Local Rule 6.3</u>, requiring that "[a] notice of motion for reconsideration or reargument of a court order determining a motion within ten (10) days after the entry of the court's determination of the <u>original</u> motion." (emphasis added). Moreover, it is both curious and opportunistic for defendant to make this application only when Judge Brieant was unavailable due to illness.

6. Even if defendant's application is not time-barred and was otherwise procedurally proper, he is not entitled to the relief requested. In response to defendant's application, the parties submitted letter briefs to Magistrate Judge Fox on June 24, 2008. A copy of the submission made on behalf of the Andrus is annexed hereto as Exhibit B. The application was then argued on June 24, 2008. A copy of the transcript of those proceedings is annexed hereto as Exhibit C.

7. As stated in my June 24, 2008 submission to Judge Fox, the same arguments, issues, and scope of injunctive relief requested -- specifically, the threatened issuance of an amended operating certificate -- and raised here yet again, were presented to Judge Brieant on April 23, 2008 on the Andrus' TRO application. There has been no material change in the circumstances or in the parties' positions that would justify any modification to the scope of the TRO currently in place. The Andrus still faces the same irreparable harm if an amended operating certificate is issued.

8. My June 24, 2008 submission also demonstrates that there was no ambiguity as to the existence of good cause for extending the TRO beyond ten days, and in fact that it was the parties' agreement and understanding that the TRO would remain in place until such time as limited discovery (three depositions) could be conducted and an evidentiary hearing held.

9. My June 24 submission makes clear that the plaintiff is compelled by New York State and federal regulations, as well as ethical obligations of the Andrus to its residents, to notify residents, their families, and their physicians if an amended operating certificate is issued, which will result in irreparable harm to the Andrus. See 10 N.Y.C.R.R. §§ 401.2(c), 401.3(h).

10. The Report and Recommendation issued by Magistrate Judge Fox makes clear that the transcript of the April 23, 2008 conference on plaintiff's application for a TRO establishes a record of good cause for extending the TRO past ten days. Magistrate Judge Fox also found that the TRO had been extended by Judge Brieant until the hearing and determination of plaintiff's motion for a preliminary injunction.

11. In his Report and Recommendation, Magistrate Judge Fox also considered the defendant's arguments regarding his claimed need to issue an amended operating certificate, even one with an expiration beyond June 30, 2008, and concluded that such a modification of the TRO should not be issued because: "There will be irreparable harm to the Andrus if it is issued a new operating certificate with an expiration date of June 30, 2008 or any other date, because the Andrus is required under Department of Health regulations to notify "each patient or resident, his next of kin, his sponsor and his physician. . . immediately upon receipt of notification by the Department revoking, suspending, limiting, annulling or refusing to issue the operating certificate." N.Y. Comp. Codes R. & Regs. tit. 10, § 401.3(h). The Andrus is also required to

post the operating certificate "conspicuously." N.Y. Comp. Code R. & Regs. tit. 10, § 401.2(c). The Federal Centers for Medicare and Medicaid Services may sanction the Andrus for failure to operate in compliance with all applicable State regulations. 42 C.F.R. 483.75(b). The Andrus's compliance with these regulations, upon receipt of an amended operating certificate with an expiration date, would cause immediate, likely irreparable adverse impact on the Andrus's viability.." See Report and Recommendation, p. 5.

12. Magistrate Judge Fox also found that, if proven, the Andrus' allegations supported its claims that implementation of the Berger Commission's closure recommendation would violate both procedural and substantive due process. This comports with the findings made by Judge Brieant in denying the defendant's summary judgment motion in March 2008.

13. On June 25th and 26th, the evidentiary hearing was held on plaintiff's motion for a preliminary injunction. At the hearing, the Andrus presented evidence of the irreparable harm it faced if an amended operating certificate were issued. The expert on New York State nursing home regulation who testified on behalf of the Andrus, Sharon Carlo, a former senior official at the Department of Health, testified that New York State regulations require the posting of an operating certificate in a "conspicuous" location, where residents and other visitors could see it; and that the regulations further require that the nursing facility notify residents, family, and physicians – immediately – of any change made to the operating certificate.

14. Ms. Carlo further testified about the likely result of the issuance of an amended operating certificate: "My opinion is that to tell residents and families who call that nursing facility their home that the operating certificate, literally the thing that allows that

nursing home to operate in New York State, would be limited or eliminated would be incredibly, incredibly distressing to those residents . . . ." Transcript of Hearing, pp. 137:23-138:6. (Exhibit D hereto.)  When asked about the likely impact of informing physicians that an amended operating certificate had been issued, Ms. Carlo testified: "In my opinion, it certainly could impact a facility related to referral sources, physicians who would send their patients to that nursing facility.  The possibility of uprooting folks more than once is really not something that anyone would be interested in doing, not a physician, not a family member, not anybody." Transcript of Hearing at 138:17-22.

