# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

## Facsimile

| From: | Fax: | Tel: |
|---|---|---|
| Brian T. McGovern | 212 504 6666 | 212 504 6117 |
| | Pages (inc. cover): 3 | Date: 06/24/08 |

| For Immediate Delivery To: | Fax: | Tel: |
|---|---|---|
| **Hon. Mark D. Fox**<br>United States Magistrate Judge<br>United States District Court<br>300 Quarropas Street<br>White Plains, New York 10601-4150 | 914-390-4129 | 914-390-4124 |
| **John P. Gasior, Esq.**<br>State of NY<br>Office of Attorney General<br>120 Broadway - 24th Floor<br>New York, NY 10271 | 212-416-6077 | 212-416-8570 |

**Message:**

Re: <u>John E. Andrus Memorial, Inc. v. Daines - 07-CV-3432(CLB)(MDF)</u>

See attached Memorandum In Opposition To Defendant's Request To Modify TRO.

IRS Circular 230 Legend: Any advice contained herein was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal, state, or local tax penalties. Unless otherwise specifically indicated herein, you should assume that any statement herein relating to any U.S. federal, state, or local tax matter was written to support the promotion or marketing by other parties of the transaction(s) or matter(s) addressed herein. Each taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If a reader of the facsimile message is not the intended recipient, the reader is hereby notified that any dissemination, distribution, or copy of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the original message to us at the address above.

Please call 212 993 2919 if there are transmission problems.

USActive 13240820.1

Re: <u>John E. Andrus Memorial, Inc. v. Daines</u>
      07-CV-3432(CLB)(MDF)

<u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S REQUEST TO MODIFY TRO</u>

The plaintiff John E. Andrus Memorial, Inc. (the "Andrus") submits this brief in opposition to defendant's request to modify the scope of the Temporary Restraining Order ("TRO") in place, entered by Judge Brieant on April 23, 2008 pending a hearing and determination on plaintiff's motion for a preliminary injunction. For literally two months, defendant failed to seek to modify the TRO until yesterday, two days before the hearing, with witnesses scheduled to testify on the issues to be determined on the motion.

In essence, the defendant's application on the eve of the hearing is nothing more than a request to reargue the TRO application before Judge Brieant on April 23, 2008 on the same issue – whether defendant should be enjoined from issuing an amended operating certificate, the specific threatened action that prompted the Andrus to obtain a TRO from Judge Brieant. The same harm posed by issuing an amended operating certificate that the Andrus highlighted on the original TRO application is no less present today even if defendant agreed to, or was enjoined from, actually enforcing the amended operating certificate. Defendant's arguments to the contrary were all made before Judge Brieant on April 23, 2008 and resolved by the Court then. <u>See</u> April 23, 2008 transcript at 6:6-7:9; 11:14-21. Resurrecting this issue now is plainly an attempt to get a second (or even third) bite at the apple and, opportunistically, with Judge Brieant now unavailable.

To try to justify reargument of the TRO, defendant claims, two months later, that it is "ambiguous" whether Judge Brieant found good cause for extending the TRO for more than ten days as confirmed by my letter dated May 2, 2008, the contents of which defendant's counsel reviewed beforehand. Defendant asserts that because Judge Brieant did not literally recite the words "good cause", a proper record was not made, and the TRO may no longer be effective. Defendant's argument is not only untimely, it also misconstrues Federal Rule 65 and the April 23, 2008 record. The rule states that the reasons for extending the TRO "must be entered in the record." Fed. R. Civ. P. 65(b)(2).[1] Both good cause <u>and</u> consent of the parties for extending the TRO beyond ten days were established and entered in the record on April 23, 2008. Although the initial return date for the preliminary injunction motion was set for May 7, 2008, Judge Brieant discussed, and the parties agreed, that the TRO would be extended beyond May 7th to allow the Andrus to conduct the three depositions requested and until such time as a hearing could be held and the Andrus' preliminary injunction motion, determined. <u>See</u> transcript at 35:6-36:12. There was no ambiguity then among counsel and the Court, nor any ambiguity now, over the continued effect of the TRO beyond the initial 10 days.

---

[1] Moreover, defendant has failed to comply with this very rule. Though a party against whom a temporary restraining order is entered may move to dissolve or modify the order, a party must do so upon two days notice, and a party must actually make a motion to do so, not raise it in the midst of the pre-trial conference. Fed. R. Civ. P. 65(b)(4).

Moreover, even if the effect of the amended operating certificate were stayed, the Andrus would nevertheless suffer irreparable harm if the defendant is allowed to issue the amended operating certificate. Under Department of Health regulations, a nursing home such as the Andrus "shall notify . . . each patient or resident, his next of kin, his sponsor and his physician, either directly or through the physician's medical society immediately upon receipt of notification by the Department revoking, suspending and limiting, annulling or refusing to issue the operating certificate. . . ." 10 N.Y.C.R.R. § 401.3(h) (emphasis added). See also 10 N.Y.C.R.R. § 401.2(c) ("[a]n operating certificate shall be posted conspicuously at the designated site of operations." (emphasis added)). The Andrus also plans to adduce testimony at the hearing on this issue.

Thus, from the moment the Department "amends" the Andrus' operating certificate, each resident, each responsible party or next of kin, and each resident's physician would have to be informed that the Andrus is effectively operating on borrowed time. That action would have an immediate and irreparable adverse impact on the Andrus' resident census, revenues, and viability, would bring about the hasty demise of an otherwise thriving, not-for-profit nursing home with near-full capacity, and would effectively force the facility to shut down and transfer its 190 frail and elderly residents elsewhere.

Even if the Department of Health, on consent or by court order, agreed not to enforce this regulation, the Andrus is still under an obligation to do so, and subject to sanction for noncompliance by the Federal Centers for Medicare and Medicaid Services ("CMS"), which has equal authority to enforce Department of Health nursing home regulations. See 42 C.F.R. 483.75(b) ("The facility must operate and provide services in compliance with all applicable Federal, State, and local laws, regulations, and codes, and with accepted professional standards and principles that apply to professionals providing services in such a facility.") (Emphasis added.)) That compliance issue arises from the moment the defendant issues an amended operating certificate, irrespective of whether the Court enjoins its enforcement. Quite apart from its regulatory responsibilities, the Andrus believes it has an ethical if not fiduciary and contractual obligation to disclose any material information to its current and prospective residents, along with family members and any hospital or health care providers considering the Andrus as a long-term care option for their patients. The Andrus could not, consistent with the Department's regulations and its own practices, withhold from them the fact that its operating certificate has been limited and that it can no longer offer the assurance of long term care to future elderly residents seeking admission to its facility.

For the foregoing reasons, we respectfully request that the Court deny defendant's eleventh-hour application to modify the TRO.

Dated: June 24, 2008

Respectfully,

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Plaintiff

By: _____
Brian T. McGovern (BM-5453)