UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOHN E. ANDRUS MEMORIAL, INC.
(d/b/a ANDRUS ON HUDSON),

                 Plaintiff,

    - against -

RICHARD F. DAINES, as Commissioner of
the New York State Department of Health,

                 Defendant.
-------------------------------------------------------x

07 Civ. 3432 (CLB)

*Memorandum and Order*

Brieant, J.

    Plaintiff John E. Andrus Memorial, Inc. ("Andrus"), doing business as Andrus on Hudson, commenced this action in April 2007 seeking declaratory and injunctive relief from the attempt of Defendant Richard F. Daines, Commissioner of the New York State Department of Health, upon the recommendation of the Berger Commission, to require Andrus to either cease operating as a nursing home or to operate as an assisted living facility. Defendant filed a motion for summary judgment on July 13, 2007. (Doc. 12.) The Andrus filed its opposition on August 13, 2007 and Defendant filed its reply on August 22, 2007. Oral arguments were held on September 7, 2007.

    At oral arguments, because similar actions challenging decisions made by the Berger Commission were pending in the New York State courts, this Court concluded that *Burford* abstention was appropriate. (Tr. 18, Sept. 7, 2007.) All proceedings in the matter were "stayed, including pretrial discovery, and the operating certificate of the plaintiff [was to] remain in full force and effect until further order of this Court." (Tr. 18-19.) This Court ordered "the *Burford* abstention [to] extend to a period of ten business days following the date on which the Court of Appeals decision is rendered in [*St. Joseph Hospital of Cheektowaga v. Novello*]," which was

then being appealed as of right to the Court of Appeals. This Court stated that "[t]he motion [would] remain in abeyance . . . until that time." (Tr. at 19.)

On November 27, 2007, the Court of Appeals dismissed the appeal as of right in *St. Joseph Hospital of Cheektowaga* and on February 12, 2008, the Court of Appeals denied a motion for leave to appeal. Thus, the time is ripe for disposition of this motion for summary judgment in the instant action.

**Facts**

The following facts are presumed true for the purposes of this motion only.

The Andrus is a not-for-profit nursing home located in Hastings-on-Hudson. The Andrus operated as a not-for profit home for elderly residents beginning in 1953 and became a licensed residential health care facility, or nursing home, in 1969.

In 1996, the Andrus attempted to change into continuing care retirement community. It sought State and local government approvals for the project, which would serve 400 senior residents in its existing building and add new buildings to its campus. While the applications were pending, the Andrus voluntarily suspended new admissions to its nursing home. Predictably, this resulted in a temporary decline in occupancy and revenues.

All the state regulatory agencies approved the Andrus's plan to become a continuing care retirement community. However, in November 2001, the Village of Hastings-on-Hudson, where the Andrus is located, denied the Andrus's applications for the requisite construction permits to build on its campus. Andrus was thus forced to abandon its plans to change into a continuing care retirement community.

The Andrus decided instead to continue operating as a nursing home, but to scale back on

the number of beds it operated by 50, from 247 to 197 beds. In July 2002 the Andrus negotiated an agreement with Beth Abraham Health Services to transfer 50 certified nursing home beds to Beth Abraham. The Department of Health was apprised of the transfer agreement and the Andrus thereafter made a formal request for permanent decertification of 50 nursing home beds. The Department of Health approved the bed decertification on January 24, 2007 and made the approval retroactive to July 1, 2006.

The Andrus resumed admission of residents to its nursing home in October 2002. In 2002, following the four-year suspension in admissions, the Andrus had an average of 72 residents. The number of residents thereafter grew to an average of 171 residents in 2005 and 176 residents in 2006, which is an occupancy rate of 89% based on a 197-bed capacity. The Andrus also achieved an operating surplus in 2005 and 2006.

In April 2005, New York State enacted Section 31 of Part E of Chapter 63 of the Laws of 2005 (the "Enabling Legislation"), which created the New York State Commission on Healthcare Facilities in the 21st Century, often referred to as the "Berger Commission" after the commission's chairman, Stephen Berger. The Commission consisted of eighteen statewide members and regional members from six regions in New York State. The Berger Commission was to conduct "a rational, independent review of health care capacity and resources in the state to ensure that the regional and local supply of general hospital and nursing home facilities is best configured to appropriately respond to community needs." Enabling Legislation § 31(2). The Enabling Legislation established a regional advisory committee for each region to "develop recommendations for reconfiguring its region's general hospital and nursing home bed supply to align bed supply with regional and local needs." Enabling Legislation § 31(7)(d). The

3

Commission's review focused on six main criteria: service to vulnerable populations, availability of services, quality of care, utilization, viability, and economic impact. The Commission was to make a final report to the Governor and Legislature by December 1, 2006, and if the Governor approved the recommendations and the legislature did not reject the recommendations by December 31, 2006, the recommendations would acquire the force of law. Enabling Legislation § 31(9)(b).