15. The Andrus also offered the testimony from its Executive Director, Betsy Biddle.  Ms. Biddle testified that while she had told the staff and residents of the Berger Commission's closure recommendation when it was issued, she also told them that only the Department of Health could actually implement it, and that the Andrus would fight the recommendation on two different fronts.  She also stated that she has been keeping the residents and staff apprised of developments in the litigation, including the existence of the stay issued in September 2007.  Transcript of Hearing at 278:8-25.  The relevant portions of Ms. Biddle's testimony are annexed hereto as Exhibit E.

16. She also stated that she would be obligated by both New York regulation and ethical considerations to inform residents if an amended operating certificate was issued. Transcript of Hearing at 228:17-229:12.

17. Ms. Biddle testified that once the Andrus informed the health care provider community about the issuance of an amended operating certificate, occupancy would suffer

because "the community would lose confidence in our ability to stay open . . . ." Hearing Transcript at 230:5-6.

18. Defendant, dissatisfied with the outcome of its prior applications before the two federal judges who have already heard his arguments, and with the time to seek reconsideration before Judge Brieant having long expired, is seeking a ruling of a different district court judge, again flouting the rules of procedure to do so.  The request should be denied.

**Procedural History of the Action**

19. This action was commenced on April 30, 2007 to declare invalid and unconstitutional, and to enjoin the defendant's implementation of, the Berger Commission recommendation to require the closure of the Andrus' nursing facility.  Defendant's motion for summary judgment was argued before Judge Brieant on September 7, 2007, at which time the defendant consented to a stay of the proceedings and of implementation of the Berger Commission closure recommendation, which stay was continued again on consent in December 2007.  With the stay still in effect, Judge Brieant denied defendant's summary judgment motion with respect to all of the Andrus' constitutional claims.  See Memorandum and Order dated March 10, 2008, attached hereto as Exhibit F.

20. At a March 28, 2008 pre-trial conference, the parties agreed to a briefing schedule for the plaintiff's intended motion for a preliminary injunction.  The plaintiff submitted its moving papers within two weeks, on April 11, 2008.  Before submitting any opposition papers, John Gasior, attorney for the defendant, called me to request an adjournment of the return date of the motion for personal reasons.  I agreed, provided that the status quo remain in place during any period of adjournment.  The parties could not agree on this point; the defendant

indicated his intention to issue an amended operating certificate with a termination date of June 30, 2008. In light of the threatened action, the Andrus sought, and was granted, a Temporary Restraining Order ("TRO") by Judge Brieant on April 23, 2008. See Exhibit B to Affidavit of John Gasior in Support of Defendant's Application for Emergency Relief.

21. A return date for the motion was set for May 7, 2008, with the understanding that the return date would be adjourned and the evidentiary hearing would not be held until the Andrus was provided the opportunity to conduct three requested depositions.

22. On April 21, 2008, in an e-mail to AAG Gasior, I had offered 15 dates, from late April 2008 through the end of May 2008, for conducting the depositions and holding the evidentiary hearing, but defendant did not produce the first of three witnesses until June 3, 2008, with the remaining two depositions held June 6, 2008 and June 10, 2008.

23. In a May 2, 2008 letter to Judge Brieant, I confirmed that the hearing would not take place on May 7th, and that good cause existed for the continuation of the TRO. See Exhibit C to Affidavit of John Gasior in Support of Defendant's Application for Emergency Relief. The contents of my letter were shared in advance with Assistant Attorney General John Gasior and the letter was endorsed by Judge Brieant on May 6, 2008.

24. On May 22, 2008, the Court scheduled an evidentiary hearing on the Andrus' preliminary injunction motion for June 25, 2008, approximately two weeks after the last of the three depositions was held.

25. Approximately one week before the scheduled hearing, I was informed that the evidentiary hearing had been referred to Magistrate Judge Mark D. Fox; that the hearing

would proceed as scheduled on June 25, 2008; and that Magistrate Judge Fox had scheduled a pre-hearing conference for June 23, 2008.

26. At the June 23rd pre-hearing conference, the defendant raised, for the first time, a question as to the validity of the TRO. Magistrate Judge Fox agreed to hear the defendant's request to reconsider the scope of the TRO; requested that the parties submit letter briefs to him; and scheduled oral argument for the next day, June 24, 2008. A copy of the two page brief submitted on behalf of the Andrus has been annexed hereto as Exhibit B. The parties appeared before Magistrate Judge Fox on June 24, 2008 to argue defendant's request.

27. Magistrate Judge Fox issued his Report and Recommendation on June 25, 2008, during the evidentiary hearing on the Andrus' motion for a preliminary injunction. The record is now closed on the motion.

WHEREFORE, for the reasons set forth above and in the accompanying memorandum of law, I respectfully request that the Court deny the relief requested by defendant to issue an amended operating certificate to the Andrus.

Dated: New York, New York
       June 30, 2008

                                                                                       s/Brian T. McGovern
                                                                              Brian T. McGovern (BM-5453)