Defendant states that the "Andrus was identified as a possible candidate for right-sizing and/or conversion to an assisted living program due to its low occupancy level, recent history of patient care deficits, low care needs of its residents and its financial problems." (Def.'s 56.1 Stmt. ¶ 28.) The Andrus alleges that it was never notified that it had been identified as one of the "facilities of interest," however. (Pl's 56.1 Stmt. ¶ 28.)

The Commission and regional advisory committees conducted nineteen public hearings statewide, including three in the Hudson Valley Region, where the Andrus is located. The Andrus did not participate in any of these public hearings. The Andrus alleges that it did not participate in the hearings it "did not receive notice from either the [regional advisory committee] or the Berger Commission that the Berger Commission was considering the Andrus' nursing home for closure . . . and was not notified that it had to defend itself against closure in public hearings or otherwise." (Pl's 56.1 Stmt. ¶ 25.)

The Hudson Valley regional advisory committee and Berger Commission staff met with the Andrus individually on June 20, 2006. Defendant states that the Commission met with representatives of "facilities of interest to learn each facility's perspective on the factors leading to their being identified as right-sizing candidates." (Def.'s 56.1 Stmt. ¶ 29.) The Andrus

4

maintains that the regional advisory committee told the Andrus that "the purpose of the meeting was to hear the . . . 'good story' about its current situation and future prospects." (Pl.'s 56.1 Stmt. ¶ 29.) At the meeting, the participants discussed the Andrus's history, its transfer of 50 beds to Beth Abraham Hospital, and its finances. (Def.'s 56.1 Stmt. ¶ 30; Pl.'s 56.1 Stmt. ¶ 30.) Following the meeting, on June 23, 2006, Betsy Biddle, the executive director of the Andrus, sent a letter to the chairman of the Hudson Valley regional advisory committee attaching copies of the Andrus's 2005 financial statement and the agreement between the Andrus and Beth Abraham. Defendant states that further opportunity to present the Andrus's views to the Commission or the Hudson Valley regional advisory committee was available, but the Andrus maintains that, as no one notified it that it was being considered for rightsizing, it "did not know that it needed to 'present its views' to the Commission or the Hudson Valley [regional advisory committee]." (Def.'s 56.1 Stmt. ¶ 32; Pl.'s 56.1 Stmt. ¶ 32.)

On November 28, 2006, the Berger Commission issued a Final Report recommending, among other things, that the Andrus eliminate all 247 of the residential health care beds it was licensed to operate and replace them with 140 assisted living program beds. (Def.'s 56.1 Stmt. ¶ 33.) Governor Pataki approved the recommendations and the Legislature did not reject the recommendations. Therefore, as of January 1, 2007, the Commission Report gained the force of law. Accordingly, on January 31, 2007, the Department of Health sent a letter to Andrus which advised it of the Berger Commission's recommendations and included an implementation outline.

The Andrus avers that "[t]he Berger Commission failed to consider accurate and current data about the Andrus' level of occupancy, financial stability, quality of resident care, and

5

resident care needs, and instead relied on outmoded and inaccurate data in recommending closure of the Andrus' nursing home." (Pl.'s 56.1 Stmt. ¶ 12.) The Andrus further states that, in its Final Report, "the Berger Commission assumed, contrary to the Andrus' 2005 certified financial statements, that the Andrus was 'operating at a significant loss' in 2005, and characterized the Andrus' reported surplus in 2006 as a mere 'claim.'" (Pl.'s 56.1 Stmt. ¶ 41.) The Andrus also disputes Defendant's claim that it "had among the lowest occupancy rates in Westchester County." (Def.'s 56.1 Stmt. ¶ 42.)

The Andrus commenced this action on April 30, 2007 seeking declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202. The Andrus alleged in its complaint that the Enabling Legislation and the Berger Commission's recommendations violate the Andrus's rights secured by the Due Process Clause, Takings Clause, and Contracts Clause of the United States Constitution.

Defendant brought this motion for summary judgment on the grounds that "plaintiff's constitutional challenges cannot be supported legally and that there are no genuine issues of material fact." (Def.'s Br. 1.) In opposition to the motion, the Andrus argues that there are material issues of fact precluding summary judgment on any of its claims.

**Discussion**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor."

6

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

Drawing all inference in the Andrus's favor, as it must, this Court concludes that there are genuine issues of material fact as to whether the Enabling Legislation and the Berger Commission's procedures and recommendations satisfy the requirements of the Due Process, Takings, and Contracts Clauses of the United States Constitution.

Defendant's motion for summary judgment is therefore denied. A status conference of counsel with the Court will be held on Friday, April 18, 2008 at 9:00 A.M.

SO ORDERED.

Dated: White Plains, New York
       March 10, 2008

*Charles L. Brieant*
Charles L. Brieant, U.S.D.J.